IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUMIA ABU-JAMAL, BRET GROTE, AND ROBERT BOYLE : : : Plaintiffs, : : v. : : JOHN KERESTES, Superintendent State Correctional Institution Mahanoy : : GEISINGER MEDICAL CENTER : : Defendants. : | Case No. ELECTRONICALLY FILED |

BRET GROTE, for his Verified Complaint hereby alleges as follows:

<u>JURISDICTION</u>

1. This is an action for injunctive relief for violations of the First, Fifth, and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and ).

3. This Court is the appropriate venue pursuant to 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to the claims occurred in the Middle District of Pennsylvania.

1

PARTIES

1. Mumia Abu-Jamal is an African-American currently incarcerated in the custody of the Pennsylvania Department of Corrections. Mr. Jamal's case is well-known world-wide and is considered by many to be a case of injustice.

2. Bret Grote is an attorney duly admitted to practice in the Commonwealth of Pennsylvania. He has represented Mumia Abu-Jamal with regard to his First Amendment rights since October 2014, and with regard to his health and medical care since March 2015. He is one of the attorneys for Mr. Abu-Jamal in the recent case of *Abu-Jamal v. Kane*, 2015 WL 1932236 (M.D.Pa. 2015).

3. Robert J. Boyle is an attorney duly admitted to practice in the State of New York. He is also admitted to practice in the United States District Courts for the Southern, Eastern, Western and Northern Districts of New York, the Southern District of Texas and the United States Court of Appeals for the Second and Fourth Circuits. Mr. Boyle has been working of counsel with Mr. Grote on Mr. Abu-Jamal's legal matters.

4. Defendant John Kerestes is the Superintendent at SCI Mahanoy. Defendant Kerestes is responsible for the overall operation of SCI Mahanoy. Defendant Kerestes has the power to authorize attorney and family visits with individuals in the custody of SCI Mahanoy when they are in a hospital off of prison grounds. Defendant Kerestes is sued in his official capacity.

5. Defendant Geisinger Medical Center is the hospital facility where plaintiff Abu-Jamal has been held incommunicado. Defendant Geisinger Medical Center has a policy of prohibiting all communication between hospital patients in the custody of the Department of Corrections (DOC) and their lawyers, family, friends, and others not in the employ of the DOC or Geisinger Medical Center. Defendant Geisinger Medical Center has the power to authorize attorney and family visits with hospital patients who are in the custody of the DOC. This authority is exercised in conjunction with DOC authority, thus constituting state action.

STATEMENT OF FACTS

Introduction

6. As explained more fully *infra.*, since May 12, 2015 the defendants have barred the plaintiff attorneys from visiting with Mr. Abu-Jamal, who is currently hospitalized in Geisinger Medical Center. Indeed, they have prohibited all communication between Mr. Abu-Jamal and anyone, with the exception of one 15-minute phone call between him and his wife, Wadiya Jamal, who has been authorized by Mr. Abu Jamal to receive any and all medical information.[1]

---

[1] The Declaration of Wadiya Jamal was signed prior to the her being notified that a phone call was permitted.

7. Injunctive relief is necessary to permit the plaintiff attorneys to perform their professional duties for their client and to secure Mr. Abu-Jamal's Fifth and Fourteenth Amendment right of access to the courts.

Background

8. For the past several months, Mr. Abu-Jamal has been suffering from a variety of medical problems. These include a skin rash over 70% of his body of unknown origin, abnormal blood work, and one episode of diabetic shock that could have resulted in death. There has been no diagnosis.

9. The medical issues began to surface in about August 2014. At that time he began to experience itching over his whole body. The itching was reported to facility staff who prescribed creams. The creams had no effect and the rash spread. No effort was made to determine the cause of the rash.

10. The rash spread and, on two occasions became infected. While the infection was treated with antibiotics, no efforts were made to diagnose the cause of the rash. Mr. Abu-Jamal had an allergic reaction to one of the antibiotics administered.

11. By February 2015, the rash had spread to over 70% of Mr. Abu-Jamal's body. It was accompanied by lower extremity and genital edema causing great discomfort and making it increasingly difficult for Mr. Abu Jamal to walk.

