**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MUMIA ABU-JAMAL** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 15-Cv-00967** |
| | : | **(RDM)(KM)** |
| **v.** | : | |
| | : | |
| **JOHN KERESTES, Superintendent State Correctional Institution Mahanoy** | : | **Judge Robert D. Mariani** |
| | : | |
| **Paul Noel, DOC Director of Bureau of Health Care Services** | : | **Magistrate Judge Karoline Mehalchick** |
| | : | |
| **Christopher Oppman, DOC Deputy Secretary for Administration** | : | **ELECTRONICALLY FILED** |

**Dr. John Lisiak, SCI Mahanoy**

**Dr. Shaista Khanum, SCI Mahanoy**

**Scott Saxon, Physician's Assistant, SCI Mahanoy**

**Chief Health Care Administrator John Steinhart, SCI Mahanoy**

**GEISINGER MEDICAL CENTER**

**Defendants.**

## BRIEF IN OPPOSITION TO DEFENDANT GEISINGER MEDICAL CENTER'S MOTION TO DISMISS

### I. Facts and Procedural History Relevant to Motion *Sub Judice*

The plaintiff Mumia Abu Jamal is currently an inmate in the custody of the Pennsylvania Department of Corrections (DOC). (First Amended Complaint Dkt..

57, ¶ 1). Defendant John Kerestes is the Superintendent, or "Facility Manager" of the State Correctional Institution at Mahanoy where Mr. Abu Jamal has been housed. As such he is responsible for the health and well-being of inmates in his charge. Dkt. 57, ¶ 2. In or about January 2012, plaintiff tested positive for the Hepatitis C antibody Dkt. 57, ¶ 25. No follow-up blood work was conducted, despite Mr. Abu Jamal's repeated requests that the defendants, including defendant Kerestes, cause such follow up bloodwork be performed. Dkt. 57, ¶ 26-27.

In or about August 2014, plaintiff began experiencing an itchy rash. By February 2015 that rash covered 70% of his body. Steroids and cyclosporine were prescribed. But the rash persisted. Dkt. 33-34. At about the same time, Mr. Abu-Jamal's blood glucose level rose to 419. Mr. Abu-Jamal was never informed that his glucose level was abnormally high. Dkt. 57, ¶¶ 35-37. On Mach 30, 2015 Mr. Abu Jamal lost consciousness and was transported to an outside hospital. His glucose level was determined to be 507. His hospital release papers noted that Mr. Abu Jamal had untreated Hepatitis C. The defendants, including defendant Kerestes, did not perform or cause to be performed any follow up concerning the Hepatitis C.

Mr. Abu-Jamal's rash persisted and became more severe. On May 12, 2015, plaintiff Mumia Abu-Jamal was transported from State Correctional Institution (SCI) Mahanoy to Geisinger Medical Center after experiencing severe pain in his lower extremities Dkt. 57, ¶ 48. He remained there until May 19, 2015. During that time he was subject to a total prohibition on all communication, including visits and phone

calls, with his attorneys at the direction of defendant Kerestes. Dkt. 57, ¶ 50. He was also denied all visits from family and only provided a phone call with his wife after 7 days in an exception to the prohibition. On May 19, Mr. Abu-Jamal was released from Geisinger Medical Center. Dkt. 57, ¶¶ 51-54.

On May 18, 2015, plaintiff's counsel filed this lawsuit. The initial complaint raised claims that only arose out of the denial of visitation and communication while the plaintiff was housed at Geisinger Medical Center. They included claims under the First, Fifth, and Fourteenth Amendments against SCI Mahanoy Superintendent John Kerestes and Geisinger Medical Center. Dkt. 1.

After brief improvement in his health following release from Geisinger, Mr. Abu-Jamal's health deteriorated again. The rash returned and became more and more severe. His extremities became, and remained, swollen. His bloodwork showed persistent anemia. Dkt. 57, ¶¶ 59-61.

A blood test performed in July 2015 revealed that Mr. Abu Jamal has chronic Hepatitis C. His own medical consultants have opined that his numerous health issues are likely manifestations of Hepatitis C. The defendants, including defendant Kerestes, have been made aware of that fact but have refused to provide Mr. Abu Jamal with treatment for the Hepatitis C. Dkt. 57, ¶¶ 62-66.

