IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MUMIA ABU-JAMAL, et al.,

        Plaintiffs,

v.                               3:15-CV-00967
                                  (JUDGE MARIANI)
JOHN KERESTES, et al.

        Defendants.

## OPINION

### I. INTRODUCTION

Presently before the Court is Defendants Lisiak, Khanum, and Saxon's ("the Medical Defendants") "Partial Motion to Dismiss Plaintiff's Amended Complaint" (Doc. 110). The First Amended and Supplemental Complaint (Doc. 57) contains claims arising out of Plaintiff Mumia Abu-Jamal's hospitalization at Geisinger Medical Center from May 12 to May 19, 2015, as well as his medical conditions, including his ongoing hepatitis C infection.

Plaintiff Abu-Jamal along with Plaintiffs Brett Grote and Robert Boyle, also Abu-Jamal's attorneys of record in this matter, initially filed this action on May 18, 2015 claiming violations of the right to association and access to the courts. (Compl., Doc. 1 at 10). Plaintiffs alleged that Defendant Kerestes and Defendant Geisinger "barred the plaintiff attorneys from visiting with Mr. Abu-Jamal" and further "prohibited all communication between Mr. Abu-Jamal and anyone," with the exception of a short phone call between him and his wife. (Id. at 3). Subsequently, Plaintiffs Boyle and Grote filed notices of voluntary

dismissal (Docs. 17, 18), leaving Abu-Jamal (hereinafter, "Plaintiff") as the only remaining plaintiff.

On November 24, 2015, Plaintiff filed a Supplemental and Amended Complaint (Doc. 57) (hereinafter "Amended Complaint"), which added several defendants, including the Medical Defendants, and which also added Eighth Amendment and state law negligence medical claims related to Plaintiff's hepatitis C and other conditions. The Medical Defendants now move for dismissal of Count II of the Amended Complaint, entitled "Deprivation of Eighth Amendment Right to Medical Care for Hepatitis C," (*see* Doc. 57 at 17), arguing that Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). This Motion (Doc. 110) has been briefed and is ripe for review. For the reasons stated herein, the Court will deny the Medical Defendants' Motion.

## II. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

2

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

### III. ANALYSIS

Count II of Plaintiff's Amended Complaint, entitled "Deprivation of Eighth Amendment Right to Medical Care for Hepatitis C," arises under 42 U.S.C. § 1983. (*See* Doc. 57 at ¶ 1). Section 1983 offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must

show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y.1998).

The standard by which to measure whether a prisoner has exhausted his administrative remedies is whether he has complied with the grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78.

A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

The Pennsylvania Department of Corrections ("DOC") Inmate Grievance System Policy, which has been in effect since May 1, 2015, consists of a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. Pa. Dep't of Corr., DC-ADM 804, Inmate Grievance System (April 27, 2015); *see also Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

Plaintiff has filed – and pursued through the administrative levels of review within the Pennsylvania Department of Correction – one grievance relevant to the case at bar.[1] On April 11, 2015, Plaintiff submitted a signed grievance to the Facility Grievance Coordinator, which was marked as received by Jane Hinman on April 13, 2015 and labeled as Grievance Number 561400. (Doc. 37, Ex. 2 at 1). Plaintiff wrote on the submitted form, "[a]s my handwriting has been hampered by disability, I am submitting attached typed statement per counsel." (*Id.*). The attached, signed typewritten statement reads as follows:

**Grievance regarding medical care:**

This grievance is in regard to medical staff's failure to properly diagnose and monitor my health, causing me to suffer a diabetic shock on Monday, March 30. Staff should have provided specialist care, further diagnostic testing, and monitored glucose levels. Due to the failure by all those involved in the provision of care, as well as their superiors who set the applicable policies and practices, I was subject to a traumatic, near-death experience.

I am seeking as a remedy for my harms an acknowledgment of wrongdoing, improper care, and a detailed plan to prevent any recurrence. I am also requesting that SCI Mahanoy officials permit me to be examined by doctors of my own choosing, and that this should be coordinated with my legal counsel.

---

[1] Because the Medical Defendants base their Motion to Dismiss solely on an administrative exhaustion argument, it is necessary to set forth thoroughly Plaintiff's grievance history as it relates to this case. Plaintiff does not refer to this grievance history in his Amended Complaint (Doc. 57); however "failure to exhaust is an affirmative defense under the PLRA, and [ ] inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). In analyzing a motion to dismiss, a district court may consider indisputably authentic documents related to an inmate's grievance without being required to convert the motion into one for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). As such, the Court has relied upon the identical grievance documents that have been submitted by both Plaintiff and the Corrections Defendants. (*See, e.g.*, Doc. 37, Ex. 2; Doc. 28, Ex. 1 at 89-96).

