IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MUMIA ABU-JAMAL

vs.

**FILED ELECTRONICALLY**

CIV. ACTION NO. 15-CV-00967

JOHN KERESTES; THERESA
DELBALSO; JOSEPH SILVA;
PENNSYLVANIA DEPARTMENT OF
CORRECTIONS; JOHN WETZEL;
DR. PAUL NOEL; DR. JAY COWAN;
CHRISTOPHER OPPMAN; DR. JOHN
LISIAK; DR. SHAISTA KHANUM;
SCOTT SAXON; JOHN STEINHART

**BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS
PLAINTIFF'S FOURTH AMENDED COMPLAINT OF DEFENDANTS,
CORRECT CARE SOLUTIONS, LLC, DR. JAY COWAN, DR. JOHN
LISIAK, DR. SHAISTA KHANUM, AND SCOTT SAXON, PA-C**

Plaintiff, Mumia Abu-Jamal, is an inmate presently incarcerated within the

Pennsylvania Department of Corrections at S.C.I.-Mahanoy.  Plaintiff initiated suit

on May 18, 2015, while he was hospitalized at Geisinger Medical Center, arguing

that Defendants, Geisinger Medical Center and the Superintendent of S.C.I.-

Mahanoy, John Kerestes, violated his First, Fifth, and Fourteenth Amendment

rights by refusing to allow Plaintiff's friends, family, and attorneys from visiting

and/or calling him while he was hospitalized.

Following a lengthy motion practice, Plaintiff amended his Complaint

naming various other Defendants, including Moving Defendants, Dr. Jay Cowan.

Dr. John Lisiak, Dr. Shaista Khanum, and Scott Saxon, PA-C, alleging both

medical malpractice and Eighth Amendment violations.  Plaintiff filed a Fourth Amended Complaint on August 23, 2017, wherein he contends that Drs. Lisiak, Dr. Khanum, and Mr. Saxon failed to adequately treat several of Plaintiff's medical conditions, including Hepatitis C, hyperglycemia, and an unspecified dermatological condition. (ECF No. 245).  He also contends that Dr. Cowan was involved in the development of the DOC's Hepatitis C Protocol and, in this capacity, denied Hepatitis C treatment to Plaintiff.  (ECF No. 245, ¶¶ 50, 56).

On September 30, 2016, Plaintiff filed a Complaint in a related matter, 3:16-CV-2000, against the Department of Corrections, Correct Care Solutions, LLC, and others, seeking injunctive relief in the form of treatment with direct-acting anti-viral medications for his Hepatitis C.  Since that time, Plaintiff has qualified for treatment pursuant to the Department of Corrections' Hepatitis C Protocol, and treatment of Plaintiff with Harvoni has commenced.  The Court thereafter granted an Order consolidating the instant action with related Case No. 3:16-2000.

Defendants now move for the partial dismissal of Plaintiff's Fourth Amended Complaint.

# I.  <u>FACTUAL HISTORY</u>

According to his Fourth Amended Complaint, Plaintiff first tested positive for the Hepatitis C antibody during routine blood work in 2012.  (ECF No. 245, ¶

60).   Approximately two years later, in August 2014, Plaintiff contends that his Hepatitis C infection began to manifest itself through a severe skin rash.   (ECF No. 245, ¶ 63).   Plaintiff acknowledges that, over the next several months, he was seen on multiple occasions at the prison's sick call, where he was prescribed steroid creams for his rash.   (ECF No. 245, ¶ 64).   Notwithstanding, his rash persisted and, by February 11, 2015, Dr. Lisiak noted that Plaintiff's rash covered seventy percent (70%) of his body.   (ECF No. 245, ¶ 65).   Nine days later, Dr. Khanum ordered that Plaintiff be admitted to the prison infirmary after he began experiencing pain and discomfort from the rash.   (ECF No. 245, ¶ 68).   At or around that time, Moving Defendants prescribed additional medications to treat the rash, including a new steroid cream, oral prednisone, and Cyclosporine (an immunosuppressant).   (ECF No. 245, ¶ 71).

