## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLANIA

| | |
|---|---|
| **MUMIA ABU-JAMAL** | **: Case No. 15-Cv-00967** |
| | **:** |
| **Plaintiff,** | **: Judge Robert D. Mariani** |
| | **:** |
| **v.** | **:** |
| | **: JURY TRIAL DEMANDED** |
| **JOHN KERESTES, et al.** | **:** |
| | **:** |
| **Defendants.** | **: ELECTRONICALLY FILED** |
| | **:** |

## BRIEF IN OPPOSITION TO PARTIAL MOTION TO DISMISS FILED BY DEFENDANTS LISIAK, KHANUM, SAXON, COWAN AND CCS

<u>Introduction</u>

This memorandum is respectfully submitted in opposition to the motion (Doc. 248) of defendants John Lisiak, Shaista Khanum, Jay Cowan, and Scott Saxon for partial dismissal of the fourth amended complaint in *Abu-Jamal v. Kerestes, et al.,* 15-cv-967. (*Kerestes* Fourth Amended Complaint hereinafter Doc. 245), and the motion of defendant Correct Care Solutions to dismiss the complaint in the consolidated case of *Abu-Jamal v. Wetzel*, 16-cv-2000 (*Wetzel* Complaint hereinafter Doc. 1).

The initial *Kerestes* complaint was filed on or about May 18, 2015, while the plaintiff was an in-patient at Geisinger Medical Center.  It sought, *inter alia*, injunctive relief arising from the denial of visitation with plaintiff's family and attorneys.  With leave of court the complaint was thereafter amended to include, *inter alia*, Eighth Amendment and state law violations arising from the lack of medical care accorded to

plaintiff.  The Fourth (and current) Amended Complaint (Doc. 245) names as

defendants the movants Lisiak, Khanum, Cowan and Saxon as among those

responsible for the lack of medical treatment.

On September 30, 2016, plaintiff filed the now consolidated case of *Abu-Jamal*

*v. Wetzel.*  That complaint (*Wetzel* Doc. 1) seeks injunctive relief requiring that the

defendants treat plaintiff's hepatitis C with anti-viral medications.  Movant Correct

Care Solutions is named as a defendant.

## Statement of Facts

The plaintiff Mumia Abu-Jamal is an African-American, a journalist, and

former member of the Black Panther Party. Doc. 245, ¶¶ 4, 18, 21.  He has been

incarcerated since 1981 pursuant to a conviction that many believe to be unjust. Doc.

245, ¶ 4.  He is currently in the custody of the Pennsylvania Department of

Corrections (DOC) and housed at the State Correctional Institution at Mahanoy,

Pennsylvania.  *Id.*

Defendants Lisiak, Khanum, and Cowan are doctors and defendant Saxon is a

physicians' assistant.  All are employed by defendant Correct Care Solutions.   At

various times in 2015 and 2016, they were assigned to SCI Mahanoy, or in defendant

Cowan's case, the DOC's hepatitis C Committee.  They were responsible for

providing medical care to the plaintiff. Doc. 245, ¶¶ 13, 14, 17, 64-75, 83, 110-111,

125, 145-146-150.

During routine bloodwork performed by DOC medical staff in 2012, plaintiff tested positive for the hepatitis C antibody.  DOC medical staff noted that fact in plaintiff's medical records. Doc. 245, ¶¶ 60, 62.  In July 2015, blood tests confirmed that plaintiff has "active" or "chronic" hepatitis C. Doc. 245, ¶ 122.

Hepatitis C is a virus that infects the liver.  If left untreated it can cause scarring (fibrosis) and/or extreme scarring (cirrhosis), both of which can effect liver functioning. Doc. 245, ¶¶ 33-34.  At least 20% of Hepatitis C sufferers will develop cirrhosis and of them 2-7 % per year will develop liver cancer. Doc. 245, ¶ 37. Chronic hepatitis C can also cause complications outside of the liver, including, anemia, diabetes and, in 20-40% of hepatitis C patients, various skin conditions.  Doc. 245. ¶¶ 41-42.   In or about 2013, anti-viral drugs for the treatment of hepatitis C became available.  If administered, they have a 90-95% cure rate.  Treatment with these anti-viral medications is now the standard of care irrespective of the stage of the disease. Doc. 245, ¶¶ 43-44.

