# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MUMIA ABU-JAMAL, | : | Civil Action No. 3:15-CV-00967 |
| Plaintiff | : | |
| | : | (Judge Mariani) |
| v. | : | |
| | : | |
| JOHN KERESTES, et al., | : | FILED ELECTRONICALLY |
| Defendants | : | |

## BRIEF IN SUPPORT OF CORRECTIONS DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Respectfully submitted,

Office of General Counsel

Dated:  September 21, 2017        by  /s/ Laura J. Neal
Laura J. Neal
Assistant Counsel
PA 81070
Pa. Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA  17050
lneal@pa.gov
Tel:  (717) 728-7763
Counsel for Corrections Defendants

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... ii

STATEMENT OF THE CASE.................................................................1

STATEMENT OF QUESTIONS PRESENTED....................................11

ARGUMENT .........................................................................................12

CONCLUSION ......................................................................................22

CERTIFICATE OF SERVICE ...............................................................23

CERTIFICATE OF COMPLIANCE.......................................................24

## TABLE OF AUTHORITIES

**CASES**                                                           **PAGE(S)**

*Allah v. Thomas*, CV 15-5593, 2016 WL 3258422
(E.D. Pa. June 14, 2016) ...........................................................16

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ............................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................19

*Bernier v. Trump*, 16-CV-00828, 2017 WL 1048053
(D.D.C. Mar. 17, 2017)........................................................18

*Booth v. Churner*, 532 U.S. 731 (2001) ...............................................12

*Chinchello v. Fenton*, 805 F.2d 126 (3d Cir. 1986)................................19

*Cunningham v. Sessions*, 9:16-CV-1292-RMG, 2017 WL 2377838
(D. S.C. May 31, 2017)........................................................18

*Dulak v. Corizon*, No. 2015 Dist. LEXIS 131291
(E.D. Mich. July 10, 2015) ................................................17

*Harrell v. California Forensic Medical Group, Inc.*,
2015 U.S. Dist. LEXIS 149084 (E.D. Ca.  Nov. 3, 2015)..................17

*Jones v. Bock*, 549 U.S. 199 (2007) ......................................................12

*Maskelunas v. Wexford Health Source, Inc.*, 2015 WL 6686709
(W.D. Pa. Oct. 8, 2015) ....................................................17

*McNair v. Synapse Group Inc.,* 672 F.3d 213 (3d Cir.2012) ..................21

*Merle v. United States,* 351 F.3d 92 (3d Cir.2003)................................21

*Nyhuis v. Reno*, 204 F.3d 65 (3d Cir. 2000) ..........................................13

*Pettaway v. SCI Albion*, 487 Fed. Appx. 766 (3d Cir. 2012) ..................14

*Porter v. Nussle*, 534 U.S. 516 (2002) ....................................................................12

*Rizzo v. Goode*, 423 U.S. 362 (1976)........................................................................19

*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988)........................................19, 20

*Ross v. Blake*, 136 S. Ct. 1850 (2016) ....................................................................13

*Shabazz v. Schofield*, 2015 U.S. Dist. LEXIS 113082
    (M.D. Tenn. Aug. 26, 2015) ...............................................................................17

*Smith v Corizon, Inc*., CV JFM-15-2015 WL 9274915
    (D. Md. Dec. 17, 2015).......................................................................................17

*Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004)....................................................12, 13

*Taylor v. Barkes*, 135 S. Ct. 2042 (2015) ..........................................................15, 16

*Taylor v. Rubenstein*, No. 3:15-CV-120, 2016 WL 1364287
    (N.D. W.Va. Apr. 6, 2016) .................................................................................16

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) ........................................14

*Woodford v. Ngo*, 548 U.S. 81 (2006) ..............................................................12, 13

iii

## STATUTES, RULES AND TREATISES

42 U.S.C. § 1983 ................................................................................................12, 14

42 U.S.C. § 1997e(a) ...............................................................................................11

Fed. R. Civ. P. 56 .....................................................................................................6

Fed. R. Civ. P. 65 .....................................................................................................6

F.R.E. 201 .......................................................................................................6, 10, 11

