# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLANIA

| | | |
|---|---|---|
| **MUMIA ABU-JAMAL** | : | **Case No. 15-Cv-00967** |
| | : | |
| **Plaintiff,** | : | **Judge Robert D. Mariani** |
| | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| **JOHN KERESTES, et al.** | : | |
| | : | |
| **Defendants.** | : | **ELECTRONICALLY FILED** |
| | : | |

## BRIEF IN OPPOSITION TO DOC DEFENDANTS'
## MOTION TO DISMISS FOURTH AMENDED COMPLAINT

Robert J. Boyle
277 Broadway
Suite 1501
New York, N.Y. 10007
(212) 431-0229
Rjboyle55@gmail.com
NYS ID# 1772094
*Pro hac vice*

Bret D. Grote
PA I.D. No. 317273
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA  15221
Telephone:  (412) 654-9070
bretgrote@abolitionistlawcenter.org

*Counsel for Plaintiff*

# TABLE OF CONTENTS

Table of Authorities…………………………………………………………………… ii

Introduction…………………………………………………………………………1

Statement of Facts………………………………………………………….......2

Legal Argument…...……………………………………………………….......6

a.  This Court Should Decline To Consider Factual Assertions Not Contained In The Pleadings……………………………………………………………………….6

b.  An Administrative Remedy was Unavailable to Plaintiff During his Hospitalization at Geisinger Medical Center………………………………………………….......8

c.  Claims against DOC Should be Dismissed…………………………………….......8

d. Plaintiff's Eighth Amendment Claims Are Not Barred by Qualified Immunity……9

e.  Plaintiff Has Alleged Sufficient Personal Involvement for Each Defendant………15

f.  Plaintiff's Claim for Injunctive Relief Is Not Moot………………………………20

Conclusion………………………………………………………………………21

Certificate of Compliance………………………………………………………..22

Certificate of Service……………………………………………………………..23

# TABLE OF AUTHORITIES

## Cases

*Abu-Jamal v. Kerestes*, 2016 WL 4574646 (M.D. Pa. 2016) …………...……………..11

*Alle v. Mendrano*, 416 U.S. 802 (1974) …………...…………….…...…………...…..20

*A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572 (3d Cir. 2004)18

*Anderson v. Creighton*, 483 U.S. 635 (1987) …………….…...…………....………..9, 15

*Ashcroft v. al-Kidd*, 131 S.Ct. 2074 (2011) …………….…...…………………………...9

*Barndt v. Pennsylvania Dept. of Corrections*, 2011 WL 4830181 (M.D.Pa. 2011)………….11

*Baynes v. Cleyland*, 799 F.3d 600 (6th Cir. 2015) …………...………...……………....11

*Beers-Capitol v. Whetzel*, 256 F.3d 120 (3d Cir. 2001) …………...………...…………..15

*Bernier v. Trump*, 2017 WL 1048053 (D.D.C. 2017) …………...………...……..15.n

*Brosseau v. Haugen*, 543 U.S. 194 (2004) …………….…...……………………………10

*Chimenti v. Pennsylvania Department of Corrections*, 2017 WL 3394605
   (E.D.Pa. 2017)…………………….……………………………………………14,15.n

*Cunningham v. Sessions*, 2017 WL 2377838 (D.S.C. 2017) …………...……………….15,n

*Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993) ………………………………………13

*Estelle v. Gamble*, 429 U.S. 97 (1976)…………………………………...………..10, 13

*Ex Parte Young*, 209 U.S. 123 (1908) …………….…...………………….…...……8

*Farmer v. Brennan*, 511 U.S. 825 (1994)…………………………………..11, 13,14

*Fogle v. Cumberland Cty. Prison*, 2015 WL 8732064 (M.D.Pa. Nov. 2, 2015) …………..17

*Helling v. McKinney*, 509 U.S. 25 (1993)…………………………….…...………………..13

*Hinjosa v. Livingston*, 807 F.3d 657 (5th Cir. 2015) …………...……….…...…………14

*Hope v. Pelzer*, 536 U.S. 760 (2002) …………………...…………………….……9, 10, 14

*Johnson v. Jones*, 340 F.3d 624 (8th Cir. 2003) ……………...…………………………..8

*Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 769 (3d Cir. 2002) ……………....…9

*Langford v. City of Atlantic City*, 235 F.3d 845 (3d Cir. 2000) …………..………………16

*McTernan v. City of York*, 577 F.3d 521 (3d Cir. 2009) …………………………………7

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) …………………..…………………….........9

*Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987)…11, 13

*Natale v. Camden County Correctioanl Facility*, 318 F.3d 575 (3d Cir. 2003)………………11