12. In late February Mr. Abu-Jamal was prescribed another steroid and Cyclosporine, an immunosuppressant. There were still no diagnostic procedures ordered to determine the cause of the rash. A medical note dated February 19, 2015 recorded the fact that plaintiff Abu-Jamal was experiencing "increasing peeling off of dry skin at the site of rashes".

13. On March 6, 2015, blood work was ordered at the facility. The results showed that Mr. Abu-Jamal's glucose level had risen to the severely abnormal level of 419. Prior to that time, Mr. Abu-Jamal's blood glucose had always been within normal range.

14. The facility took no action to address the glucose level even though it was noted in their records. They did not even inform Mr. Abu-Jamal of that test result.

15. On March 30, 2015, Mr. Abu-Jamal lost consciousness. He was rushed to Schuylkill Medical Center. Upon testing his blood glucose was found to be 507. He had gone into diabetic shock and was placed in the Critical Care Unit.

16. He was returned to the prison on April 1. His release papers indicate the prognosis as "guarded" and include the following medical issues: diabetes, new onset, encephalopathy secondary to hyperglycemia, dehydration, acute kidney injury, hyponatremia, hypokalemia, asymptomatic gallstones, skin rash, anemia and a history of hepatitis C.

17. The prison continued to administer the drug cyclosporine despite the fact that it is contraindicated for an African-American of Mr. Abu-Jamal's age who has sudden-onset diabetes.

18. Prior to Mr. Abu-Jamal's hospitalization, in March 2015, plaintiff attorney Bret Grote was engaged to advocate on behalf of Mr. Abu-Jamal for appropriate medical care. His efforts since that time have included visits, procurement of medical records, and consultation with medical experts.

19. Since that time, the main effort has been trying to get DOC to administer appropriate tests in order to reach a diagnosis that would explain the myriad of serious symptoms experienced by plaintiff Abu-Jamal. In that regard, Plaintiff Grote engaged Corey Weinstein, M.D., to review Mr. Abu-Jamal's medical records. On April 28, 2015, plaintiff Grote transmitted a medical opinion letter from Dr. Weinstein to the Department of Corrections.

20. Dr. Weinstein opined, *inter alia* that there should be an "occult malignancy workup" to determine the cause of the still-present severe rash as it was indicative of T-Cell Lymphoma. Dr. Weinstein noted:

> The workup to investigate the cause of the rash is urgent at this time. If it is due to lymphoma or some other serious underlying medical condition then delaying the diagnosis may have severe and even lethal consequences.

21. On or about May 2, 2015, plaintiff attorney Robert J. Boyle was engaged to work with plaintiff attorney Grote concerning efforts to secure Mr. Abu-Jamal adequate medical care, including but not limited to litigation.

22. On Friday May 8, 2015, plaintiff attorney Grote met with Mr. Abu Jamal at SCI Mahanoy. He observed that the skin rash persisted, and that his skin had broken open on his ankle. On Saturday May 9, Mr. Abu-Jamal had a personal visit at the same facility.

23. On Tuesday, May 12, Mr. Abu-Jamal's wife received a telephone call stating that Mr. Abu-Jamal had been admitted to the hospital

24. On May 13, plaintiff attorney Grote telephones DOC counsel Laura Neal and was informed that Mr. Abu-Jamal had been admitted to Geisinger Medical Center. The stated reason for admission was that SCI Mahanoy medical staff was concerned about a possible infection in his leg due to the skin rash.

25. Counsel Neal further informed plaintiff attorney Grote that a biopsy of the skin, performed on May 4, 2015 at the prison, showed negative results. However, according to Dr. Weinstein that biopsy was sub-optimal as it did not include skin from Mr. Abu-Jamal's trunk. Thus, he stated, the results may not be reliable. Plaintiff attorney Grote requested a second biopsy.

26. Plaintiff attorney Grote requested that he be permitted to visit with Mr. Abu-Jamal at Geisinger. Mr. Abu-Jamal's wife made the same request.

27. After initially being told that Defendant Kerestes would permit visits from immediate family members, both plaintiff attorney Grote and Mrs. Abu-Jamal were told that Mr. Abu-Jamal would be denied all visitation, including visits with his attorneys, while at Geisinger. Nor would Mr. Abu-Jamal be permitted to telephone his attorneys and/or his wife.