After obtaining leave of court, Plaintiff filed an amended complaint on November 24, 2015. That complaint raises claims against DOC defendants, including defendant Kerestes pertaining to his medical care. Dkt. 57, p. 16-19. Defendant Kerestes has

now moved to dismiss some of the claims against him in this action. Dkt. 81. For the following reasons, defendant's motion to dismiss should be denied.

## II. Legal Argument

### Statement of Questions Involved

**Question:** Is Defendant John Kerestes liable for money damages in his individual capacity for acts he performed under color of state law? Are Mr. Abu-Jamal's official capacity claims for injunctive relief properly raised?

**Suggested answer:** Yes.

**Question:** Did Mr. Abu-Jamal sufficiently allege the personal involvement of defendant Kerestes?

**Suggested answer:** Yes.

**Question:** Has Mr. Abu-Jamal sufficiently pled access to the courts and First Amendment claims for prospective relief?

**Suggested answer:** Yes.

**Question:** Is Mr. Abu-Jamal permitted to obtain discovery and offer evidence in support of his First Amendment claims regarding the unreasonableness of defendants' visitation restrictions?

**Suggested answer:** Yes.

**Question:** Do Mr. Abu-Jamal's claims pertaining to his stay at Geisinger Medical Center fall within an exception to the mootness doctrine?

**Suggested answer:** Yes.

**a.** Defendant Kerestes Is Liable For Money Damages In His Individual Capacity For Actions He Took Under Color of State Law

As stated clearly in the First Amended Complaint, defendant John Kerestes is sued in both his individual and official capacities. Dkt. 57, ¶ 2. "Individual capacity"

suits are not deemed actions against the State and are not barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 26-28 (1991). Thus, Defendant Kerestes is liable in his individual capacity for money damages for unconstitutional actions committed under color of state law. *Id.* See also *Monroe v. Pape*, 356 U.S. 167, 172 (1961)(Through § 1983 Congress sought "to give remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position.") Plaintiff seeks money damages from defendant Kerestes in his individual capacity, not his official capacity. Accordingly, his motion to dismiss should be denied. [1]

**b. The Personal Involvement of Defendant Kerestes Has Been Sufficiently Alleged**

To survive a motion to dismiss, Plaintiff is only required to plead "enough facts to state a claim to relief that is plausible on its face." *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1322 n.12 (2011)). A court considering a motion to dismiss for failure to state a claim "must accept as true the factual allegations in the complaint." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). The court must construe the facts and reasonable inferences that can be drawn from the facts in the light most favorable to the non-moving party. *Dee v. Marriot Int'l, Inc.*, No. Civ. A. 99-2459, 1999 WL

---

[1] Although not raised by defendant Kerestes, it is well-settled that claims for prospective injunctive relief against a state official in their "official" capacity, such as those made herein, are also not barred by the Eleventh Amendment under the doctrine first recognized in *Ex Parte Young*, 209 U.S. 123 (1908). "[A] state official sued in his official capacity for prospective injunctive relief is a person within section 1983 and the Eleventh Amendment does not bar such a suit." *Kozlow v. Commonwealth*, 302 F.3d 161, 179 (3d Cir. 2002).

975125, at *2 (E.D. Pa. Oct. 6, 1999) (citing *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)). The burden is on the moving party to show there is no actionable claim. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980). When evaluating a motion to dismiss the court will "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents[.]" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

In Mr. Abu-Jamal's amended complaint it is alleged that defendant Kerestes

> is the Superintendent at SCI Mahanoy. Defendant Kerestes is responsible for the overall operation of SCI Mahanoy. Defendant Kerestes has the power to authorize attorney and family visits with individuals in the custody of SCI Mahanoy when they are in a hospital off of prison grounds. In addition, he is responsible for the well-being and health of individuals incarcerated at SCI Mahanoy.

Dkt. 57 at ¶ 2.