(*Id.* at 2). The Initial Review Response, dated April 28, 2015, denied Plaintiff's grievance. (*Id.* at 3). On May 19, 2015, after returning to SCI Mahanoy from his hospitalization at Geisinger, Plaintiff filed a document appealing the Initial Review Response. (*Id.* at 4). The Facility Manager's Appeal Response, dated May 26, 2015, upheld the Initial Review Response and denied the appeal. (*Id.* at 5). Plaintiff filed a three-page, handwritten document labeled "Final Grievance Appeal" on June 25, 2015. (Doc. 37, Ex. 2 at 6-8). A "Grievance Referral" dated August 13, 2015 notified Plaintiff that SOIGA had decided to solicit input from the Bureau of Health Care Services regarding the issues raised in his grievance and that a final review decision would thus be delayed. (*Id.* at 9). SOIGA issued a final decision dated September 24, 2015, denying Plaintiff's appeal to that office. (Doc. 43, Ex. 1).

The Medical Defendants argue that Plaintiff has failed to exhaust his administrative remedies with respect to the claims about his Hepatitis C conditions contained in Count II of the Amended Complaint. According to these defendants, Grievance Number 561400 "is addressed to his treatment for hyperglycemia" and Plaintiff did "not raise the argument that he has not received treatment for Hepatitis C," nor "allege[d]" that Defendants failed to perform a Hepatitis C 'workup.'" (Doc. 111 at 4). As such, the Medical Defendants assert that Plaintiff is now "trying to use the perceived association between Hepatitis C and some dermatologic conditions as a backdoor to incorporate this claim into his Complaint," because his "Hepatitis C-related claims were not addressed within Plaintiff's grievance itself,

even if the grievance is read broadly." (*Id.* at 5). After thorough review of the grievance, the Court must disagree.

"As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA." *Jackson v. Ivens*, 244 F. App'x 508, 513-14 (3d Cir. 2007). In *Jackson v. Ivens*, a Third Circuit panel reviewed a district court's finding that an inmate's grievance was unrelated to his § 1983 Eighth Amendment claim, which was based on an alleged delay in the performance of surgery. The inmate's grievance had stated as follows:

> [t]he failure [of] Dr. Burns to properly diagnose and treat the infected cystic mass that has remained in Mr. Jackson's neck, constitutes a deviation from a standard of care. Due to failing timely to diagnose the infection, Mr. Jackson has develope[d] infections . . . . There's no doubt that Mr. Jackson has develop[ed] otologic disease from Dr. Burns['s] misdiagnosis of the infected cystic mass in the neck that has remain[ed] for over a year . . . ."

The Third Circuit read these statements from the grievance to "refer[ ] to the delay in receiving treatment, namely, that masses had been in his neck for over a year; that no culture or diagnostic test had been performed to determine their cause; and that infections had resulted from the delay," (*id.* at 510), and stated that "it [is] clear that the July 2000 grievance relates to the delay alleged in the complaint." (*Id.* at 513). *See also Mack v. Yost*, 979 F. Supp. 2d 639, 649-50 (W.D. Pa. 2013) (requiring grievance forms and the complaint to be identical is an incorrect interpretation of the PLRA's exhaustion requirement).

9

The Court finds that a reasonable reading of Plaintiff's grievance is susceptible to the interpretation that Plaintiff was complaining of his Hepatitis C or at minimum of potentially Hepatitis C-related conditions. The Court need only refer back to the text of the grievance itself to arrive at this conclusion. First, the typewritten portion of the grievance has, in bold, the heading "**Grievance regarding medical care.**" Plaintiff writes that the grievance "is in regard to medical staff's failure to properly diagnose and monitor my health," which he believes caused him to suffer diabetic shock. He then goes on to suggest that the medical staff should have "provided specialist care" and "further diagnostic testing," in addition to having monitored his glucose levels. The Courts finds it is reasonable to interpret these statements as a complaint about the overall state of Plaintiff's health and the perceived failures of medical staff that may have contributed to it. That that experience had recently resulted in what Plaintiff referred to as "a traumatic, near-death experience" and characterized as "diabetic shock," can be read as derivative of the complaint about the medical staff's management of his health.