On February 20, 2015 – the day he was admitted to the prison infirmary – Plaintiff's blood glucose was noted to be elevated at 167.   (ECF No. 245, ¶ 69). Plaintiff contends, however, that he was not advised of his elevated glucose.   (Id.). Plaintiff's blood work taken on March 6, 2015 again revealed elevated glucose of 419, which evidenced of hyperglycemia.   (ECF No. 245, ¶ 72).   Plaintiff now avers that Moving Defendants failed to take any action to timely address Plaintiff's hyperglycemia, order follow-up glucose testing, or advise Plaintiff of the elevated glucose results.   (ECF No. 245, ¶ 74).   Moreover, Plaintiff avers that Defendants

continued to prescribe Cyclosporine even though it is purportedly contraindicated for African Americans with sudden onset diabetes.  (ECF No. 245, ¶ 75).

Thereafter, on March 30, 2015, Plaintiff was sent to Schuylkill Medical Center after losing consciousness.  (ECF No. 245, ¶ 78).  Plaintiff was found to be hyperglycemic, with a blood glucose of 507, and was admitted to the Critical Care Unit.  (ECF No. 245, ¶ 78).  Plaintiff was discharged back to the prison two days later.   (ECF No. 245, ¶ 80).   Importantly, Plaintiff does not indicate that he experienced any further episodes of hyperglycemia following his release from the hospital.  (See, generally, ECF No. 245).

Over the next several weeks, Plaintiff's blood work was closely monitored, and revealed low hemoglobin levels.  (ECF No. 245, ¶ 82).  Although Plaintiff acknowledged that, during this period of time, his health was being followed, he alleges that additional testing should have been ordered to determine the cause of his rash and anemia.  (ECF No. 245, ¶ 98).

On May 12, 2015, Plaintiff was admitted to Geisinger Medical Center after complaining of extreme pain to his lower extremities while showering.  (ECF No. 245, ¶ 99).  While hospitalized, numerous diagnostic tests were conducted, which again revealed low hemoglobin indicative of anemia.  (ECF No. 245, ¶ 106).  Although these tests, which included a bone marrow biopsy, ruled out some serious conditions, Plaintiff contends that the underlying cause of his rash and

anemia were not determined.  (ECF No. 245, ¶ 107).  Also during this admission, Plaintiff underwent a CT of his liver, which revealed signs of cirrhosis.  (ECF No. 245, ¶¶ 108).

Plaintiff was discharged from Geisinger Medical Center on May 18, 2015. (ECF No. 245, ¶ 110).  According to Plaintiff, the discharge report indicated that Plaintiff may be a candidate for Hepatitis C treatment.  (Id.).  Notwithstanding, Plaintiff now avers that Defendants failed to order blood tests to determine whether Plaintiff's Hepatitis C was chronic.  (ECF No. 245, ¶ 111).

Although Plaintiff acknowledges that his overall health improved for a period of time after his discharge from Geisinger Medical Center, by mid-June, 2015, his skin condition worsened, spreading throughout his body and causing him constant itching.  (ECF No. 245, ¶¶ 112, 113).  At or around that time, Plaintiff's counsel contacted the Department of Corrections, requesting that blood work be performed to determine whether Plaintiff's Hepatitis C was the cause of his other health issues, including his skin condition, anemia, and hyperglycemia.  (ECF No. 245, ¶ 115).  Thereafter, on July, 2015, Plaintiff underwent blood work, including viral load testing, which indicated that Plaintiff's Hepatitis C was chronic.  (ECF No. 245, ¶ 122).

After being advised that his disease was chronic, Plaintiff demanded treatment with either Harvoni or Sovaldi, the two anti-viral medications presently

available to treat and potentially cure Hepatitis C.  (ECF No. 245, ¶ 125).  At that time, however, he was advised that the Department of Corrections was not treating anyone with anti-viral medications.  (ECF No. 245, ¶ 125).

According to his Complaint, since July, 2015, Plaintiff's Hepatitis C has been closely monitored via blood work.  (ECF No. 245, ¶ 127, 132).  Although not stated within the Fourth Amended Complaint, as this Court is aware, Plaintiff qualified for anti-viral treatment under the DOC's Hepatitis C protocol, and treatment was commenced in April, 2017.

Plaintiff also avers that his skin condition has been constantly treated with "therapies"; however, he avers that these therapies provided him only temporary relief.  (ECF No. 245, ¶ 130).  Although his skin condition and Hepatitis C have not been causally linked, Plaintiff suggests that his skin condition was caused by untreated Hepatitis C, stating "[b]etween 20-40% of chronic hepatitis C patients have cutaneous (skin) manifestations of the disease.  Among them are the relatively rare conditions of lichen planus and necrolytic acral erythema (NAE), and more common ones such as psoriasis, eczema and pruritus (persistent itching)."  (ECF No. 245, ¶ 42).