In or about August 2014, plaintiff's hepatitis C infection began to manifest itself through a pruritic skin rash.  Over the next several months the rash spread. Doc. 245, ¶¶ 63-64.  In February 2015, defendant Dr. Lisiak noted that the rash covered 70% of the plaintiff's body.  Doc. 245, ¶ 45.  Defendant Khanum made the same assessment one day later, adding that plaintiff complained of dizziness and blurred vision. Doc. 245, ¶ 66.  The plaintiff became so debilitated by the rash that he needed a wheelchair to move about the facility and was transferred to the facility infirmary.

Doc. 245, ¶ 67-68.  Although plaintiff's medical records noted that he had tested positive for hepatitis C, neither defendants Lisiak nor Khanum ordered further hepatitis C testing or considered the possibility that the hepatitis C was the underlying cause of the skin condition. Doc. 245, ¶ 70.  Instead, defendants Lisiak, Khanum and Saxon ordered administration of steroid creams and Cyclosporine, an immunosuppressant.  However, the rash continued unabated. Doc. 245, ¶ 71.

At the same time, plaintiff's blood glucose levels began to rise.  On February 20, 2015, defendant Lisiak noted that it had risen to an above normal 167. Doc. 245, ¶ 69.  By March 6, 2015, it had risen to 419.  Defendants Lisiak, Khanum and Saxon knew of the rise in glucose levels because they were noted in plaintiff's medical records.  Yet they did nothing to address that issue.  Nor did they even inform Mr. Abu Jamal that his glucose had risen to that dangerous level.  Doc. 245, ¶¶ 72-74. The administration of cyclosporine continued even though the defendants knew that cyclosporine is contraindicated for African-Americans with sudden onset diabetes. Doc. 245, ¶ 75.

On March 30, 2015, plaintiff lost consciousness and was rushed to Schuylkill Medical Center.  His blood glucose level had risen to 507.  Doc. 245, ¶ 78.  Medical records accompanying his release the next day noted that he suffered, *inter alia*, from hyperglycemia, anemia, a skin rash and hepatitis C.  Defendants Lisiak, Khanum and Saxon did not investigate whether the hepatitis C could have been the cause of those conditions.  Doc. 245, ¶ 83.

4

On or about May 12, 2015, plaintiff experienced extreme pain in his lower extremities and was admitted to Geisinger Medical Center.  A CT scan performed at Geisinger found irregularities in the architecture of plaintiff's liver, a sign of cirrhosis. Doc. 245, ¶ 108.  The Geisinger release plan also noted that plaintiff was a suitable candidate for hepatitis C treatment.  The Geisinger medical records were incorporated into his records at SCI Mahanoy.  None of the defendants, including defendants Lisiak, Khanum and Saxon, ordered further hepatitis C testing. Doc. 245, ¶¶ 108-111.

In the spring and summer of 2015 plaintiff's counsel sent a series of letters to DOC counsel regarding plaintiff's medical condition with instructions that the matters addressed therein be brought to defendants' attention. Doc. 245, ¶ 114.  A June 15, 2015 letter requested a hepatitis C workup, stating that this condition could be the underlying cause of plaintiff's skin condition, anemia and hyperglycemia. Doc. 245, ¶ 115.  A physician who had visited plaintiff at SCI Mahanoy in July 2015 came to the same conclusion.  Doc. 245, ¶¶ 118-121.   Finally, in late July 2015, DOC medical staff at SCI Mahanoy performed bloodwork that confirmed that plaintiff had an active, chronic, hepatitis C infection.  Doc. 245, ¶ 122.  On several occasions during July and August 2015, plaintiff complained to defendants Lisiak and Khanum and others that he should be treated with hepatitis C anti-viral medications.  He was told that the DOC was not treating anyone due to the medications' cost.  Doc. 245, ¶ 125.

In late 2015, defendant Cowan and other defendants formulated and adopted a protocol for hepatitis C treatment with the new anti-viral drugs. Doc. 245, ¶ 50.