## STATEMENT OF THE CASE

### A. Identification of Parties and Nature of the Action

In his latest, fourth, amended complaint, brought pursuant to § 1983 and state tort law, Plaintiff, asserts First, Eighth, and Fourteenth Amendment claims, as well as negligence claims.  Plaintiff asserts medical malpractice claims against certain of the Defendants associated with treatment of his Hepatitis C and skin conditions; violations of his Eighth Amendment rights for deliberate indifference to his Hepatitis C, hyperglycemia and skin conditions; and a violation of his First Amendment rights when Plaintiff was denied contact visits with his attorneys and family during a one-week period of hospitalization. Plaintiff seeks compensatory and punitive damages for the Eighth Amendment violations, and seeks injunctive relief regarding the Eighth Amendment Hepatitis C claim and the First Amendment violation.

### B. Relevant Procedural History

Plaintiff initiated the instant action on May 18, 2015 against Defendants Kerestes and GMC pursuant to § 1983. (Doc. 1.)  On August 3, 2015, he filed a motion for leave to amend and supplement his complaint to add Defendants Oppman, Steinhart, Lisiak, Khanum, and Saxon and claims for negligence and Eighth Amendment violations. (Doc. 21.)

Plaintiff filed an amended and supplemental complaint on November 24, 2015. (*Doc. 57.*)  In his amended pleading, Plaintiff added additional Corrections Defendants, namely, CHCA John Steinhart and Former Bureau of Healthcare Services Medical Director Christopher Oppman.  The Corrections Defendants filed motions to dismiss the amended complaint. (Docs. *81, 108.)* By orders and opinions issued August 5, 2016, the Corrections Defendants' motions were granted in part, and denied in part. (*Docs. 169, 171.)*

Plaintiff filed a second amended complaint on August 16, 2016.  (Docs. 176, 177, 178.)  The following day, August 17, 2016, Plaintiff filed a motion for leave to file a third amended complaint.  (Doc. 179.)

On September 30, 2016, Plaintiff also initiated a new action against Secretary Wetzel, Dr. Noel, BHCS Assistant Medical Director, BHCS Infection Control Coordinator, BHCS Director Joseph Silva and the Department's medical contractor, Correct Care Solutions.  (Doc. 1 No. 16-2000 "Mumia 2".)  In his new action, Plaintiff asserted only an Eighth Amendment violation for the denial of his HCV treatment and requested only preliminary and permanent injunctive relief, specifically an order directing the defendants to administer Hepatitis C antiviral medication.  The Corrections Defendants in *Mumia 2* filed a motion to dismiss on October 25, 2016.

By Orders issued January 3, 2017, the Court granted Plaintiff's request for preliminary injunctive relief and denied the Corrections Defendants' motion to dismiss. (*Mumia 2*, Doc. 24, 25.)  The Corrections Defendants appealed the January 3, 2017 Orders.  However, the Department subsequently began administering HCV antiviral medication to Plaintiff and subsequently withdrew their appeal of the January 3, 2017 Orders.  (*See Mumia 2*, Docs. 65, 66.)

On January 10, 2017, Plaintiff's motion for leave to file a Third Amended Complaint in this action was granted. (Doc. 207.)  Plaintiff filed his Third Amended Complaint on January 17, 2017.  (Doc. 210.)  By Order issued May 4, 2017, this Court consolidated Mumia 2 with the instant action.  (*Mumia 2*, Doc. 72.)  The Corrections Defendants filed a motion to dismiss the Third Amended Complaint in the consolidated action on May 23, 2017.  (Doc. 231.)  This brief is submitted in support of that motion.

### C. <u>Statement of Facts</u>

Plaintiff has been incarcerated since 1981 and was previously on death row. (Doc. 210 ¶¶ 17, 23.)  He was first diagnosed with Hepatitis C in 2012.  (*Id*. at ¶ 59.) At some point in August 2014, Plaintiff asserts that his Hepatitis C began to manifest itself as a skin rash.  (*Id*. ¶ 62.)  He alleges that the rash spread.  (*Id*. ¶ 63.)  Although he concedes that he was seen at sick call on several occasions and was prescribed

topical treatments. (*Id*.)  However, he reports that the rash failed to respond to the treatment. (*Id*.)