*Niblack v. Murray*, 2016 WL 4086775 (D.N.J. 2016) …………..………..….……...16, 19

*Palakovic v.Wetzel*, 854 F.3d 209 (3d Cir. 2017) …………………...………..…10, 11,13

*Pearson v. Callahan*, 555 U.S. 223 (2009) …………………...……………………….....9

*Petties v. Carter*, 836 F.3d 722 (7th Cir. 2016) …………..…………..……………….....13

*Pyles v. Fakim*, 771 F.3d 403 (7th Cir. 2014) …………..…………….…………....…..11

*Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011) …………..………..……….....15,16

*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988) …………..……………..…....…16, 19

*Rose v. Bartle*, 871 331 (3d Cir. 1989) ……………….…...…………………....……7

*Ross v. Blake*, 136 S.Ct. 1850 (2016) ……………….…...……………………...….…8

*Sharp v. Johnson*, 669 F.3d 144 (3d Cir. 2012) …………………...……………………10

*Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004) …………..……….…...……..….…11,12, 16

*Taylor v. Barkes*, 135 S.Ct. 2042 (2015) …………..……………..……….....……..13,14

*Tolan v. Cotton*, 134 S.Ct. 1861 (2014) …………………...…………………………....…10

*United States v. Lanier*, 520 U.S. 259 (1997)..……………………………...…………………9

*U.S. v. WT Grant Co.*, 345 U.S. 629 (1953) …………...…………..…………...………20

## Statutes

42 U.S.C. § 1983…………………...…………………………...………………………..8

42 U.S.C. § 1997(e) …………………...……………………………...…………………8

Fed.R.Civ.P. 12(d)……………………………………………………………………...7

Fed.R.Civ.P.56(d)………...…………...…………………………………………………7

## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLANIA

| | |
|---|---|
| MUMIA ABU-JAMAL | : **Case No. 15-Cv-00967** |
| | : |
| **Plaintiff,** | : **Judge Robert D. Mariani** |
| | : |
| v. | : **JURY TRIAL DEMANDED** |
| | : |
| **JOHN KERESTES, et al.** | : |
| | : |
| **Defendants.** | : **ELECTRONICALLY FILED** |
| | : |

## BRIEF IN OPPOSITION TO DOC DEFENDANTS' <u>MOTION TO DISMISS</u>

<u>Introduction</u>

This memorandum is respectfully submitted in opposition to the motion to dismiss filed by defendants Pennsylvania Department of Corrections (DOC), John Wetzel, Christopher Oppman, Joseph Silva, Paul Noel, DOC Bureau of Health Care Services (BHCS) Assistant Director, BHCS Infection Control Coordinator, John Kerestes, Theresa DelBalso, and John Steinhart (hereafter "DOC defendants") in *Abu-Jamal v. Kerestes, et al.,* 15-cv-967, consolidated with case of *Abu-Jamal v. Wetzel*, 16-cv-2000.   Doc. 251

The initial *Kerestes* complaint, filed May 18, 2015, sought, *inter alia*, injunctive relief arising from the denial of visitation while hospitalized.  The complaint was amended to include, *inter alia*, Eighth Amendment and state law violations arising from the lack of medical care accorded to plaintiff.  The Fourth Amended Complaint,

Doc. 245, names the movants Wetzel, Oppman, Silva, Noel, Kerestes, DelBalso, and Steinhart as those responsible for the lack of medical treatment.

On September 30, 2016, plaintiff filed the now consolidated case of *Abu-Jamal v. Wetzel.*, 16 Civ. 2000. That complaint seeks injunctive relief only and names as defendants the movants Wetzel, Silva, Noel, DOC Bureau of Health Care Services (BHCS) Assistant Director, and BHCS Infection Control Coordinator.

## Statement of Facts

The plaintiff Mumia Abu-Jamal is an African-American, a journalist, and former member of the Black Panther Party. Doc. 245, ¶¶ 4, 18, 21. He is in the custody of the DOC and housed at the State Correctional Institution at Mahanoy. *Id.* He suffers from, *inter alia*, chronic hepatitis C. Doc. 245, ¶ 5. During routine bloodwork performed by DOC medical staff in 2012, plaintiff tested positive for the hepatitis C antibody. Doc. 245, ¶¶ 60, 62. In July 2015, blood tests confirmed that plaintiff has "active" or "chronic" hepatitis C. Doc. 245, ¶ 122.