28. DOC counsel asserted that the prohibition on visitation and phone calls was the policy of Geisinger Medical Center.

29. When plaintiff Abu-Jamal was hospitalized at Schuylkill Medical Center from March 30 through April 1, he was permitted visits from immediate family members on March 31 and April 1. These visits were authorized by defendant Kerestes and occurred without incident.

30. On Thursday, May 14, plaintiff attorney Grote contacted Geisinger Medical Center's litigation counsel, Donald Zaycosky. Mr. Zaycosky agreed to seek authorization from the Chief Medical Officer and DOC officials to permit family and attorney visits and phone calls with Mr. Abu-Jamal. Prior to this filing, on the morning of Monday, May 18, plaintiff Abu-Jamal was granted a 15-minute phone call with Wadiya Jamal. All communication with his lawyers remains prohibited, as does all visitation.

31. Neither the DOC nor Geisinger Medical Center have provided any justification for the total prohibition on communications with plaintiff Abu-Jamal.

32. Upon information and belief, Mr. Abu-Jamal remains at Geisinger. However, there has been no communication from Mr. Abu-Jamal to either his attorneys or family since his last visit on May 9, 2015.

33. Neither the attorney plaintiffs nor the family are aware of what medical tests or procedures have been conducted on Mr. Abu-Jamal while he has been at Geisinger.

34. In order for counsel to be able to perform their professional duties for Mr. Abu-Jamal, it is necessary that they meet with him. The denial of such visitation is preventing the plaintiff attorneys from advocating on Mr. Abu-Jamal's behalf. This includes but is not limited to preparing litigation for Mr. Abu-Jamal to secure his Eighth and Fourteenth Amendment rights to constitutionally adequate medical care and access to the courts.

35. In addition, Mr. Abu-Jamal himself is being denied access to his attorneys, cannot make requests of them and cannot use them to bring legal actions that they might deem appropriate.

36. There is no adequate remedy at law. Injunctive relief is the only means by which Mr. Abu-Jamal's rights can be secured.

37. Accompanying this complaint is a motion for a preliminary injunction and temporary restraining order brought on order to show cause. Pending resolution of the motion, plaintiff's request an order requiring the

defendants to permit visitation between Mr. Abu Jamal and the plaintiff attorneys and Mr. Abu Jamal and his wife Wadiya Jamal.

CAUSES OF ACTION

I.

The actions of the defendants, and each of them, violate the plaintiffs' First and Fourteenth Amendment rights to freely associate and to practice their profession.

II.

The actions of the defendants, and each of them, violate plaintiff Mumia Abu-Jamal's Fifth and Fourteenth Amendment right of access to the Courts.

III.

The actions of the defendants, and each of them, violate plaintiff Mumia Abu-Jamal's First Amendment right of association by prohibiting all communication with his family.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant the following relief:

A. Grant a preliminary injunction ordering defendants to permit attorney-client visits between plaintiff attorneys and plaintiff Abu-Jamal at Geisinger Medical Center;

B. Grant a permanent injunction ordering defendants to permit attorney-client visits whenever plaintiff Abu-Jamal is taken from a DOC facility to receive inpatient medical treatment;

C. Grant a preliminary injunction ordering defendants to permit plaintiff Abu-Jamal to receive visits from his family while he is at Geisinger Medical Center;

D. Grant a permanent injunction ordering defendants to permit family visits when plaintiff Abu-Jamal is taken from a DOC facility to receive inpatient medical treatment;

E. Grant attorneys' fees and costs.

*/s/ Bret D. Grote*
Bret D. Grote
PA I.D. No. 317273
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA 15221
Telephone: (412) 654-9070
bretgrote@abolitionistlawcenter.org

*/s/ Robert J. Boyle*
Robert J. Boyle
277 Broadway
Suite 1501
New York, N.Y. 10007
(212) 431-0229
Rjboyle55@gmail.com
NYS ID# 1772094
Application for *pro hac vice*
Admission pending

11

## VERIFICATION

I, Bret Grote, have read the foregoing Verified Complaint and, pursuant to 28 U.S.C. § 1746, verify under penalty of perjury that the facts stated therein that relate to me are true and correct to the best of my knowledge, information, and belief. Those facts in the Verified Complaint that do not relate to me specifically are alleged upon information and belief, and I believe these facts to be true upon such information and belief.

Executed on May 15, 2015

Bret Grote