The Visitation/Communication Claims

The complaint alleges that defendant Kerestes initially decided to permit visitation at Geisinger Medical Center and that this decision was conveyed to plaintiff's counsel. Dkt. 57 ¶ 50. The visitation was then denied. *Id.* The clear inference to be drawn is that defendant Kerestes personally determined whether or not plaintiff Abu Jamal would be permitted visits with his family and attorneys and therefore was personally involved in the constitutional violations alleged herein. The

court is also permitted to consider the DOC policy DC-ADM 812 on Inmate Visiting Privileges, which is a public record available on the DOC website. This policy explicitly provides that "[v]isiting privileges for an inmate who is in an outside hospital as an inpatient will only be permitted as approved by the Facility Manager [i.e. the Superintendent] or in cases of serious illness or injury that may be life threatening." http://www.cor.pa.gov/Administration/Documents/DOC%20Policies/812%20Inmate%20Visiting%20Privileges.pdf at § 1(I)(1). Given the foregoing, defendant Kerestes personal involvement in the violations of Mr. Abu-Jamal's right to access the courts and rights of association have been sufficiently alleged.

Eighth Amendment/Medical Care Claims

As SCI Mahanoy's Superintendent or "Facility Manager", defendant Kerestes is responsible for the overall well-being and health of those in custody at SCI Mahanoy. Dkt. 57 at ¶ 2. "Both the conditions of confinement and the quality of medical care rendered within the prison are matters within the responsibility of the Superintendent, and if steps could have been taken and were not during [defendant's] tenure to alleviate these conditions, a trier of fact could conclude that [defendant] was in fact deliberately indifferent to those conditions." *Langley v. Coughlin*, 715 F.Supp. 522, 548 (S.D.N.Y. 1989); *see also Clarkson v. Coughlin*, 783 F.Supp. 789, 797 (S.D.N.Y. 1992). As Mr. Abu-Jamal's health deteriorated in the spring and summer of 2015, defendant Kerestes was made aware that plaintiff's own medical consultants had linked his symptoms to chronic Hepatitis C and requested that he be treated for that

disease. (Dkt. 57, ¶¶ 62-66).

That defendant Kerestes is among those responsible for the continuing failure to treat Mr. Abu-Jamal's Hepatitis C and other health issues is additionally demonstrated by the following. Plaintiff Abu-Jamal filed a series of grievances concerning his health care. He demanded, *inter alia*, a treatment plan for his skin condition and adequate diagnostic testing to determine its source. Defendant Kerestes himself denied plaintiff's appeal from the denial of that grievance. *See* Copies of Grievances and Replies, Dkt. 37-2, Ex. 2. For purposes of this motion to dismiss, these documents demonstrate that defendant Kerestes was aware of Mr. Abu-Jamal's health issues, had the authority to taken action, but refused to intervene.

Both this court and the Third Circuit have held that where, as here, the claimed constitutional violation is a continuing one, the denial of an administrative grievance constitutes the type "personal involvement" required by § 1983. . As this court recently explained:

> In some circumstances a grievance may be sufficient to put a prison official on notice of alleged continuing abuse by other prison staff and therefore may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims. . . .

*Fogle v. Cumberland Cty. Prison*, No. 1:15-CV-01608, 2015 WL 8732064, at *5 (M.D. Pa. Nov. 2, 2015). Thus, a constitutional violation that is continuing in nature may render supervisory officials who are aware of it and have the authority to intervene and remedy the violation, liable. *See also Diaz v. Palakovich*, 448 F. App'x 211, 214-15

(3d Cir. 2011) ("a reasonable factfinder could find that these defendants had knowledge of the [initial] violations through [the prisoner's] grievances and acquiesced in the violations by failing to address [them]."). That is the case here. Defendant Kerestes was made aware, through Mr. Abu Jamal's grievances and his appeals, that he was in an ongoing health crisis that was not being addressed by prison medical staff. Plaintiff requested that he intervene. Defendant Kerestes' refused. Instead, he affirmed the denial of plaintiff's administrative grievance thereby allowing the constitutional violation to continue. His motion to dismiss should be denied.