This reading is particularly reasonable given Plaintiff's lack of medical expertise; the factual basis of his grievance and of a significant part of this case are grounded in medical conditions, their potentially complex interrelationships, and their treatment in light thereof. Given this, this Court finds that Plaintiff's "compliance with the DOC grievance procedures was substantial and certainly adequate to have exhausted his administrative remedies within the letter and spirit of the [PLRA]." *Douglas v. Byunghak Jin*, No. CIV.A. 11-0350,

2014 WL 811803, at *5 (W.D. Pa. Mar. 3, 2014). The Court will not require plaintiffs such as Abu-Jamal to accurately diagnose their conditions in order to be able to administratively exhaust a grievance about medical care. *See id.* (noting that the inmate "did not have the education or training to be able to pinpoint the exact cause of his pain and deteriorating vision or accurately diagnose its etiology" and finding him to have exhausted his administrative remedies). Indeed, the Initial Review Response received by Plaintiff bolsters this reading of Plaintiff's grievance as going to his health as a whole and to his overall medical care at SCI Mahanoy. The Initial Review Response reads:

> I have reviewed your grievance and your medical record for the noted time period through the present. Your medical condition prior to March 30 through the present time has been addressed through the physicians and medical treatment team at this institution. You were transported to Schuylkill Medical Center on March 30 for treatment and were discharged on April 1 after your medications were adjusted and you were stabilized. After your discharge, you continued to be monitored and treated in infirmary. Your blood sugar remains stable and is controlled on your current oral agent; the consulting dermatologist continues to monitor and treat your skin condition; and your treating physicians continue to review and treat your other medical conditions. Additional testing is being ordered where medically appropriate. Further tests and consultations will be ordered when, in the opinion of the treating physicians, they are medically needed to aid in your treatment and care. You are reminded to assist in your treatment by following the advice of your treating physicians and communicating with your treatment team. Since your release from the infirmary, you have missed your prescribed oral agent on two occasions and have admitted to not following your prescribed medical diet. Your grievance and requests for additional relief are denied.

(Doc. 37, Ex. 2 at 3). Furthermore, the Facility Manager's Appeal Response dated May 26, 2015 denies the appeal in light of the representations in the Initial Review Response, which the Appeal Response summarizes as stating that Plaintiff's "medical condition has been

11

addressed through physicians at this institutions [*sic*] and the medical team at this institution continues to properly monitor and treat your issues." (Doc. 37, Ex. 2 at 5).

"[P]rison officials must be given adequate notice of an inmate's claims, because '[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.'" *Spencer v. Beard*, No. 3:07-CV-1021, 2011 WL 1085697, at *5 (M.D. Pa. Mar. 21, 2011) (quoting *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)). The Court finds that Plaintiff's Grievance Number 561400 was sufficient to give prison officials and the Medical Defendants adequate notice of his claims. Said grievance can reasonably be read as addressing the totality of Plaintiff's medical care at SCI Mahanoy and the responses from prison officials confirm that they understood it as such. While Plaintiff has subsequently focused, sharpened, and more clearly articulated his concerns about his medical care, this is permissible, and, indeed, beneficial for the purpose of civil litigation; there need not be perfect overlap between the grievance and his Amended Complaint in order to satisfy the PLRA. The Medical Defendants may not now rewrite Plaintiff's grievance to be narrower than it is. It is of no moment that they choose to characterize it as "addressed to his treatment for hyperglycemia," (Doc. 111 at 4), or even that the prison's Final Appeal Decision describes the grievance as stating a "concern of not being provided proper medical care . . . for [Plaintiff's] new onset diabetic condition" and addresses only diabetes-related topics, such as hyperglycemia, insulin, and blood sugar, (*see* Doc. 43, Ex. 1). Plaintiff's grievance is addressed to alleged failures in his overall health and medical

care, which he believed *resulted* in diabetic shock, and the responses received at the Initial Review state and the intermediate appeal stage indicate that it was perceived as such. As discussed above, Plaintiff is a layperson and the Court does not expect him at the time he filed his initial grievance to have had full understanding of his medical afflictions, their causes, their symptoms, and their interrelationships. Therefore, the Court finds that Plaintiff administratively exhausted the claim forming the basis of Count II of the Amended Complaint.

## V. Conclusion

For the foregoing reasons, the Court will deny the Medical Defendants' Motion for Motion to Dismiss (Doc. 110). A separate Order follows.

_____
Robert D. Mariani
United States District Judge