## II.   ARGUMENT

### A.   PLAINTIFF'S DEMAND FOR INJUNCTIVE RELIEF MUST BE DISMISSED WHERE THERE IS NO LIVE CONTROVERSY AS TO MOVING DEFENDANTS.

Within his Fourth Amended Complaint, Plaintiff has sued Dr. John Lisiak, Dr. Shaista Khanum, and Scott Saxon, PA-C in their individual capacities for money damages and *in their official capacities for injunctive relief*.  (ECF No. 245, ¶¶ 13-15).  The injunctive relief he seeks includes the following:

- "Grant an injunction ordering the defendants to administer to Mr. Abu Jamal direct-acting anti-virals, such as Harvoni or Solvadi as treatment for his hepatitis C;"  (*This request is now deemed moot where Plaintiff has begun treatment with Harvoni*);

- "Granting Mr. Abu-Jamal the right to an in-person consultation and examination by the medical doctor of his choice under conditions that would permit such an examination and further ordering that if DOC refuses to permit adequate consultation and/or treatment by a doctor of his choice inside the prison that the same be ordered to take place outside of DOC custody;"

- "Grant a permanent injunction ordering defendants to permit attorney-client visits whenever plaintiff Abu-Jamal is taken from a DOC facility to receive inpatient medical treatment;"

- "Grant a permanent injunction ordering defendants to permit family visits when plaintiff Abu-Jamal is taken from a DOC facility to receive inpatient medical treatment."

(ECF No. 245, "Prayer for Relief" at ¶¶ D-G).

Importantly, however, neither Dr. Shaista Khanum, Dr. Lisiak, nor physician assistant Scott Saxon any longer provides medical care at SCI-Mahanoy. Therefore, even if this Court deems injunctive relief prudent, these Defendants are not in a position to comply with any prospective relief.

Additionally, in the instant case Plaintiff seeks injunctive relief against Dr. Jay Cowan and in the related Case No. 3:6-cv-2000, Plaintiff seeks injunctive relief against Correct Care Solutions, LLC, requesting specifically that the Court "[g]rant a preliminary and permanent injunction ordering the defendants to administer to Mr. Abu Jamal direct-acting anti-viral drugs, such as Harvoni or Sovaldi as treatment for his hepatitis C." (No. 3:16-cv-2000, ECF No. 1, "Prayer for Relief"). As stated above, however, since the filing of Plaintiff's Complaint, Mr. Abu-Jamal has qualified for treatment under the Department of Corrections' Hepatitis C Protocol and commenced treatment with Harvoni. (No. 3:16-cv-2000, ECF No. 65). Therefore, Plaintiff's claims as raised against Correct Care Solutions, LLC and Dr. Jay Cowan are now moot.

The adjudicatory power of a federal court depends upon the "continuing existence of a live and acute controversy." Steffel v. Thompson, 415 U.S. 452, 459 (1974). A federal court may entertain "only actual, ongoing cases or controversies." Burkey v. Marberry, 556 F.3d 142, 147 (3d Cir.2009) (*quoting* Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). Where a plaintiff

seeks injunctive relief for prison conditions that he is no longer subject to, there is no longer a live controversy and a court cannot grant that injunctive relief.  See Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir.1993); Fortes v. Harding, 19 F. Supp.2d 323, 326 (M.D.Pa.1998).

In the instant matter, Dr. Khanum, Dr. Lisiak, and Mr. Saxon are not employed at SCI-Mahanoy and, therefore, the claim for injunctive relief against these Defendants is no longer an "actual, ongoing case or controversy." Additionally, any claim for injunctive relief asserted against Dr. Jay Cowan and Correct Care Solutions, LLC is moot where Plaintiff has already received the relief he was requesting:  treatment with Harvoni.  Because Plaintiff fails to state a claim upon which relief may be granted, his claim for injunctive relief as to Moving Defendants must be dismissed pursuant to 28 U.S.C. §1915A(b)(1).