Defendant Cowan adopted this policy despite knowing that denying treatment to inmates under the protocol placed them at risk of serious harm to their health, including risk of death. Doc. 245, ¶ 56. As defendant Cowan testified to at the December 2015 hearing in this case, he reviewed plaintiff's medical records to decide if he should be treated, and defendant Cowan determined that plaintiff should not be treated with the anti-viral medications. Doc. 245, ¶¶ 145-148. This decision was made even though defendant Cowan testified that there was no medical justification for refusing to treat Mr. Abu-Jamal. Doc. 245, ¶ 148. Defendant Cowan continues to administer and enforce this protocol. Doc. 245, ¶ ¶58, 149-150.  Defendant Cowan knows that the refusal to provide plaintiff with treatment places him at grave risk of death. Doc. 245, ¶ 153.

As this Court is aware, on January 3, 2017, following extensive litigation in both the *Kerestes* case and the now consolidated *Wetzel*, case, this court granted plaintiff's motion for a preliminary injunction and ordered that he be provided with anti-viral medications. *Wetzel* Doc. 24.   On March 27, 2017, the United States Court of Appeals for the Third Circuit denied the motions of the moving defendants and the DOC defendants for a stay of that order.  On or about April 7, 2017, plaintiff began receiving Harvoni, an anti-viral medication.  By that time, however, his condition had deteriorated to cirrhosis.  As of the date of this memorandum, the treatment has not concluded.  Accordingly, it is unknown whether plaintiff will achieve Sustained Viral Response (SVR) and be cured of the disease.

**LEGAL ARGUMENT**

**Question:** Should the official capacity claims for injunctive relief against the treating physicians at SCI Mahanoy be dismissed?

**Suggested Answer:** No.

**Question:** Are the claims for injunctive relief against defendant Correct Care Solutions and Dr. Cowan in *Abu Jamal v. Wetzel* rendered moot by the initiation of treatment of the plaintiff with hepatitis C anti-viral drugs?

**Suggested Answer**: No.

**Question:** Did Mr. Abu-Jamal sufficiently allege the personal involvement of defendants Lisiak, Khanum and Saxon for violations of his Eighth Amendment rights?

**Suggested answer:** Yes.

**Question:** Did Mr. Abu-Jamal plead sufficient facts of defendants' deliberate indifference to serious medical needs to state plausible claims for relief under the Eighth Amendment?

**Suggested answer:** Yes.

a. **Plaintiff's Official Capacity Claims For Injunctive Relief Should Continue Against His Current Treating Physician(s).**

Defendants Lisiak, Khanum and Saxon argue that plaintiff's claims against

them in their official capacities for injunctive relief should be dismissed as they are no

longer employed at SCI Mahanoy and could not respond to any injunction. Doc. 249,

p. 7-8. The defendants are wrong. Notwithstanding their separation from office, the

"official capacity" claim for injunctive relief continues unabated. Under Fed.R.Civ.P.

25(d), the current treating physician has automatically been substituted as the "official capacity" defendant. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (when officials sued in their official capacity in federal court die to leave office, their successors automatically assume their roles in the litigation."). Accordingly, the motion should be denied.

### b. Plaintiff's Claim for Injunctive Relief Against Correct Care Solutions and Defendant Cowan Is Not Moot.

Defendants Correct Care Solutions and Cowan argues that plaintiff's claims against them for injunctive relief in *Abu-Jamal v. Wetzel* have been rendered moot since the plaintiff is now being treated with anti-viral medication. Doc. 249, p. 8-9. For two reasons that motion should be denied.

First, that ground for dismissal is not properly before this Court as the facts regarding the initiation of treatment are not included in the Fourth Amended Complaint.

Alternatively, that argument is meritless. An action for an injunction does not become moot merely because the conduct complained of has terminated if there is a possibility of recurrence. Otherwise the defendant "would be free to return to its old ways." *Alle v. Mendrano*, 416 U.S. 802, 810-11 (1974). Thus, defendants bear a "heavy burden" of showing that they will not revive their challenged conduct and "mere disclaimers are not satisfactory." *U.S. v. WT Grant Co.* 345 U.S. 629, 633 (1953). Defendants cannot meet that heavy burden here. The gravamen of the complaint in *Wetzel* is that plaintiff be treated for hepatitis C so that he can be cured, i.e. achieve an

8

SVR.  Although treatment has commenced as required by this Court's order it has not

been determined that the plaintiff has yet to achieve SVR.  Should plaintiff not

achieve SVR, plaintiff will likely seek modification of the existing injunction or some

other form of relief that would ensure adequate medical care.  Accordingly, the

motion to dismiss as moot is premature and should be denied.