According to Plaintiff, he was subsequently prescribed a steroid, oral prednisone, and cyclosporine, to address the rash.  (Id. ¶70.)  However, the prescribed steroid led to high blood sugar, which caused him to lose consciousness on March 30, 2015.  (*Id*. ¶¶ 70, 77.)  He was then hospitalized at Schuylkill Medical Center and was discharged to SCI-Mahanoy two days later on April 1, 2015.  (*Id*. ¶¶ 77, 79.)  Plaintiff's rash persisted and, on May 12, 2015, he experienced pain in his lower extremities when showering and was taken to GMC, where he was subsequently admitted.  (*Id*. ¶98.)   He was then discharged by GMC on May 19, 2015 and was returned to SCI-Mahanoy.  (*Id*. ¶ 105.)

The administrative remedies for inmate grievances are provided for in Department of Corrections Administrative Directive 804 ("DC-ADM 804"). (Doc. 155-6 ¶ 6.) The Department's grievance system is a three-tiered system. (*Id*. ¶ 7.) Pursuant to DC-ADM 804, the first step in the inmate grievance process is the initial review. (*Id*. ¶ 8.) Grievances must be filed within 15 working days of the event on which the grievance is based. (*Id*.) The inmate is required to identify any individuals directly involved in the events giving rise the grievance, and to specifically request

any form of "compensation or other legal relief normally available from a court".

(Doc. 155-6 at p. 11.)

An inmate who is dissatisfied with the initial review decision is permitted to appeal to the Superintendent within 15 working days of the initial review decision. (Doc. 155-6 ¶ 10.) An appeal to final review may be sought through the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") by filing an appeal to that office within 15 working days of the date of the Superintendent's decision. (*Id.* ¶ 12.) Extensions to the time for filing a grievance or grievance appeal are considered and may be granted, provided the inmate requests an extension and states a valid reason for the delay. (*Id.*)

Plaintiff did not file a grievance regarding the denial of visits during his May 2015 hospitalization. (Doc. 155-7 ¶¶ 5-10.)

Following his release from GMC, Plaintiff's blood sugar was monitored daily and was eventually controlled without medication.[1]  (v.1 at 96, v.3 at 93-4.)  At the

---

[1] Defendants request that the Court take judicial notice of the evidence admitted at the December 18, 2015 preliminary injunction hearing pursuant to F.R.E. 201.  The Court may consider the evidence admitted in ruling on Defendants' motion to dismiss.  *See McTernan v. City of York, Penn.*, 577 F.3d 521, 530 (3d Cir. 2009) (evidence submitted at preliminary injunction hearing was properly considered in granting a motion to dismiss without review under Fed. R. Civ. P. 56); *see also* Fed. R. Civ. P. 65 (evidence admitted at preliminary injunction hearing becomes part of the record).   Citations to "v.___" are to the respective volumes of the evidentiary

December preliminary injunction hearing in this action, Dr. Paul Noel, the Department's Director of Clinical Services, testified that Plaintiff's increased blood sugar in March 2015 was hyperglycemia, and was not the onset of diabetes mellitus. (v.1 at 93.)  Dr. Noel bases this opinion on the fact that Plaintiff's blood sugar is controlled without medication. (*Id.*)

With respect to his skin condition, Plaintiff admits that he has been followed by a consulting dermatologist, Dr. Schleicher, and has been receiving treatment for his skin condition.  (v.1 at 90.)  Following a skin biopsy that was evaluated by a dermatopathologist on June 23, 2015, Plaintiff was diagnosed with "psoriasis, but possibly nummular eczema."  (v.2 at 27, 70, Ex. D-1 at 415.)  Dr. Schleicher has proceeded with treating Plaintiff for that condition.  (v.2 at 70-73.)  Plaintiff admits that, under Dr. Schleicher's care, he has been treated with baths, triamcinolone cream, Vaseline wraps, and phototherapy sessions.  (v.1 at 91.)  As a result of these treatments, Plaintiff admits that his skin condition, and the itching associated with it, has improved.  (v.1 at 90-1.)  At Plaintiff's last dermatology consultation prior to the preliminary injunction hearing, he informed Dr. Schleicher that he felt "great".  (v.1 at 90.)  According to Dr. Schleicher, Plaintiff's skin condition has improved

_____

hearing transcripts.  Citations to Ex. D-_ and P- are to the parties' exhibits admitted into evidence.

significantly, possibly by about 90 percent, since Dr. Schleicher first examined him. (v.2 at 70.)