Hepatitis C is a virus that infects the liver. If left untreated it can cause scarring (fibrosis) and/or extreme scarring (cirrhosis), both of which can affect liver functioning. Doc. 245, ¶¶ 33-34. At least 20% of Hepatitis C sufferers will develop cirrhosis and of them 2-7 % per year will develop liver cancer. Doc. 245, ¶ 37. Chronic hepatitis C can also cause complications outside of the liver, including, anemia, diabetes and, in 20-40% of hepatitis C patients, various skin conditions. Doc. 245, ¶¶ 41-42. In or about 2013, anti-viral drugs for the treatment of hepatitis C

2

became available.  If administered, they have a 90-95% cure rate.  Since June 2015, treatment with these anti-viral medications is the standard of care irrespective of the stage of the disease. Doc. 245, ¶¶ 43-44.

In 2013, the DOC ceased treating all inmates with chronic hepatitis C. Doc. 245, ¶ 48.  This policy, approved by defendants Wetzel and Oppman, continued until late 2015.  Doc. 245, ¶ 49.  At that time, defendants Oppman and Noel, with the approval of defendant Wetzel, crafted a medical protocol for the treatment of inmates with hepatitis C.  The hepatitis C protocol was added as Appendix 16-B to the DOC's Policy Statement 13.1.1 entitled "Management and Administration of Health Care." Doc. 245, ¶¶ 50-51.  Under it only inmates with decompensated cirrhosis with bleeding are authorized to receive the latest anti-viral drugs.  Doc. 245, ¶ 51.  When the disease has reached that stage, there has been irreversible damage to the liver, decreased liver functioning and grave risk of death. Doc. 245, ¶ 53.  The protocol was delivered to each Facility Manager, including defendant Kerestes.  Doc. 245, ¶ 55. The defendants knew that delay in treatment had no medical justification, was below the standard of care, and would likely cause additional suffering and permanent harm to an inmate's health. Doc. 245, ¶¶ 54-57.  The protocol remains in effect and is enforced at the state-wide level by defendants Wetzel and Noel and at the facility level by defendants DelBalso and Steinhart, and formerly by defendant Kerestes. Doc. 245, ¶ 58.

3

In August 2014, plaintiff's hepatitis C infection began to manifest itself through a pruritic skin rash that covered eventually 70% of his body.  Doc. 245, ¶¶ 63-64.  No one investigated whether the hepatitis C was its underlying cause.  Doc. 245, ¶ 70.  Plaintiff's blood glucose levels began to rise. By March 6, 2015, it had risen to 419.  In March 2015, an inmate approached defendant Kerestes and told him that plaintiff was in a seriously weakened state.  Defendant Kerestes took no action.  Doc. 245, ¶¶ 76-77.  On March 30, 2015, plaintiff lost consciousness and was rushed to Schuylkill Medical Center where his blood glucose level was determined to be 507.  Doc. 245, ¶ 78.

On May 12, 2015, plaintiff was admitted to Geisinger Medical Center after experiencing extreme lower body pain.  A CT scan performed at Geisinger found irregularities in the architecture of plaintiff's liver, a sign of cirrhosis. Doc. 245, ¶ 108.  There was no further testing.  Doc. 245, ¶¶ 108-111.

Plaintiff's counsel requested a complete hepatitis C workup.  Doc. 245, ¶ 115.  Bloodwork conducted in July 2015 confirmed that plaintiff had an active hepatitis C infection.  Doc. 245, ¶ 122.  Thereafter plaintiff complained that he should be treated with hepatitis C anti-viral medications.  He was told that the DOC was not treating anyone due to the cost.  Doc. 245, ¶¶ 125, 155.

Defendant Paul Noel sits on the DOC Hepatitis C Review Committee created under the DOC's hepatitis C protocol.  In December 2015, he acknowledged that plaintiff was not administered the anti-viral medication because he did not meet the

4

protocol's criteria for treatment.  Doc. 245 ¶¶ 123, 145-150. Noel acknowledged that there was no medical justification for denying plaintiff treatment with anti-viral drugs. Doc. 245, ¶ 148.

Through medical records memorializing bloodwork and other tests, defendants Wetzel, Oppman, Noel, Kerestes and Steinhart know that plaintiff's disease is progressing and that he has likely developed cirrhosis. Doc. 245, ¶ 128.[1]  The failure to treat him has caused suffering, will cause additional suffering and place him at risk of death. Doc. 245, ¶¶ 126-128, 153-154.  Defendants Wetzel, Oppman and Noel know that enforcement of the protocol has caused, and will cause damage to plaintiff's health.  Doc. 245, pars. 136-141.  They also know that he would likely be cured if administered the anti-viral medication.  Doc. 245 ¶¶ 137.

In August 2016, this Court denied plaintiff's preliminary injunction motion seeking hepatitis C treatment on procedural grounds while also holding that the failure to treat plaintiff violated the Eighth Amendment.  The defendants took no steps to administer the drugs to plaintiff.   On January 3, 2017, this court granted plaintiff's motion for a preliminary injunction and ordered that he be provided with anti-viral medications. 16 Civ. 2000, Doc. 23.  Notwithstanding that no court issued a stay of that Order, the defendants still did not treat the plaintiff.  It was not until April 6, 2017 that plaintiff began receiving the anti-viral medication.