**c. A Policy or Practice that Violates Plaintiff's Constitutional Right of Access to the Courts States a Claim for Injunctive Relief**

It is well settled that a prisoner has the right to petition a court for redress of grievances, including for violations of his or her constitutional rights. *Bounds v. Smith*, 430 U.S. 817, 817-818 (1977). A necessary corollary of that right is that prison administrators are required to assist inmates in the preparation and filing of legal papers. *Id.* This includes, but is not limited to, permitting the inmate to visit and consult with an attorney and/or the attorney's duly authorized representative. *Procunier v. Martinez*, 416 U.S. 396, 420 (1974). Inmates must be afforded "a reasonable opportunity to seek and receive the assistance of attorneys". *Id* at 419. *See also Abu-Jamal v. Price,* 154 F.3d 128 (3d Cir. 1988) (recognizing that regulations that restrict an inmate's access to paralegals may infringe on the right of access to the courts).

That right has been denied here. Between May 12 and May 19, 2015 the defendants instituted a policy of total prohibition. Mr. Abu-Jamal could not meet with his attorneys. Nor could he even speak with them over the telephone.[2] This restriction will apparently occur anytime Mr. Abu-Jamal is a patient at Geisinger Medical Center. This wholesale prohibition on contact with attorneys is a clear violation of *Bounds* and *Procunier*.

Mr. Abu-Jamal's inability to communicate with his wife, who has been recognized by the DOC as the person, in addition to his attorneys, who is authorized to obtain medical information raises similar issues. He has, at a minimum, a right to some form of personal visitation. *Cf Overton v. Bazzeta* 529 U.S. 126 (2003) (upholding restrictions on contact visitation but only after applying test adopted in *Turner v. Safley* 482 U.S. 78 (1987) and finding that they served a legitimate penological interests). That right, too, had been totally denied, and will be again the next time Mr. Abu-Jamal receives inpatient treatment at Geisinger.

The loss of a constitutional right, even for a minimal period of time, constitutes actionable injury, and has even been recognized as sufficiently injurious to establish the type of irreparable harm justifying a preliminary injunction. *Comm. Distribution Co., v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996); *Covino v. Patrissi*, 967 F.3d 73, 77 (2d Cir. 1992); *Hohe v. Casey*, 868 F.2d

---

[2] We do not imply that telephone consultation is a sufficient substitute for an in-person attorney-client visit.

69, 73 (3rd Cir. 1989); *McDaniel v. Hunter*, 746 F.2d 785, 787 (8th Cir. 1984). In the access to courts context irreparable harm is shown when the state action has hindered efforts to pursue a non-frivolous legal claim, including claims under 42 U.S.C. 1983. *Lewis v. Casey*, 518 U.S. 343, 351-352 (1996).

Plaintiff suffered, and will again suffer irreparable harm due to the complete prohibition of communication between Mr. Abu-Jamal and his attorneys when he is housed at Geisinger. Mr. Abu-Jamal's attorneys were unable to consult with Mr. Abu-Jamal as to the next course of legal action in the midst of an ongoing, severe health crisis that has implicated constitutional rights that are vital to plaintiff's very survival. Given the foregoing, the defendants' actions undoubtedly hindered Mr. Abu-Jamal's efforts to seek legal redress in court and prevented his attorneys from carrying out their professional responsibilities.

When a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). That is not the case here. The *de facto* regulation before the court here is a <u>total prohibition</u> of contact between plaintiff Abu-Jamal and his attorneys. Mr. Abu-Jamal was also denied all contact with his family, including but not limited to his wife. The instant prohibition will apparently remain in effect whenever Mr. Abu-Jamal is at Geisinger Medical Center.

**d. Mr. Abu-Jamal Sufficiently Plead the Unreasonableness of Defendants' Visitation Restrictions.**

Mr. Abu-Jamal's freedom of association claim is also subject to the standard articulated by the U.S. Supreme Court in *Turner*. See *Beard v. Banks*, 548 U.S. 521, 528 (2006) ("restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests, and are not an exaggerated response to such objectives.") (internal citations and quotation marks omitted); *Monroe v. Beard*, 536 F.3d 198, 207 (3d Cir. 2008). The Third Circuit has repeatedly emphasized that the *Turner* inquiry is "fact-intensive," and requires "'a contextual, record-sensitive analysis.'" *Ramirez v. Pugh*, 379 F.3d 122, 130 (3d Cir. 2004) (quoting *Wolf v. Ashcroft*, 297 F.3d 305, 310 (3d Cir. 2002) (quoting *DeHart v. Horn*, 227 F.3d 47, 59 n.8 (3d Cir. 2000) (en banc))). The reasonableness of defendant Kerestes' decision to prohibit all visits states, at a minimum, a "plausible" constitutional claim. *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011). Thus, plaintiff should be able to develop a record, through discovery, to establish that this regulation is not reasonably related to legitimate penological interests.