**B.    PLAINTIFF'S EIGHTH AMENDMENT CLAIM AS IT PERTAINS TO THE DEPARTMENT OF CORRECTIONS' HEPATITIS C POLICY MUST BE DISMISSED WHERE PLAINTIFF HAS FAILED TO PLEAD THE PERSONAL INVOLVEMENT OF DR. KHANUM, DR. LISIAK, OR MR. SAXON IN THE DEVELOPMENT OR ENFORCEMENT OF THE POLICY.**

Within his Fourth Amended Complaint, Plaintiff contends that the Defendants developed and enforced an unconstitutional policy for the treatment of inmates with Hepatitis C.  Notwithstanding, Plaintiff offers no facts within the

Complaint that suggests that Dr. Lisiak, Dr. Khanum, or Mr. Saxon were

personally involved in creating the policy in question.  Rather, he states:

- "In 2013, when the current anti-viral drugs became available, *the DOC, through its Bureau of Health Services, headed by defendant Oppman and with the knowledge and approval of defendants Oppman and Wetzel* ceased treating all inmates in the custody of the DOC who have active, i.e., chronic hepatitis C."  (ECF No. 245, ¶ 48) (emphasis added);

- "This policy continued *under the direction of defendant Oppman, with the knowledge and approval of defendant Wetzel* throughout 2014 and most of 2015."  (ECF No. 245, ¶ 49) (emphasis added);

- "In late 2015, defendants *Oppman, Cowan, and Noel, with the knowledge and approval of defendant Wetzel* formulated and adopted a medical protocol concerning who would be treated and not treated with Hepatitis C anti-viral drugs."  (ECF No. 245, ¶ 50) (emphasis added);

- "The policy was adopted and implemented by *defendants Wetzel, Oppman, Noel, Kerestes, Steinhart, Cowan* and others even though they knew that denying treatment to inmates who did not fall under the protocol had no medical justification, causes harm to those inmates' health and places them at risk of death."  (ECF No. 245, ¶ 56) (emphasis added);

- "This protocol remains in effect and is administered and enforced by *defendant Wetzel, defendant Silva,* the current head of the Bureau of Health Care Services, *defendant Noel,* the Director of Clinical Services, *defendant Cowan*, *defendant DelBlaso,* Superintendent of SCI Mahanoy and *defendant Steinhart*, Chief Health Care Administrator at SCI-Mahanoy."  (ECF No. 245, ¶ 58) (emphasis added);

At various times relevant to Plaintiff's Fourth Amended Complaint, Moving

Defendants, Dr. Khanum, Dr. Lisiak, and Mr. Saxon, provided medical care to

inmates at S.C.I.-Mahanoy.   Plaintiff, however, does not allege that these

Defendants were personally involved in the development, administration, or enforcement of the Department of Corrections' Hepatitis C policy.  Therefore, to the extent that Plaintiff is alleging that the Hepatitis C policy is unconstitutional, Moving Defendants cannot be found liable.

"A defendant in a civil rights action must have personal involvement in the alleged  wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she  neither participated in nor approved."  Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir.2007).  Personal involvement in the alleged wrongdoing may be shown "through allegations of personal  direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005), *quoting* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). See Ruff v. Health  Care Adm'r, 441 F. App'x 843, 846 (3d Cir.2011) (per curiam) ("[t]o be liable under § 1983, a defendant must have some personal involvement in the underlying unconstitutional conduct").  See also Kaucher v. County of Bucks, 455 F.3d 418, 432 n. 7 (3d Cir.2006), *quoting* Estate of  Smith v. Marasco, 430 F.3d 140, 151 (3d Cir.2005) ("[i]n order to prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his  constitutional rights").  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is

insufficient to establish personal involvement.   Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1998).

Since there are no allegations establishing any involvement on the part of Dr. Khanum, Dr. Lisiak, and Mr. Saxon in developing or enforcing the Hepatitis C policy, there is no basis upon which they may be found liable for this purportedly unconstitutional policy.  Accordingly, dismissal of these Defendants is proper.

### C.   COUNTS I AND II OF PLAINTIFF'S FOURTH AMENDED COMPLAINT FAIL TO ARTICULATE A COGNIZABLE EIGHTH AMENDMENT CLAIM AGAINST MOVING DEFENDANTS.