### c. Plaintiff has Alleged Sufficient Personal Involvement Of Defendants Lisiak, Khanum and Saxon To Sustain His Claims Under Counts I and II.[1]

Count I of the Fourth Amendment complaint alleges that defendants Lisiak,

Khanum and Saxon have been deliberately indifferent to plaintiff's Eighth

Amendment right to adequate medical care by failing to treat his hepatitis C infection.

(Doc. 245, p. 33).  Count II alleges a related claim that they have violated the Eighth

Amendment by refusing to treat plaintiff's skin condition as a manifestation of the

hepatitis C. (Doc. 245, p. 33-34).  Application of the relevant legal standard compels a

conclusion that their motion be denied.[2]

To survive a motion to dismiss, plaintiff is only required to plead "enough facts

to state a claim to relief that is plausible on its face."  *Renfro v. Unisys Corp.*, 671 F.3d

314, 321 (3d Cir. 2011)).  A court considering a motion to dismiss for failure to state a

claim "must accept as true the factual allegations in the complaint."  *Langford v. City of*

---

[1] Defendant Jay Cowan has not moved to dismiss on this ground.

[2] The Defendants have not moved to dismiss counts III, IV, V, and VI. Defendant Cowan has not moved to dismiss on this

*Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000).  The court must construe the facts and

reasonable inferences that can be drawn from the facts in the light most favorable to

the non-moving party.  *Dee v. Marriot Int'l, Inc.*, No. Civ. A. 99-2459, 1999 WL 975125,

at *2 (E.D. Pa. Oct. 6, 1999) (citing *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d

1250, 1261 (3d Cir. 1994)).  The burden is on the moving party to show there is no

actionable claim.  *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980).  When evaluating a

motion to dismiss the court will "consider only the complaint, exhibits attached to the

complaint, matters of public record, as well as undisputedly authentic documents if

the complainant's claims are based upon these documents[.]" *Guidotti v. Legal Helpers

Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

Personal involvement can be shown through allegations of personal direction

or of actual knowledge and acquiescence.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d

Cir. 1988).  In addition, as 42 U.S.C. § 1983 is grounded in tort law, the principles of

joint and several liability apply.  *Niblack v. Murray*, 2016 WL 4086775 (D.N.J. 2016).

### i.   Failure to Treat Hepatitis C

Plaintiff has pled adequate facts alleging the personal involvement of Lisiak,

Khanum, and Saxon in failing to treat his hepatitis C. The Fourth Amended

Complaint is replete with allegations that plaintiff's hepatitis C was recognized by the

DOC and documented in his medical records, and that defendants Lisiak, Khanum,

and Saxon failed to provide treatment. In 2012, routine bloodwork resulted in

discovery that Mr. Abu-Jamal tested positive for the hepatitis C antibody. Doc. 245,

¶¶ 60, 62. Yet, as his health worsened during 2014 and 2015, defendants, including Lisiak, Khanum, and Saxon, failed to determine if his hepatitis C was chronic and potentially causing his various symptoms until August 2015, although they had known he had tested positive for the antibody in 2012. *See* Doc. 245, ¶¶ 70, 83, 111, 114, 115, 118-122.

In or about August 2014, plaintiff developed a pruritic skin rash that eventually covered 70% of his body. Doc. 245, ¶¶ 63-66. Patients with chronic hepatitis C develop skin conditions in 20-40% of cases. Doc. 245, ¶ 42. Defendants Lisiak and Khanum failed to perform diagnostic tests to ascertain whether the hepatitis C was or could have been the cause of his skin condition. Doc. 245, ¶ 70.

When plaintiff was at Geisinger Medical Center in May 2015 a CT scan found irregularities in the architecture of his liver, an indicator of cirrhosis. Doc. 245, ¶ 108. When he was released from Geisinger the hospital included a release plan noting that plaintiff might be a suitable candidate for hepatitis C treatment, and this was placed in his medical records at SCI Mahanoy. Doc. 245, ¶ 110. Still, none of defendants, including Lisiak, Khanum, and Saxon, ordered further hepatitis C testing or treatment. Doc. 245, ¶ 111.