Plaintiff tested positive for Hepatitis C in 2012 and has been diagnosed as having chronic HCV. (Ex. D-1 at 167.)[2]  Following the HCV antibody test in 2012, Plaintiff was tested for a viral load and his HCV genotype was assessed.  (v.2 at 48, Ex. D-1 at 397-8.)  Since then, his platelets have been monitored monthly.  (v.2 at 28, Ex. D-1 at 385-400.)

Additionally, two CT scans and two ultrasounds were performed to further assess Plaintiff's condition.  (Ex. D-1 at 434, 637, 640, Ex. P-75.)  Plaintiff began receiving DAA treatment under the Department's treatment protocol on April 6, 2017. (Mumia 2, Doc. 65.)

The Department's HCV treatment protocol is designed to identify and treat those inmates with the most serious liver disease first. (v.3 at 102-3.)  The chronic

---

[2] Chronic HCV is an inflammation of the liver.  (v.1 at 112, v.2 at 199.)  This inflammation can lead to fibrosis, which is scarring of the liver.  (v.1 at 111, v.2 at 199-201.)  The degree of fibrosis sustained is measured on a Metavir scale, which ranges from F0 (indicating no fibrosis) to F4 (indicating cirrhosis).  (v.2 at 23, 202.)  Of those people who develop chronic HCV, only 20 to 30 percent will develop cirrhosis. (v.2 at 199-200.)  Because of its progressive nature, it generally takes cirrhosis approximately 10 to 20 years to develop.  (v.2 at 199.)  Plaintiff refused offers for testing prior to 2012; therefore, it is not possible to determine when he may have been exposed to the virus.  (Ex. D-1 757.)

care clinic monitoring consists of: a face-to-face interview between a physician and the inmate; a physical examination focused on the signs or symptoms of complications associated with chronic HCV; blood tests (CBC and metabolic panel) to assess progression of the disease; education by an infectious control nurse; and administration of any necessary immunizations. (v.3 at 106, 108.)  The frequency with which inmates are seen is dependent upon the progression of their condition. (v.3 at 106.)  Pursuant to the protocol, inmates are seen in the chronic care clinic at least annually in the early stages of the condition, and with greater frequency as their fibrosis progresses.  (*Id*.)

If an inmate's blood tests indicate a progression to cirrhosis, the inmate is identified for further evaluation by a hepatitis C medical review committee ("HCV Committee") at the Department's Central Office.  (v.3 at 104-5.)  Neither Mr. Steinhart nor Mr. Oppman are part of the HCVC.  (v.3 at 105, 129.)  The HCVC reviews the inmate's medical chart in conjunction with additional information provided by the treating physician.  (*Id*. at 105.)  At that point, additional testing may be ordered to determine whether there is a direct indication of advanced progression of the disease. (*Id*.)  The HCVC identifies individuals for the direct-acting antivirals in order of priority, with the sickest individuals treated first.  (v.3 at 102, Ex. P30.)

Both the Center for Disease Control ("CDC") and the Amercian Assosication for the Study of Liver Diseases ("AASLD") have published guidance on the testing and treatment of HCV. (v.2 at 7-9.) The CDC has advised that use of direct-acting antiviral agents that include Sovaldi and Harvoni, rather than Interferon-based regiments, is "the standard of care." (Ex. P17 at 6.) The CDC has further advised that guidance for testing and treatment of HCV is available through the AASLD. In June 2015, the AASLD issued treatment guidelines that recommended prioritizing treatment for individuals with HCV, giving highest priority to those individuals with advanced fibrosis (Metavir scale F3), compensated cirrhosis (F4), liver transplant recipients, and individuals with identified severe extrahepatic symptoms. (Ex. P2 at 3, 5.) The AASLD explained the rationale for this prioritization:

> When the US Food and Drug Administration (FDA) approved the first IFN-sparing treatment for HCV infection, many patients who had previously been "warehoused" sought treatment, and the infrastructure (experienced practitioners, budgeted health-care dollars, etc) did not yet exist to treat all patients immediately. Thus, the [AASLD] offered guidance for prioritizing treatment first to those with the greatest need.