---

[1] Subsequently it was revealed that plaintiff's condition had deteriorated to cirrhosis.

**LEGAL ARGUMENT**

**Question:**  Should this Court consider factual assertions outside the pleadings where the defendants have failed to comply with the procedural requirements applicable to summary judgment motions?

**Suggested Answer**: No.

**Question:** Has Plaintiff procedurally defaulted on his First Amendment claims?

**Suggested Answer:** No.

**Question:** Should the claims against the DOC be dismissed?

**Suggested Answer**: Yes.

**Question:** Are plaintiff's First, Fifth, Eighth, and Fourteenth Amendment claims barred by qualified immunity?

**Suggested answer:** No.

**Question:** Did Plaintiff allege sufficient personal involvement for purposes of § 1983 liability by defendants Wetzel, Oppman, Silva, BHCS Assistant Medical Director, BHCS Infection Control Coordinator, Kerestes, DelBalso, and Steinhart?

**Suggested answer:** Yes.

**Question:** Is Plaintiff's claim for injunctive relief for hepatitis C treatment moot where treatment is on-going?

**Suggested answer:** No.

   **a. This Court Should Not Consider Factual Assertions Not Contained In The Pleadings.**

   Throughout their brief, the defendants rely upon portions of the record

developed at the December 2015 preliminary injunction hearing.  They argue that

such reliance is proper while acknowledging that they have failed to comply with the procedural requirements applicable to summary judgment motions.  Doc. 254, p. 5., n.1 That argument should be rejected.

In *McTernan v. City of York*, 577 F.3d 521 (3d Cir. 2009), the Third Circuit held that in "rare" situations a district court may take into account the "*findings* made in a preliminary injunction decision[]" when determining a motion to dismiss.  *Id.* at 530-531.   Contrary to *McTernan*, defendants urge this Court to take into account and accept as true not the findings made after the preliminary injunction hearing but the <u>assertions</u> made by the Defendants' witnesses during that hearing. Doc. 254, p. 5,6, 7, 8,9).[2]  They do so while knowing that the assertions they make are, in fact, disputed and/or were flatly rejected by this Court in its decisions on the preliminary injunction motion.

Alternatively, this Court should not convert the Defendants' motion into one for summary judgment as plaintiff has not had a "reasonable opportunity" to present relevant evidence and engage in necessary discovery.  Fed.R.Civ.P. 12(d), 56(d) *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989).

---

[2] The DOC defendants ask that this Court accept as true Paul Noel's assertion that plaintiff's diabetes was not related to his hepatitis C (p. 6), Dr. Schleicher's opinions concerning the skin condition (p. 6-7), the assertion that neither defendant Steinhart nor Oppman had any role in plaintiff's medical care (p. 8), and assertions concerning the efficacy of the hepatitis C protocol (p. 8-10).

**b. An Administrative Remedy was Unavailable to Plaintiff During his Hospitalization at Geisinger Medical Center.**

Prisoners may not bring a 42 U.S.C. § 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).   But while "[a]n inmate . . . must exhaust available remedies, [he] need not exhaust unavailable ones." *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016). Defendants' argument that Mr. Abu-Jamal has procedurally defaulted on his First Amendment claims is unavailing.  At the time of the May 18, 2015 initial complaint raising those claims, plaintiff did not have an available administrative remedy to exhaust.

During his May 12-May 19, 2015 hospitalization, Mr. Abu-Jamal did not have access to materials with which to file a grievance. *See* Doc. 36, Abu-Jamal Dec. ¶ 4. When analyzing whether there has been exhaustion, "the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).  As no administrative remedy was available on May 18, plaintiff was under no obligation to exhaust and dismissal of the First, Fifth, and Fourteenth Amendment claims should be denied.

**c. Claims against the DOC should be dismissed**

The official capacity defendants in *Abu-Jamal v. Wetzel*, 16 Civ. 2000, are the requisite necessary parties for injunctive relief. *Ex Parte Young*, 209 U.S. 123, 159-60

(1908); *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 769, 168 (3d Cir. 2002).

Accordingly, plaintiff does not oppose dismissal of the DOC as a defendant.