**e. Defendant Kerestes Is Protected by Sovereign Immunity on Plaintiff's State Law Negligence Claim**

Plaintiff concedes that defendant Kerestes is immune from liability as to the Pennsylvania state law medical neglect claim, but only as to that claim.

**f. Mr. Abu-Jamal's Claim Against Geisinger Medical Center Is Not Moot**

Article III, Section 2 of the Constitution limits the power of the federal judiciary to resolve 'cases and controversies'. Once a case has been filed, federal courts retain jurisdiction unless developments during litigation "eliminate a plaintiff's personal stake" in the remedy sought or "prevent a court from being able to grant the requested relief," thus rendering the claim moot. *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 688-89 (3d Cir. 1996). Where, as here, a plaintiff is challenging past illegal conduct, a case or controversy exists if there are present adverse effects. *Lyons v. City of Los* Angeles, 461 U.S. 95, 101 (1983). A case is not considered "moot" where there is "(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution." *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007) (internal citations omitted). When making that determination on a motion to dismiss, a court must, consistent with Fed.R.Civ.P. 12(b)(6), accept the facts alleged by the plaintiff to be true. *Mitchell v. Horn*, 318 F.3d 523, 526 (3d Cir. 2003).

A claim is not moot if the challenged unconstitutional action is "capable of repetition yet evading review." *Chong v. Dist. Dir., INS,* 264 F.3d 378, 384 (3d Cir. 2001). Two factors must apply. First, the challenged action must be of such short

duration that it cannot be fully litigated prior to its cessation. Second, there must be a reasonable likelihood that the same complaining party *would* be subjected to the same action again. *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993) (citing *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

This case is a textbook example of such a violation. The complete prohibition on plaintiff's communication with his attorneys during his eight days at the hospital was clearly "too short to be fully litigated prior to its cessation or expiration." *Abdul-Akbar*, 4 F3d at 206. Once they learned of the prohibition, his attorneys filed a complaint and a motion for a preliminary injunction demanding access. Plaintiff was released from Geisinger and returned to SCI Mahanoy minutes before a telephone conference with this court. Such a period of time will never be sufficient for an adjudication on the type of restrictions on communication and visitation that plaintiff is challenging here.

Given Mr. Abu-Jamal's undisputed health issues, his advancing age and his sentence of life without the possibility of parole, he remains at imminent risk of having his constitutional rights abruptly and completely terminated whenever he is returned to a hospital for any reason. Defendant Kerestes' motion to dismiss on mootness grounds should be denied.

## III. Conclusion

For the foregoing reasons, this Court should deny defendant Kerestes' motion to dismiss.

Respectfully submitted,

*/s/ Bret D. Grote*
Bret D. Grote
PA I.D. No. 317273
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA 15221
Telephone: (412) 654-9070
bretgrote@abolitionistlawcenter.org

*/s/ Robert J. Boyle*
Robert J. Boyle
277 Broadway
Suite 1501
New York, N.Y. 10007
(212) 431-0229
Rjboyle55@gmail.com
NYS ID# 1772094
*Pro hac vice*

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of Plaintiff's Brief in Opposition to Defendants Kerestes' Motion to Dismiss upon each defendant in the following manner:

Service Via ECF:

For Defendants Kerestes, Oppman, Lisiak, Khanum, Saxon, and Steinhart:
Laura Neal, Esquire
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050
lneal@pa.gov

Fore Defendant Geisinger Medical Center:
Jack Dempsey, Esquire
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, Pennsylvania 18503
jdempsey@mbklaw.com

*s/ Bret D. Grote*
Bret D. Grote
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA 15221

Dated: February 9, 2016