Within his Fourth Amended Complaint, Plaintiff contends that Moving Defendants were deliberately indifferent to his serious medical needs by failing to provide him with proper medical care for his various medical complaints.  At best, however, Plaintiff has alleged that – while he has received treatment for his medical conditions – he is dissatisfied with the treatment and diagnostic testing offered to him.  As this is not sufficient to support an Eighth Amendment claim, Counts I and II (violation of the Eighth Amendment) of Plaintiff's Fourth Amended Complaint must be dismissed as a matter of law.

In order to state a claim against a correctional health care provider under 42 U.S.C. §1983, Plaintiff must prove "deliberate indifference to a serious medical need" on the part of the provider.  Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).   Subjectively, prison officials must exhibit

"deliberate indifference" to those needs.  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003).  An allegation of mere negligence or medical malpractice does not rise to the level of an Eighth Amendment violation.  Estelle, 429 U.S. at 105. Furthermore, under § 1983, a plaintiff must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights. Evancho v. Fischer, 423 F.3d 347,353 (3d Cir. 2005).

It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103 (3d Cir. N.J. 1990).  The United States District Court for the Eastern District of Pennsylvania has held, in a similar context:  "The court will not allow plaintiff to substitute his desires and opinions for the professional judgment of prison officials, especially when the law of the circuit makes clear that considerable deference is to be afforded to the judgment of the correctional authorities." Iseley v. Dragovich, 236 F. Supp. 2d 472, 478 (E.D.Pa. 2002).  "A court may not substitute its own judgment for diagnosis and treatment decisions made by prison medical staff members." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); Maynard v. New Jersey, 719 F. Supp. 292, 295 (D.N.J. 1989).

The Seventh Circuit has noted, "the Eighth Amendment does not guarantee that an inmate receive specific treatment; it guarantees only 'reasonable measures to meet a substantial risk of serious harm.'" DeBoer v. Luy, 70 Fed. Appx. 880,

883 (7th Cir. 2003); Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). "The Eighth Amendment does not prohibit a prison doctor from exercising his own independent medical judgment regarding an appropriate medical treatment, and a prisoner's mere disagreement with a doctor's medical judgment concerning treatment does not support a claim of cruel and unusual punishment." Id. Q.v. Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference ....").

### 1. Dismissal of Count I: Alleged Failure to Authorize Treatment for Plaintiff's Hepatitis C.

In his Fourth Amended Complaint, Plaintiff alleges that the Pennsylvania Department of Corrections was deliberately indifferent to his serious medical need by failing to authorize appropriate treatment for Mr. Abu-Jamal's Hepatitis C. Although Moving Defendants are named in Count I, Plaintiff has failed to state within the facts of his Complaint that Dr. Khanum, Dr. Lisiak, or Mr. Saxon were personally involved in the decision whether to treat Plaintiff with anti-viral medications, and, to the contrary, Plaintiff contends that this was the result of policy decisions on the part of the DOC. Therefore, any claim against Dr. Khanum, Dr. Lisiak, or Mr. Saxon regarding this issue must be dismissed as a matter of law. See Evancho v. Fischer, 423 F.3d 347,353 (3d Cir. 2005) (to

maintain a §1983 claim, a plaintiff must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights).

Although Plaintiff was not found to meet the criteria for treatment of his Hepatitis C under the DOC policy, (ECF No. 245, ¶ 147), the Fourth Amended Complaint shows that the Medical Department continued to monitor Plaintiff's condition and treat symptoms as they arose.  For example, what Plaintiff believes to be sequelae of his disease – anemia and rash – were closely monitored by blood work and other forms of diagnostic testing, (ECF No. 245, ¶¶ 65, 98, 106, 107), and he was prescribed various medications for his skin condition.  (ECF No. 245, ¶¶ 64, 71, 130).  Although the cause of these conditions has not yet been determined, there is no evidence in Plaintiff's Complaint that would suggest that his complaints are being ignored or that his medical conditions are being left untreated.

Plaintiff also acknowledges that the Medical Department ordered tests to determine whether his Hepatitis C was chronic. (ECF No. 245, ¶ 122).  When chronic Hepatitis C was confirmed, the Medical Department closely followed Mr. Abu-Jamal's condition by way of blood work to monitor his liver and kidney functioning, and ensured that Plaintiff underwent a CT to determine the status of his cirrhosis.  (ECF No. 245, ¶¶ 108).

At best, Plaintiff has articulated a disagreement with the policy/criteria used by the Department of Corrections to determine when to begin specific treatment for Hepatitis C – a policy over which Moving Defendants had no input or control. Notwithstanding, the approach implemented by the Department of Corrections is no different than that utilized by medical professionals in the correctional setting.