Finally, on several occasions during July and August 2015, plaintiff complained to defendants Lisiak and Khanum that he should receive direct acting antiviral medications for his hepatitis C, only to be refused treatment. Doc. 245, ¶ 125.

These are ample allegations of personal involvement. Defendants were aware that plaintiff had hepatitis C, as well as a host of other health problems that could be related to untreated hepatitis C, and they refused to provide appropriate diagnostic tests or treatment when it was discovered that he had chronic hepatitis C.

That defendants were not responsible for the creation and implementation of the DOC's hepatitis C protocol does not shield them from liability. Enforcing the unconstitutional policy is sufficient. *Masjid Muhammad-D. C. C. v. Keve*, 479 F.Supp. 1311, 1326 (D. Del. 1979) (holding that prison official who did not originate policy of withholding mail with inmates' Muslim names "was responsible for its enforcement" and therefore "potentially liable for damages"). The Fourth Amended Complaint alleges that defendants Lisiak, Khanum, and Saxon had knowledge of Mr. Abu-Jamal's serious medical need for hepatitis C treatment and intentionally failed to so much as attempt to provide treatment, let alone provide treatment, enforcing an unconstitutional policy and thus subjecting them to liability. *Rode*, 845 F.2d at 1207 (knowledge and acquiescence in unconstitutional conduct constitutes personal involvement).  Discovery is required to develop a factual record regarding these defendants' acts and omissions in regard to Mr. Abu-Jamal's chronic hepatitis c infection.

### ii.    Failure to Treat Skin Condition

As already noted, in or about August 2014, plaintiff developed a pruritic skin rash that eventually covered 70% of his body. Doc. 245, ¶¶ 63-66. Such skin

conditions are commonly associated with hepatitis C. Doc. 245, ¶ 42. Defendants

Lisiak and Khanum failed to perform diagnostic tests to ascertain whether the

hepatitis C was or could have been the cause of his skin condition. Doc. 245, ¶ 70.

Further, plaintiff's counsel communicated to defendants in this action that a hepatitis

C workup should be conducted as that could be the cause of his other health

problems, including the skin condition. Doc. 245, ¶ 115, 118-121. Still, throughout

this period defendants refused to treat plaintiff's hepatitis C, instead opting not to

provide treatment that would attempt to treat the underlying cause of the skin

condition. These factual allegations are sufficient for stating a plausible claim that

defendants Lisiak, Khanum, and Saxon were 1) conscious of an excessive risk to

plaintiff's health by failing to treat the source of his skin condition, and 2) they

disregarded that risk by failing to treat the source of his skin condition, namely the

hepatitis C. Accordingly, these claims should not be dismissed. *Natale v. Camden County

Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (Deliberate indifference to a

serious medical need "requires proof that the official 'knows of and disregards an

excessive risk to inmate health or safety.'" (quoting *Farmer v. Brennan*, 511 U.S. 825,

837 (1994)).

### d.  The Complaint Alleges Cognizable Eighth Amendment Violations

Prison officials "have an obligation to provide medical care for those whom it

is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  To prevail

on an Eighth Amendment medical care claim a plaintiff "must show (i) a serious

medical need, and (ii) acts or omissions by prison officials that indicate a deliberate indifference to that need." *Natale*, 318 F.3d at 582. "Hepatitis C constitutes the type of 'serious medical need' which triggers Eighth Amendment scrutiny in a corrections context." *Barndt v. Pennsylvania Dept. of Corrections*, 2011 WL 4830181 *9 (M.D.Pa. 2011); See also *Abu Jamal v. Kerestes*, 2016 WL 4574646 (M.D. Pa. 2016).

Deliberate indifference to a serious medical need "requires proof that the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Natale*, 318 F.3d at 582 (quoting *Farmer*, 511 U.S. at 837). Defendants Lisiak, Khanum, Saxon and Cowan have deviated from the standard of care by refusing to provide an available, safe, and effective cure for Mr. Abu-Jamal's hepatitis C. They have also deviated from the standard of care because they knew or should have known that plaintiff is suffering from serious complications of the disease, including the skin condition, that are by-products of the hepatitis C and that would be cured, or alleviated, by hepatitis C treatment.