Ex. P-18 at 1.

However, on October 22, 2015, only four months later, the AASLD updated its treatment guidelines, noting that there had been opportunities to "accumulate real-world experience of the tolerability and safety of [the] newer HCV medications"

beyond clinical trials.  Thus, it noted that it was removing the prioritization tables.

(Ex. P18.)  However, in the press release accompanying the guidelines, the AASLD

stated, "*Because of the cost of the new drugs, or regional availability of*

*appropriate health care providers, a practitioner may still need to decide which*

*patients should be treated first."* [3]   The current guidelines continue to acknowledge

that "in certain settings there remain factors that impact access to medications and

the ability to deliver them to patients. In these settings, practitioners may still need

to decide which patients should be treated first."[4]   In fact, as of the time of the

preliminary injunction hearing in Mumia 1, prioritization remained the practice in

the community with insurance companies (v.3 at 72), Medicaid (v.2 at 18), the

United States Veterans Administration (v.2 at 214-15, v.3 at 64, 73), and the Federal

Bureau of Prisons (v.3 at 64, 72-73, Ex. D13.)

---

[3] "Hepatitis C Guidance Underscores the Importance of Treating HCV Infection:
Panel Recommends Direct-Acting Drugs for Nearly All Patients with Chronic
Hepatitis C" (Oct. 22, 2015), available at
http://hcvguidelines.org/sites/default/files/when-and-in-whom-to-treat-press-
release-october-2015.pdf.  The Court is requested to take judicial notice of the
press release pursuant to F.R.E. 201.
[4] "When And In Whom To Initiate Hcv Therapy" (revised Feb. 24, 2016),
available at http://hcvguidelines.org/full-report/when-and-whom-initiate-hcv-
therapy.   The Court is requested to take judicial notice of the referenced version of
the guidelines pursuant to F.R.E. 201.

## STATEMENT OF QUESTIONS PRESENTED

I.      Whether Plaintiff Has Procedurally Defaulted On His Freedom of Association Claims Where He Failed To Exhaust The Available Administrative Remedies?

II.     Whether Plaintiff's Claims Against The Department Of Corrections Should Be Dismissed Where The Department Is Not A "Person" For Purposes Of § 1983?

III.    Whether The Corrections Defendants Are Entitled To Judgment On Plaintiff's First, Fifth, Eighth, And Fourteenth Amendment Claims Where Those Claims Are Barred By Qualified Immunity?

IV.     Whether Plaintiff's §1983 Claims Against Defendants Wetzel, Oppman, Silva Assistant Medical Director, Infection Control Coordinator, Kerestes, DelBalso, And Steinhart, Should Be Dismissed Where Plaintiff Fails To Allege Sufficient Personal Involvement By These Defendants In The Asserted Violations?

V.      Whether Plaintiff's Request For Injunctive Relief Should Be Dismissed As Moot Where Plaintiff Has Been Provided The Relief Requested—DAA Treatment?

## ARGUMENT

I.      <u>Plaintiff Has Procedurally Defaulted On His Freedom of Association Claim Because He Failed To Exhaust The Available Administrative Remedies.</u>

Plaintiff has failed to exhaust his administrative remedies under 42 U.S.C. §1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." The exhaustion requirement of § 1997e(a) is a mandatory precondition to filing suit that may not be waived by the courts. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*. at 532. Inmates seeking redress for such claims must exhaust their administrative remedies regardless of whether the administrative process can provide the inmate with the relief he subsequently seeks in his federal action. *Booth v. Churner*, 532 U.S. 731, 739 (2001).

Prison grievance procedures provide the guidelines against which administrative exhaustion is measured for purposes of § 1997e(a), and an inmate procedurally defaults on his claims when he fails to follow the established procedures. Exhaustion, for these purposes, requires "proper" exhaustion. *Woodford v. Ngo*, 548 U.S. 81 (2006). To properly exhaust, prisoners must complete the administrative review process in accordance with the applicable procedural rules of the prison grievance process. *Jones v. Bock*, 549 U.S. 199 (2007). Prison grievance procedures supply the yardstick for measuring procedural default. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004).