### d. Plaintiff's Eighth Amendment Claims Are Not Barred by Qualified Immunity

A defendant is not entitled to qualified immunity if plaintiff's facts 1) "make

out a violation of a constitutional right," and 2) "the right at issue was 'clearly

established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555

U.S. 223, 815-816 (2009). A right is clearly established when its contours are

"sufficiently clear that a reasonable official would understand that what he is doing

violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation and

citation omitted). "This is not to say that an official action is protected by qualified

immunity unless the very action in question has previously been held unlawful, see

*Mitchell v. Forsyth*, 472 U.S. 511, 535 n. 12 [1985]; but it is to say that in light of pre-

existing law the unlawfulness must be apparent." *Id.* (quoting *Anderson v. Creighton*, 483

U.S. 635, 640 (1987)).  There need not be precedent involving "fundamentally similar"

facts to the case at issue.  *Hope*, 536 U.S. at 740-41; *See also United States v. Lanier,* 520

U.S. 259, 268 (1997). See also *Ashcroft v. a-Kidd*, 131 S.Ct. 2074, 2083 (2011) ("We do

not require a case directly on point, but existing precedent must have placed the

statutory and constitutional question beyond debate.").  "The salient question is

whether the state of the law and the time of the incident provided 'fair warning' to the

defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

Qualified immunity is an affirmative defense upon which the defendants bear the burden of proof. *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). A court must accept the allegations in the complaint as true. *Palakovic v. Wetzel*, 854 F.3d 209, 219-220 (3d Cir. 2017). This is true even where, as here, the movant's argument is limited to the "clearly established" prong. *Tolan v, Cotton*, 134 S.Ct. at 1866. The inquiry as to whether conduct violated clearly established law must be made "in light of the specific context of the case". *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The rights at issue herein can be defined in two ways. First, there is Mr. Abu-Jamal's right to receive constitutionally adequate treatment for a serious medical need where the defendants know that the treatment will cure the disease and their refusal to provide such treatment has resulted in, and will result in, damage to the plaintiff's health. In addition, and alternatively, Mr. Abu-Jamal has a constitutional right not to be denied treatment for a serious medical need, have that treatment delayed, or to be given a less efficacious form of treatment, for non-medical reasons. The contours of these rights have been clearly established in numerous cases.

The Eighth Amendment right of a prisoner to adequate medical care was first established over 40 years ago in *Estelle v. Gamble*. 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment when 1) he/she is aware that

10

the plaintiff-inmate has a serious medical need, and (ii) is deliberately
indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

A "serious medical need" is one that has been "diagnosed by a physician
as requiring treatment[.]" *Monmouth County Correctional Institution Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 2008); *Baynes v. Cleyland*, 799 F.3d 600, 618
(6th Cir. 2015); *Pyles v. Fakim*, 771 F.3d 403, 409 (7th Cir. 2014). The defendants
herein do not dispute that it is clearly established that hepatitis C is a "serious
medical need" within the meaning of *Farmer*, *Natale*, and *Monmouth County.*
*Barndt v. Pennsylvania Dept. of Corrections*, 2011 WL 4830181 *9 (M.D.Pa. 2011)
(recognizing hepatitis C is a serious medical need); *Abu Jamal v. Kerestes*, 2016
WL 4574646 (M.D. Pa. 2016).

The contours of what constitutes "deliberate indifference" have also
been sufficiently defined.  It can be established

1) Where prison officials deny reasonable requests for medical care…and such denial exposes the inmate to undue suffering or threat of tangible residual injury; and

2) where knowledge of the need for medical care [is accompanied by the] intentional refusal to provide that care.

*Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).  *See also Palakovic v. Wetzel*, 854 F.3d
209, 228 (3d Cir. 2017) (same).

11

The Fourth Amended Complaint alleges that the DOC defendants know that the plaintiff suffers from serious medical need, chronic hepatitis C. Doc. 245, ¶¶ 6, 62, 122.   It further alleges that they knew that his disease was causing pain and discomfort through, *inter alia*, a persistent skin condition. Doc. 245, ¶¶ 64-67, 86, 112-113.  The defendants knew that plaintiff's platelet levels were dropping, a sign of disease progression, and that it was more likely than not that his condition had already deteriorated to cirrhosis. Doc. 245, ¶¶ 126-133.  As of 2014, the defendants knew that they had available to them anti-viral medications that would have cured the hepatitis C and prevented further deterioration of his health. Doc. 245 ¶¶ 43-45, 48-49.  Since July 2015, that medication has been the standard of care in hepatitis C treatment. Doc. 245 ¶¶ 44-45.   Plaintiff requested that he be administered that medication.  The DOC defendants refused to administer it to him based upon a protocol that requires that an inmate's health deteriorate to cirrhosis before they are even considered for treatment. Doc. 245, ¶ ¶ 52-53, 57. The defendants Wetzel, Noel and Oppman know that this policy allows inmates' livers to become permanently damaged and places them at significantly higher risk of liver cancer and death. Doc. 245 ¶¶ 53-54, 136-150.  They know that there is no medical justification for not treating plaintiff.  *Id.*  By these actions and inactions, the defendants violated Mr. Abu-Jamal's clearly established right not to be subjected to "undue suffering [and] threat of tangible residual injury." *Spruill v. Gillis*, 372 F.3d at 235.   The defendants' knowledge of the need for medical care accompanied by the intentional refusal to provide it constituted deliberate

12

indifference under well-settled case law. *Id.  See also Farmer v. Brennan*, 511 U.S. at 837.