When considering Eighth Amendment claims, like those advanced by Mr. Abu-Jamal, based upon an alleged failure to treat an inmate's Hepatitis C, this Court is not required to write upon a blank slate. Quite the contrary, numerous courts have considered the application of the Eighth Amendment in this specific legal-medical context.  In particular, when considering inmate Eighth Amendment claims brought by Pennsylvania state prisoners complaining about the Hepatitis C treatment afforded to them in prison, courts have often held in favor of defendants when the undisputed facts show that the inmates were treated in accordance with the Department of Corrections' Hepatitis C treatment protocol, finding that compliance with this treatment protocol either rebuts any claim of deliberate indifference to serious medical needs; Henry v. Maue, No. 06-1439, 2008 U.S. Dist. LEXIS 118627, 2008 WL 5188834 (W.D. Pa. Dec. 10, 2008), Lee v. Beard, No. 03-1026, 2008 U.S. Dist. LEXIS 21338, 2008 WL 744736 (M.D.Pa. March 18, 2008), or concluding that prison officials who complied with this protocol were

entitled to qualified immunity from damages. <u>Josey v. Beard</u>, No. 06-265, 2009

U.S. Dist. LEXIS 54680, 2009 WL 1858250 (W.D.Pa. June 29, 2009).

Thus, where, as here, it is undisputed that an inmate's Hepatitis C has been

carefully monitored by prison medical staff and the Department of Corrections

abides by its protocol in accessing treatment plans, it is well-settled that

Defendants are entitled to judgment in their favor as a matter of law on inmate

Eighth Amendment claims. As the United States Court of Appeals for the Third

Circuit explained when affirming a summary judgment in another Hepatitis C case:

> The standard for evaluating a prisoner's deliberate indifference claim is highly deferential to the medical practitioners' professional judgment. "Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.'" <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir.1979) (quoting <u>Bowring v. Godwin</u>, 551 F.2d 44, 48 (4th Cir.1977)). A prisoner does not have the right "to choose a specific form of medical treatment." <u>Harrison v. Barkley</u>, 219 F.3d 132, 136 (2d Cir. 2000). Lasko's deliberate indifference claim hinges on the premise that defendants refused to treat him for hepatitis C for eighteen months after he arrived at FCI-Schuylkill. As the District Court pointed out, however, Lasko's medical treatment, including extensive evaluations assessing the appropriate course of treatment for his hepatitis C condition, commenced immediately upon entering the facility. Defendants did not approve Lasko to begin a interferon and ribavirin regimen until he had undergone physical and psychological examinations, extensive laboratory testing, and several counseling sessions, but this approach is entirely consistent with the BOP Guidelines for hepatitis C treatment. Lasko has not adduced any evidence that Dr. Hendershot-or any of the other defendants-failed to treat Lasko's chronic hepatitis C condition. The District Court did not err in granting summary judgment on Lasko's Eighth Amendment claim.

Lasko v. Watts, 373 F.App'x 196, 203 (3d Cir. 2010).

In the instant action, Plaintiff has acknowledged in his Complaint that the medical Defendants are closely monitoring his condition and the complications that are allegedly resulting therefrom.   Accordingly, Plaintiff's claims represent nothing more than a disagreement with the medical care provided and Count I of the Fourth Amended Complaint must be dismissed as a matter of law as it pertains to Moving Defendants.

### 2. Dismissal of Count II: Alleged Failure To Provide Medical Care For Plaintiff's Skin Condition.

Within his Fourth Amended Complaint, Plaintiff has alleged that Moving Defendants acted with deliberate indifference to his serious medical needs by failing to properly diagnose his skin condition.   The Complaint, however, establishes that Plaintiff underwent various tests to determine the cause of his skin condition, and he has been prescribed numerous treatments for it.

Plaintiff has not pled a denial of care.   To the contrary, the Fourth Amended Complaint reveals that he has been provided with an abundance of treatment, and only now brings suit because he believes *more* should be done to diagnose and treat his persistent rash.   Therefore, at best, the Complaint shows that Plaintiff received reasonable and appropriate treatment, but he simply disagrees with the medical staffs' findings and recommended treatment course.