## 1. The Defendants' Deviation From The Standard Of Care For Treatment Of Hepatitis C Constitutes Deliberate Indifference

Hepatitis C is a major public health issue in the United States and worldwide. Those who, like Mr. Abu-Jamal, have chronic hepatitis C have a at least a 20% chance of deteriorating to cirrhosis, or severe liver scarring. Of those who develop cirrhosis, 2% to 7% <u>per year</u> will develop liver cancer which represents an actual progression rate of between 11% and 19%. Doc. 245, ¶¶ 37-38. Approximately 20% of those

suffering from chronic hepatitis C will die from the disease. Doc. 245, ¶ 39.  In the United States, hepatitis C caused more deaths each year than all other infectious diseases combined.  Doc. 245, ¶ 40.

In 2013, drugs known as Direct-Acting Anti-Viral medications became available for treatment of hepatitis C.  If administered to someone who like Mr. Abu-Jamal has genotype 1, there is a 90-95% chance of cure. Doc. 245, ¶ 43. Early treatment (i.e. treatment before advanced fibrosis) affords numerous other health benefits. Doc. 245, ¶ 44.  Early treatment with anti-viral medication is now the medical standard of care for the treatment of hepatitis C. Doc. 245, ¶¶ 43-44.

As of the date of the Fourth Amended Complaint, the defendants were aware that a CT scan of plaintiff's liver showed evidence of cirrhosis and that his platelet level, a sign of disease progression, had been below normal for over one year.  Doc. 245 ¶¶ 108, 122, 126-128.  Plaintiff has requested that defendants provide treatment with the latest anti-viral medications.   As of the date of the filing on this lawsuit, those requests were denied. Doc. 245, ¶125.  The defendants know that the failure to provide treatment has placed plaintiff at risk of various complications including death. Doc. 245, ¶ 135, 145-146, 148-150.

"Outright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated and (2) imposition of a seriously unreasonable condition on such treatment, both constitute deliberate indifference on the part of prison officials." *Abu-Jamal v. Kerestes*, 2016 WL 4574646 *14 (quoting

*Harrison v. Barkely,* 219 F.3d 132, 138 (2d Cir. 2000)); See also *Farmer,* 511 U.S. at 837 (knowledge of and disregard of an excessive risk to inmate health and safety constitutes deliberate indifference); *Estelle,* 429 U.S. at 104; *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993); *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987); *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). Likewise, deviation from the accepted standard of care for treating an illness without medical justification also constitutes deliberate indifference. *Roe v. Elyea,* 631 F.3d 843, 862-63 (7th Cir. 2011); *De'lonta v. Johnson*, 708 F.3d 520, 525-26 (4th Cir. 2013) (failure to provide care consistent with prevailing standard states a claim under the Eighth Amendment); *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990) (treatment that deviates from professional standards may amount to deliberate indifference).  Mr. Abu-Jamal is suffering from a serious, chronic disease that causes him physical distress and which, if left untreated, could result in substantially more pain, liver failure, liver cancer and death.  Moreover, there is no medical justification for denying treatment. Accordingly, the failure to appropriately treat his hepatitis C constitutes deliberate indifference.

The cases cited by the defendants are readily distinguishable from this case, and plaintiff distinguished these in his reply brief in support of the motion for preliminary injunction in *Abu-Jamal v. Wetzel. See Abu-Jamal v. Wetzel*, Doc. 20 at 9-10. This Court itself has also distinguished those cases in its January 3, 2017 opinion granting plaintiff's motion for preliminary injunction. *Abu-Jamal v. Wetzel*, 2017 WL 34700 at

*17-19. *Lasko v. Watts*, 373 Fed.Appx. 196 (3d Cir. 2010), a non-precedential decision

cited by the CCS defendants is inapposite. First, the case is from 2010 before the

arrival of anti-virals and when the standard of care was "watchful waiting". Since at

least 2015 "treatment for all" is the standard of care. Doc. 245, ¶¶ 43-44. Moreover,

the plaintiff in *Lasko* was, in fact treated with interferon. His complaint was that

treatment was delayed while he underwent tests, including psychological counseling.[3]