Unexhausted claims may not be considered by the courts. *Jones*. Further, courts may not excuse exhaustion based on equitable considerations or futility. *Ross v. Blake*, 136 S. Ct. 1850 (2016) (exhaustion is mandatory and may not be excused based on "special circumstances"); *Nyhuis v. Reno*, 204 F.3d 65 (3d Cir. 2000) (no futility exception to mandatory exhaustion requirement).

It is clear that Plaintiff has not exhausted his available administrative remedies with respect to his freedom of association claim against Defendants Kerestes and DelBalso. Plaintiff asserts that, while hospitalized at GMC from May 12, 2015 until May 19, 2015,  he was denied contact visits with his family. He seeks an injunction directing the Defendants to permit attorney-client and family visits when he is taken from a DOC facility to receive inpatient medical treatment. (Doc. 210, Prayer for Relief.) However, Plaintiff did not file a grievance regarding the denial of visits during his May 2015 hospitalization. As a result, he has procedurally defaulted on this claim. *See Woodford,* 548 U.S. at 90 (2006); *Spruill*, 372 F.3d at 231 (3d Cir. 2004).  Accordingly, this claim should be dismissed.

II.     <u>Plaintiff's Claims Against The Department Of Corrections Should Be Dismissed Because The Department Is Not A "Person" For Purposes Of § 1983.</u>

Section 1983 permits suit only against a "person".  See 42 U.S.C. § 1983.  It is well settled that neither a state nor the agencies it administers may be considered

a "person" for purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) cited in *Pettaway v. SCI Albion*, 487 Fed. Appx. 766, 768 (3d Cir. 2012) (Department of Corrections and the prison it administers are not "persons"). Accordingly, Plaintiff's claim against the Department of Corrections should be dismissed.

III.    The Corrections Defendants Are Entitled To Judgment On Plaintiff's First, Fifth, Eighth, And Fourteenth Amendment Claims Where Those Claims Are Barred By Qualified Immunity.

Qualified immunity shields federal and state officials from liability unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

As stated by the Court in *al-Kidd,*

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *See ibid.*; *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

563 U.S. at 741.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it

14

protects 'all but the plainly incompetent or those who knowingly violate the  law.'"
*al-Kidd*, 563 U.S. at 743 (quoting *Malley*).  The United States Supreme Court has
repeatedly directed courts not to define clearly established law at a high level of
generality.  *Id.* ("The general proposition, for example, that an unreasonable search
or seizure violates the Fourth Amendment is of little help in determining whether the
violative nature of particular conduct is clearly established.")

More recently, in *Taylor v. Barkes*, 135 S. Ct. 2042 (2015), the United States
Supreme Court reversed the Third Circuit Court of Appeals' denial of qualified
immunity to prison officials, holding that it was not clearly established that there
was a constitutional right to proper implementation of specific treatment protocols
regarding suicide prevention.  In *Taylor*, the inmate disclosed during intake that he
had a history of psychiatric treatment, was on medication, and had previously
attempted suicide.  The prison officials used a screening tool which resulted in a
routine mental health referral with no special suicide preventative measures. The
inmate subsequently hanged himself.

Following denial of the defendants' motion for summary judgment based on
qualified immunity, a divided panel of the Third Circuit Court of Appeals affirmed.
The Supreme Court reversed on the grounds that there was no violation of clearly
established law.  In so holding, the Court noted that no Supreme Court decision had

established a right to the proper implementation of adequate suicide prevention protocols or even discussed the topic.  Moreover, the weight of the authority in the courts of appeals at the time suggested that such a right did not exist.   *Taylor v. Barkes*, 135 S. Ct. at 2045.  The Supreme Court found that "even if the Institution's suicide screening and prevention measures contained the shortcomings…allege[d], no precedent on the books in November 2004 would have made clear to petitioners that they were overseeing a system that violated the Constitution.  Because, at the very least, petitioners were not contravening clearly established law, they are entitled to qualified immunity."  *Id*.

As in *Taylor*, the defendants here are entitled to qualified immunity because it has not been clearly established that use of prioritization protocols to monitor and treat inmates with Hepatitis C violates the Eighth Amendment.  There is no Supreme Court or Third Circuit Court of Appeals case that establishes a constitutional right to treatment for Hepatitis C with direct-acting anti-viral medication irrespective of progression of the disease.