(Eighth Amendment violated where prison official "knows and disregards an

excessive risk to inmate health or safety.").

It is clearly established that prison officials may not place inmates in a situation

that poses an "unreasonable risk of damage to future health." *Helling v. McKinney*, 509

U.S. 25, 33 (1993).   Thus, where, as here, prison officials choose an "easier and less

efficacious" form of treatment, such conduct constitutes deliberate indifference.

*Estelle v. Gamble*, 429 U.S. 104, n.10; *Palakovic v. Wetzel*, 834 F.3d at 228.  *See also Petties*

*v. Carter*, 836 F.3d 722, 734 (7th Cir. 2016), citing *Farmer v. Brennan*, 511 U.S. at 837

(holding that if jury found that doctor knew that course of treatment was plainly

inadequate such conduct would violate clearly established law).   It is also beyond

dispute that treatment cannot be constitutionally delayed for non-medical reasons.

*Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993) citing *Monmouth County*, 834 F.2d at

346.   For budgetary reasons the defendants refused to administer anti-viral

medication until his condition deteriorated to cirrhosis. This was a blatant disregard

for inmate health and safety as clearly established in *Farmer* and its progeny.

*Taylor v. Barkes*, 135 S.Ct. 2042 (2015), upon which the defendants rely, is

inapposite.   Neither of the defendants before the Court had personally interacted with

the plaintiff or even knew of his mental illness. *Taylor*, 135 S.Ct. at 2043.  In this case,

all the moving defendants have played an active role in denying plaintiff treatment as

they crafted, implemented and enforced the hepatitis C protocol and knew that its

enforcement would cause the plaintiff harm.

The "right" at issue in *Taylor* was characterized by the Court as "an incarcerated

person's right to the proper implementation of adequate suicide prevention

protocols." *Id* at 2044.  The Court found that the contours of that right had not been

clearly defined in caselaw. *Id.* at 2044-45.  Contrary to *Taylor*, and as clearly established

in the cases cited *supra.*, an inmate 1) cannot be refused treatment that would cure a

serious illness where denial of treatment would cause undue suffering or deterioration

in the inmate's health, or 2) cannot have that treatment delayed for non-medical

reasons. *Chimenti v. Pennsylvania Department of Corrections*, 2017 WL 3394605 *9-10

(E.D.Pa. 2017) (contours of right to Hepatitis C treatment clearly established where

prison officials know that treatment that would cure the disease has become the

standard of care).

There need not be a case holding that a plaintiff is entitled to a particular

medical remedy for the right at issue to be clearly established.  *Hope*, 536 U.S. at 740-

41.  That approach confuses the constitutional <u>right</u> at play with the <u>remedy</u> that

would vindicate that right.  *Hinjosa v. Livingston*, 807 F.3d 657, 671 (5th Cir. 2015).[3]

The defendants have cited no precedent from the Supreme Court or any United

---

[3] In *Hinjosa* inmates alleged that prison conditions violated the Eighth Amendment due to the extreme heat in their cells during the summer months and the failure to provide air conditioning. The Fifth Circuit rejected the defendants' qualified immunity claim, holding that the right at issue was not the right to air conditioning but rather the right to be free from exposure to extreme heat without remedial measures.

States Court of Appeals holding that for a right to be "clearly established" the specific

remedy requested by the plaintiff must have been held to be constitutionally required.[4]

Moreover, the deliberate indifference standard itself vitiates defendants'

qualified immunity defense as it is a form of intentional wrongdoing, and is therefore

by definition unreasonable. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir.

2001). *Anderson* 483 U.S. at 640 (contours of the right must be "sufficiently clear" so

that a "*reasonable official* would have understood that what he is doing violates that

right.") (emphasis added).

### e.  Plaintiff Has Alleged Sufficient Personal Involvement

To survive a motion to dismiss, a plaintiff need only allege "enough facts to

state a claim that is plausible on its face." *Renfro v. Unisys Corp.* 671 F.3d 314, 321 (3d

Cir. 2011). When determining such a motion, a court must accept the complaint's

allegations as true. *Langford v. City of Atlantic City*, 235 F.3d. 845, 847 (3d Cir. 2000).