18

It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103 (3d Cir. N.J. 1990).   The United States District Court for the Eastern District of Pennsylvania has held, in a similar context:  "The court will not allow plaintiff to substitute his desires and opinions for the professional judgment of prison officials, especially when the law of the circuit makes clear that considerable deference is to be afforded to the judgment of the correctional authorities." Iseley v. Dragovich, 236 F. Supp. 2d 472, 478 (E.D. Pa. 2002).   Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate.   Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D. Pa., Oct. 13, 2000) ("courts have consistently rejected Eight Amendment claims where an inmate has received some level of medical care").   Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g., Brown v. Borough of Chambesburg, 903 F.2d 274, 278 (3d. Cir. 1990) ('[A]'s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exact standard, courts have frequently rejected Eighth Amendment claims that are based on the level of professional care that an inmate

received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F. 2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Additionally, "[a] court may not substitute its own judgment for diagnosis and treatment decisions made by prison medical staff members." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); Maynard v. New Jersey, 719 F. Supp. 292, 295 (D.N.J. 1989).

Here, the Fourth Amended Complaint shows that Plaintiff has received reasonable and appropriate care from Dr. Lisiak, Dr. Khanum, and Mr. Saxon. Plaintiff was seen at sick call, where he was prescribed various medications, including steroids, oral prednisone, and Cyclosporine (an immunosuppressant). (ECF No. 245, ¶¶ 64, 71, 130). When his condition worsened, he was admitted to the prison infirmary so that he could be closely monitored and treated by the

medical staff.   (ECF No. 21, ¶ 68).   Moreover, Plaintiff acknowledges that he underwent a myriad of testing to determine the etiology of his skin condition. (ECF No. 21, ¶ 107).

Plaintiff's subjective disagreement with his medical treatment fails to establish deliberate indifference under the Eighth Amendment.   <u>White v. Napoleon</u>, 897 F.2d 103 (3d Cir. N.J. 1990).   Plaintiff has received considerable medical care and is now trying to dictate a specific course of treatment that varies from the medical providers' judgment.   As Plaintiff's claims do not constitute deliberate indifference to a serious medical need, they are not actionable under 42 U.S.C. §1983 and Count II of Plaintiff's Fourth Amended Complaint must be dismissed with prejudice as to Moving Defendants.

## III.   <u>CONCLUSION</u>

For the reasons set forth above, Defendants, Correct Care Solutions, LLC, Dr. Jay Cowan, Dr. John Lisiak, Dr. Shaista Khanum, and Scott Saxon, PA-C, move for the partial dismissal of Plaintiff's Fourth Amended Complaint, striking Counts I (Eighth Amendment; Right to Hepatitis C Treatment) and II (Eighth Amendment; Right to Medical Care for his Skin Condition) and requests for injunctive relief as to these Defendants.

Respectfully submitted,

WEBER GALLAGHER SIMPSON STAPLETON
FIRES & NEWBY LLP

BY:   _/s/ Caitlin J. Goodrich_____
Caitlin J. Goodrich, Esquire
cgoodrich@wglaw.com
PA 209256

Samuel H. Foreman, Esquire
sforeman@wglaw.com
PA77096

WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY, LLP
Four PPG Place, 5th Floor
Pittsburgh, PA 15222
(412) 281-4541
(412) 281-4547 FAX

Date: August 25, 2017

## <u>CERTIFICATE OF WORD COUNT</u>

I, Caitlin J. Goodrich, Esquire, hereby certifies that this brief while exceeding 15 pages; has a word count of **4,884 words**, and meets the requirements for Length of Briefs set forth in Local Rule 7.8(b)(2).

**WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY, LLP**


_____*/S/ Caitlin J. Goodrich*_____
Caitlin J. Goodrich, Esquire

## <u>CERTIFICATE OF SERVICE</u>

I, Caitlin J. Goodrich, Esquire, hereby certify that on this date a true and correct copy of the foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT** was sent by first class United States mail, postage prepaid, to the following:

Robert J. Boyle, Esq.
277 Broadway, Suite 1501
New York, NY  10007

Bret. D. Grote, Esq.
Abolitionist Law Center
PO Box 8654
Pittsburgh, PA  15221

Laura J. Neal, Esq.
Vincent R. Mazeski, Esq.
Chief Counsel's Office
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

*/S/ Caitlin J. Goodrich*
Caitlin J. Goodrich, Esquire

Dated:      August 25, 2017