### Skin condition

Contrary to the defendants' argument, Plaintiff is not complaining of a mere

disagreement over the proper course of treatment. The complaint alleges that the

defendants' refusal to treat the skin condition as a manifestation of the hepatitis C has

caused suffering and will continue to cause suffering. Deliberate indifference may be

established where, as here, prison officials 1) deny reasonable requests for medical

treatment and such denial exposes the inmate to undue suffering or the threat of

tangible physical injury, 2) intentionally refuse to provide needed medical care, 3)

delay necessary medical care for non-medical reasons, or 4) opt for an easier and less

efficacious treatment of the inmate's illness. *Monmouth County Corr. Inst. Inmates*, 834

F.2d at 346-47. Plaintiff has alleged all four of the foregoing factors. First, the

defendants' refusal to treat the hepatitis C, "a serious medical need" has exposed and

---

[3] Ignored by the CCS defendants are this Court's decision granting plaintiff's
preliminary injunction motion and the recent decision in *Chimenti v. Pennsylvania DOC*,
2017 WL 3394605 (E.D. Pa. 2017) holding, *inter alia,* that the failure to provide anti-
viral medication stated a claim under the Eighth Amendment.

will expose Mr. Abu Jamal to undue suffering. The defendants are unquestionably aware that Mr. Abu Jamal suffers from hepatitis C and would likely be cured if treated.  Third, the defendants have provided no medical justification for their refusal to treat the hepatitis C. Fourth, the defendants have opted for palliative measures such as creams, a knowingly less efficacious course that literally involves no treatment at all for the underlying condition.  This is not a mere "disagreement" over a debatable course of treatment.  *Pearson v. Prison Health Service*, 519 Fed. App'x. 79, 84 (3d Cir. 2013) ("the number of entries in the medical records does not necessarily demonstrate that [plaintiff] received constitutionally sufficient medical care"); *Brown v. Johnson*, 387 F.3d 1344(11th Cir. 2004) (Deliberate indifference may be shown by grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment.); *See also Henry v. Wilson*, 2008 WL 131164 *5 (W.D.Pa. 2008) (citing *Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) ("Deliberate indifference can be shown where prison authorities prevent an inmate from receiving a recommended treatment.")). Defendants have deliberately refused to provide treatment for the underlying cause of plaintiff's skin condition, instead opting for less efficacious treatment, resulting in injury and risk of further harm. Accordingly, plaintiff has stated a cognizable Eighth Amendment claim for deliberate indifference to his serious skin condition.

**Conclusion**

For the foregoing reasons, this Court should deny the partial motion to dismiss of

defendants Lisiak, Khanum, Saxon, Cowan, and Correct Care Solutions.

Respectfully submitted,

*/s/ Robert J. Boyle*
Robert J. Boyle
277 Broadway
Suite 1501
New York, N.Y. 10007
(212) 431-0229
Rjboyle55@gmail.com
NYS ID# 1772094
*Pro hac vice*

*/s/ Bret D. Grote*
Bret D. Grote
PA I.D. No. 317273
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA  15221
Telephone:  (412) 654-9070
bretgrote@abolitionistlawcenter.org

*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that this brief complies with Local Rule 7.8(b)(2) as it

contains 4,503 words, excluding caption and signature lines.

_s/ Bret D. Grote_
Bret D. Grote
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA  15221

September 11, 2017

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served a copy of this Brief in Opposition to Partial Motion to Dismiss of defendants Lisiak, Khanumm, Saxon, Cowan, and CCS upon each defendant in the following manner:

<u>Service Via ECF:</u>

For Defendants Wetzel, Noel, Silva, BHCS
Medical Director, BHCS Infection Control Coordinator,
Kerestes, DelBalso, Silva, Oppman, DOC, Cowan, Steinhart:
Maria Macus, Esquire
Laura Neal, Esquire
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050
mmacus@pa.gov
lneal@pa.gov

For Defendants Correct Care Solutions, CCS representative,
Treating Physician, SCI Mahanoy, Khanum, Lisak, and Saxon:
Samuel H. Foreman, Esquire
Caitlin Goodrich, Esquire
sforeman@wglaw.com
cgoodrich@wglaw.com

_s/ Bret D. Grote_
Bret D. Grote
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA  15221

Dated: September 11, 2017