On the contrary, during the relevant time period, every court that reached a decision on this issue held that monitoring and treatment under prioritization protocols was sufficient for Eighth Amendment purposes. *See Allah v. Thomas*, CV 15-5593, 2016 WL 3258422 (E.D. Pa. June 14, 2016); *Taylor v. Rubenstein,* No.

3:15-CV-120, 2016 WL 1364287, at *3 (N.D. W.Va. Apr. 6, 2016) (denying motion for preliminary injunction seeking Harvoni as unlikely to succeed on the merits where inmate-plaintiff's HCV condition was monitored through chronic care clinic); *Smith v. Corizon, Inc.*, CV JFM-15-743, 2015 WL 9274915, at *6 (D. Md. Dec. 17, 2015) (denial of Harvoni did not constitute deliberate indifference where the inmate-plaintiff's HCV was monitored by medical staff); *Dulak v. Corizon*, No. 2015 Dist. LEXIS 131291 (E.D. Mich. July 10, 2015) *adopted at* 2015 U.S. Dist. LEXIS 129702 (E.D. Mich. Sept. 28, 2015) (denying preliminary injunction and finding no deliberate indifference where plaintiff was monitored under prioritization protocol and denied antiviral therapy); *Harrell v. California Forensic Medical Group, Inc.*, No. 2015 U.S. Dist. LEXIS 149084 (E.D. Ca. Nov. 3, 2015) (denying preliminary injunction and dismissing complaint for failure to state a claim where plaintiff was denied direct-acting antivirals under prioritization protocol based on low fibrosis score); *Shabazz v. Schofield*, 2015 U.S. Dist. LEXIS 113082 (M.D. Tenn. Aug. 26, 2015) (denying preliminary injunction and finding that regular monitoring through chronic care program that monitored liver enzymes at least every three months was "consistent with generally accepted medical practices, regardless of whether the patient is incarcerated or is a free world patient."); *see also Maskelunas v. Wexford Health Source, Inc.*, 2015 WL 6686709, at *3 (W.D. Pa. Oct. 8, 2015) *report and*

17

*recommendation adopted*, 2015 WL 6686719 (W.D. Pa. Oct. 29, 2015) ("qualified immunity law makes it impossible to impose liability for damages on medical providers trying to decide whether and when to use [Harvoni and Sovaldi].")

Moreover, other courts considering this same issue have found that similar claims during brought regarding treatment under prioritizing protocols are barred by qualified immunity. *Bernier v. Trump*, 16-CV-00828, 2017 WL 1048053, at *2 (D.D.C. Mar. 17, 2017) (finding qualified immunity barred Eighth Amendment claim for denial of Harvoni treatment under BOP's prioritizing protocol—which used APRI scores to determine treatment priority—because the right to such treatment under the Eighth Amendment was not clearly established); *Cunningham v. Sessions*, 9:16-CV-1292-RMG, 2017 WL 2377838, at *4 (D.S.C. May 31, 2017) (inmate's Eighth Amendment claim regarding failure to treat HCV with DAA drugs barred by qualified immunity because "there is no clearly established statutory or constitutional right *at this time* for inmates with chronic Hepatitis C to be treated with DAA drugs.")

Because there is no clearly established right to receive immediate treatment with direct-acting antiviral medication, rather than monitoring and treatment under a prioritizing protocol, the Corrections Defendants are entitled to qualified immunity.

18

IV.   Plaintiff's § 1983 Claims Against Defendants Wetzel, Oppman, Silva Assistant Medical Director, Infection Control Coordinator,  Kerestes, Delbalso, And Steinhart Should Be Dismissed Because Plaintiff Has Failed To Allege Sufficient Personal Involvement By These Defendants In The Asserted Violations.