---

[4] Defendants cite two trial level hepatitis C cases from outside this Circuit, *Bernier v. Trump*, 2017 WL 1048053 (D.D.C. 2017) and *Cunningham v. Sessions*, 2017 WL 2377838 (D.S.C. 2017) where the *pro se* inmate's claims for money damages against federal prison officials were dismissed on qualified immunity grounds. *Cunningham* contains virtually no discussion of the issue. In *Bernier,* the court characterized the "right" as the right not to be denied treatment solely on the basis of the inmate's APRI score. *Id.* at *6. The case contains no discussion of the clearly established right recognized in *Farmer, Palakovic, Spruill,* and *Natale* not to be denied treatment where such denial would place the inmate's future health at risk, or to have treatment delayed for non-medical reasons. The remaining lower court cases cited by the Defendants regarding hepatitis C treatment have been distinguished in this Court decision granting preliminary injunctive relief. *Abu-Jamal v. Wetzel*, 16 Civ. 2000, Doc. 23, p. 35-39. The defendants do not cite *Chimenti v. Pennsylvania Department of Corrections*, 2017 WL 3394605 (E.D.Pa. 2017) where the court rejected a motion to dismiss based on qualified immunity holding that the right to hepatitis C treatment became clearly established in 2014 when prison officials became aware that treatment would cure the disease.

Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence in violations of a plaintiff's rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). In addition, as 42 U.S.C. § 1983 is grounded in tort law, the principles of joint and several liability apply. *Niblack v. Murray*, 2016 WL 4086775 (D.N.J. 2016).

### John Kerestes (Counts I, II, II, VII) and Theresa DelBalso (Counts I and VII)[5]

As superintendent of SCI Mahanoy, defendant Kerestes was responsible for the well-being of all prisoners there. He also had the authority to approve visits when prisoners were in an outside hospital. Doc. 245 ¶ 6. The hepatitis C protocol was delivered to defendant Kerestes and enforced by him and other defendants even though they knew that the delay in treatment for plaintiff lacked medical justification. Doc. 245, ¶¶ 53-57.

Knowledge that an inmate is suffering from a serious medical condition coupled with a refusal to provide adequate medical treatment constitutes a violation of the Eighth Amendment. *Spruil v. Gillis*, 372 F.3d at 235. In March 2015, defendant Kerestes was informed by another prisoner that Mr. Abu-Jamal was seriously ill. Yet he took no action. Doc. 245, ¶¶ 76-77. Thereafter, Mr. Abu-Jamal lost consciousness and had to be hospitalized due to a severe episode of hyperglycemia. Doc. 245, ¶78.

---

[5] The Counts listed refer only to those counts the defendant has moved to dismiss not all the counts in which they are named.

Defendant Kerestes upheld the denial of plaintiff's grievance seeking medical care. Doc. 245 ¶¶ 94-95. *Fogle v. Cumberland Cty. Prison*, No. 1:15-CV-01608, 2015 WL 8732064, at *5 (M.D.Pa. Nov. 2, 2015) (holding that denial of a grievance of ongoing harm constitutes personal involvement).

Defendant DelBalso, as the successor to defendant Kerestes, is included in her official capacity for injunctive relief, not money damages, based on her responsibility for the health and welfare of those incarcerated at the prison and her authority to enforce orders of this Court.

### John Wetzel (Counts I and II)

Defendant DOC Secretary John Wetzel approved the policy of not providing *any* treatment to prisoners with hepatitis C between December 2013 and November 2015 despite there being a safe and effective cure. Doc. 245, ¶¶ 48-49. Subsequently, defendant Wetzel helped craft and approved the DOC's hepatitis C protocol. That policy denied treatment to all except those patients with decompensated cirrhosis and esophageal varices. Doc. 245, ¶¶ 50-52. Defendant Wetzel knew that this policy had no medical justification and fell below the standard of care for treating hepatitis C. He also knew that refusing anti-viral treatment would cause harm to the plaintiff's health. Doc. 245, ¶¶ 53-59, 135-140. The protocol is enforced with the approval of defendant Wetzel.  Doc. 245, ¶¶ 7, 58, 149-50.

Policymakers, like Secretary Wetzel are liable under section 1983 if they act "with deliberate indifference to the consequences, [he] established and maintained a

policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center,* 372 F.3d 572, 586 (3d Cir. 2004). He is sufficiently alleged to have done so here.

### Christopher Oppman (Count I) and Joseph Silva (Count I)

During the relevant period for this litigation defendant Oppman was the Director of the DOC's BHCS. That Bureau is responsible for supervising and monitoring the delivery of health care to those prisoners in its custody. Doc. 245, ¶ 10. Defendant Oppman approved and implemented the policy of non-treatment of hepatitis C between December 2013 and November 2015 and the subsequent policy that denied treatment to all but those suffering from decompensated cirrhosis and esophageal varices. Doc. 245, ¶¶ 48-52, 54-57. These allegations demonstrate sufficient personal involvement for section 1983 liability. *A.M. ex rel J.M.K.,* 372 F.3d at 586.