To establish liability under § 1983, a plaintiff must prove that the defendant-official was "personally involved" in the alleged violation. *Rizzo v. Goode*, 423 U.S. 362 (1976).  Liability may not be premised on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  A supervising official's liability will only result from his misconduct, not the "misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the sub-agents or servants or other persons properly employed by or under him, in the discharge of his official duties." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  The required degree of personal involvement may be shown by alleging facts sufficient to show actual participation in the misconduct. *Id.*  Absent such involvement, liability attaches only where there is both actual knowledge of and acquiescence in the misconduct, which sends a message of approval of the misconduct. *Chinchello v. Fenton*, 805 F.2d 126 (3d Cir. 1986).  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement; further, such allegations "must be made with appropriate particularity." *Id.*  Review of a complaint

or grievance by an inmate after the incident giving rise to the complaint has already occurred is not sufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

In the instant action, it is clear that neither Wetzel, Oppman, Silva, Kerestes, DelBalso nor Steinhart were directly responsible for treating Plaintiff's conditions. Although Mr. Steinhart is the healthcare administrator at SCI-Mahanoy, he has no responsibilities or roles for direct treatment of inmates. (v.2 at 151.) With respect to Plaintiff's HCV condition, the HCV Committee approves treatment with the direct-acting antiviral medications under the Department's treatment protocol. (v.3 at 105, 129.) None of these Defendants is on the HCV committee nor played a role in deciding whether or when Plaintiff should receive DAA treatment. (See v.3 at 129.) Thus, it is clear that none of these individuals has the requisite personal involvement.

As regards Defendants Assistant Medical Director and Infection Control Coordinator, Plaintiff fails to allege any facts or claims against these individuals in the operative complaint. Accordingly, Plaintiff's § 1983 claims against these individuals should be dismissed.

## V. Plaintiff's Request For Injunctive Relief Should Be Dismissed As Moot Because Plaintiff Has Been Provided The Relief Requested—DAA Treatment.

"Federal courts generally lack jurisdiction whenever 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'"

*McNair v. Synapse Group Inc.,* 672 F.3d 213, 224 n. 11 (3d Cir.2012) (quoting *Merle v. United States,* 351 F.3d 92, 94 (3d Cir.2003)) (internal citations and quotations omitted). In the instant case, Plaintiff has been granted the relief requested—treatment with DAA medication. Because the ultimate relief has been granted, and because it is undisputed that the DAA medication is almost certain to cure HCV condition, Plaintiff's request for injunctive relief is moot and should be dismissed.

## <u>CONCLUSION</u>

**WHEREFORE**, Defendants respectfully request that their motion to dismiss

be granted.

Respectfully submitted,

Office of General Counsel

Dated:  September 21, 2017        By:   <u>/s/  Laura J. Neal          </u>
                                         Laura J. Neal
                                         Assistant Counsel
                                         PA 81070
                                         Pennsylvania Department of Corrections
                                         Office of Chief Counsel
                                         1920 Technology Parkway
                                         Mechanicsburg, PA  17050
                                         Tel:  (717) 728-7763
                                         lneal@pa.gov
                                         Counsel for Corrections Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MUMIA ABU-JAMAL, | : | |
| Plaintiffs | : | Civil Action No. 3:15-CV-00967 |
| | : | |
| v. | : | (Judge Mariani) |
| | : | |
| JOHN KERESTES, et al., | : | |
| Defendants | : | FILED ELECTRONICALLY |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on the parties' counsel via ECF.


Dated:  September 21, 2017          /s/  Laura J. Neal
                                   Laura J. Neal
                                   Assistant Counsel

PA Dept. of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA  17050
Tel:  (717) 728-7763

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MUMIA ABU-JAMAL,                          :
      Plaintiff                         :       Civil Action No. 3:15-CV-00967
                                        :
      v.                                :       (Judge Mariani)
                                        :
JOHN KERESTES, et al.,                    :
                                        :
      Defendants                        :       FILED ELECTRONICALLY

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8

The undersigned hereby certifies that the attached brief complies with the word-count limit described in M.D. Pa. L.R. 7.8(b)(2).   According to the word processing system used, the brief (excluding title page, table of contents and table of authorities, contains 4, 392 words.

Respectfully submitted,

Office of General Counsel

Dated:  September 21, 2017

by  /s/ Laura J. Neal
Laura J. Neal
Assistant Counsel
PA 81070
Pa. Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA  17050
Tel:  (717) 728-7763
Fax:  (717) 728-0312
lneal@pa.gov
Counsel for Defendants