Defendant Silva replaced Oppman as the Director of the DOC's BHCS, and is sued in his official capacity for injunctive relief.

### Hepatitis C Committee (*Abu-Jamal v. Wetzel* case)

Individuals on the Hepatitis C Committee determine which patients receive hepatitis C treatment. They are being sued in their official capacity and clearly have sufficient personal involvement to enforce this Court's orders. The Assistant Medical Director and Infection Control Coordinator are on the Hepatitis C Treatment

Committee and as such are responsible for implementing the DOC's hepatitis C treatment protocol. 16-Civ. 2000, Doc. 1, ¶¶ 7-8, 37-39, 41. In their role on the Committee they denied Mr. Abu-Jamal hepatitis C treatment. Doc. 1, ¶¶ 103-04.

**John Steinhart**

Defendant Steinhart is the Corrections Health Care Administrator at SCI Mahanoy and as such is "responsible for overseeing delivery of medical services" to all prisoners at SCI Mahanoy. Doc. 245, ¶ 16. In that position he adopted, implemented, and enforced the policy of denying hepatitis C treatment to plaintiff knowing that the policy had no medical justification and caused serious harm. Doc. 245, ¶ 56, 58.

Defendant Steinhart was aware of but failed to investigate the role of Mr. Abu-Jamal's hepatitis C in his deteriorating health condition. Doc. 245, ¶¶ 83-85, 86-91, 97-98, 114-116, 118-121.   Steinhart himself denied plaintiff's grievance seeking adequate medical care.  Doc. 245, ¶¶ 92-93.  At a minimum, defendant Steinhart has "acquiesced" in the decision to deny plaintiff adequate medical treatment, *Rode*, 845 F.2d at 1207, and is liable as a joint tortfeasor.  *Niblack v. Murray*, 2016 WL 4086775 (D.N.J. 2016).

### f.  Plaintiff's Claim for Injunctive Relief Is Not Moot

An action for an injunction does not become moot merely because the conduct complained of has terminated if there is a possibility of recurrence.  Otherwise the defendant "would be free to return to its old ways."  *Alle v. Mendrano*, 416 U.S. 802, 810-11 (1974).  Defendants bear a "heavy burden" of showing that they will not revive their challenged conduct.  "Mere disclaimers are not satisfactory."  *U.S. v. WT Grant Co.* 345 U.S. 629, 633 (1953).  Defendants have not met that burden here.  While treatment has commenced it has not been finally determined that plaintiff has achieved SVR.  In addition, plaintiff continues to suffer from the disease's complications.   As there is the potential for additional applications for injunctive relief the issue is not moot.[6]

---

[6] This issue is also beyond the scope of the pleadings See Point I *supra*.

**Conclusion**

For the foregoing reasons, this Court should deny the DOC defendants'

motion to dismiss, or in the alternative, for summary judgment.

Respectfully submitted,

_/s/ Robert J. Boyle_
Robert J. Boyle
277 Broadway
Suite 1501
New York, N.Y. 10007
(212) 431-0229
Rjboyle55@gmail.com
NYS ID# 1772094
_Pro hac vice_

_/s/ Bret D. Grote_
Bret D. Grote
PA I.D. No. 317273
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA  15221
Telephone:  (412) 654-9070
bretgrote@abolitionistlawcenter.org

_Counsel for Plaintiff_

# CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that this brief complies with Local Rule 7.8(b)(2) as it contains 4,786 words, excluding the title page, table of authorities and table of contents.

*s/ Bret D. Grote*
Bret D. Grote
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA  15221

October 9, 2017

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served a copy of this Brief in Opposition to DOC defendants' Motion to Dismiss upon each defendant in the following manner:

<u>Service Via ECF:</u>

For Defendants Wetzel, Noel, Silva, BHCS
Medical Director, BHCS Infection Control Coordinator,
Kerestes, DelBalso, Silva, Oppman, DOC, Steinhart:
Maria Macus, Esquire
Laura Neal, Esquire
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050
mmacus@pa.gov
lneal@pa.gov

For Defendants Correct Care Solutions, CCS representative,
Treating Physician, SCI Mahanoy, Khanum, Lisak, and Saxon:
Samuel H. Foreman, Esquire
Caitlin Goodrich, Esquire
sforeman@wglaw.com
cgoodrich@wglaw.com

*s/ Bret D. Grote*
Bret D. Grote
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA  15221

Dated: October 9, 2017