**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2296
_____

MUMIA ABU-JAMAL

v.

JOHN KERESTES, Former Superintendent State Correctional Institution Mahanoy;
THERESA DELBALSO, Superintendent State Correctional Institution Mahanoy;
JOSEPH SILVA, DOC Director of Bureau of Health Care Services;
PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
JOHN WETZEL, Secretary of Pennsylvania Department of Corrections;
DR. PAUL NOEL, Director of Clinical Service;
DR. JAY COWAN, Correct Care Solutions;
CHRISTOPHER OPPMAN, DOC Director of Bureau of Health Care Services;
DR. JOHN LISIAK, SCI MAHANOY;
DR. SHAISTA KHANUM, SCI MAHANOY;
SCOTT SAXON, Physician's Assistant, SCI Mahanoy;
JOHN STEINHART, SCI MAHANOY, Chief Health Care Administrator

(District Court  No. 3-15-cv-00967)

MUMIA ABU-JAMAL

v.

JOHN WETZEL, Secretary of Pennsylvania Department of Corrections;
DR. PAUL NOEL, Director of Clinical Service;
BUREAU OF HEALTH CARE SERVICES ASSISTANT MEDICAL DIRECTOR;
BUREAU OF HEALTH CARE SERVICES INFECTION CONTROL
COORDINATOR; CORRECT CARE SOLUTIONS REPRESENTATIVE ON THE
HEPATITIS TREATMENT COMMITTEE; CORRECT CARE SOLUTIONS; JOSEPH
SILVA, DOC DIRECTOR OF BUREAU OF HEALTH CARE SERVICES;
TREATING PHYSICIAN SCI MAHANOY

(District Court No. 3-16-cv-02000)

John Wetzel, Paul Noel, Christopher Oppman, Joseph Silva, John Kerestes, Theresa DelBalso, John Steinhart, Bureau of Healthcare Services Assistant Medical Director, Bureau of Healthcare Services Infection Control Coordinator,
Appellants

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-15-cv-00967 & 3-16-cv-02000)
District Judge: Hon. Robert D. Mariani

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 12, 2019

_____

Before: SHWARTZ, KRAUSE, and FUENTES, Circuit Judges.

(Filed: July 19, 2019)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

John Kerestes, Theresa DelBalso, Joseph Silva, John Wetzel, Dr. Paul Noel, Christopher Oppman, John Steinhart, the Bureau of Health Care Services Assistant Medical Director, and the Bureau of Health Care Service Infection Control Coordinator (collectively, the "Department Defendants") appeal the District Court's order (1) denying their motion to dismiss Plaintiff Mumia Abu-Jamal's Fourth Amended Complaint ("FAC"), (2) declining to convert the motion to dismiss to a motion for summary

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

judgment, and (3) declining to consider material beyond the pleadings. We will dismiss the appeal of the orders declining both to convert the motion and to consider factual material beyond the pleadings for lack of appellate jurisdiction, but affirm the order denying the Department Defendants' motion to dismiss based on qualified immunity.

I

A[1]

1

Hepatitis C is a virus that affects liver cells. Individuals infected with Hepatitis C often develop chronic Hepatitis C, resulting in progressive liver inflammation and fibrosis (scarring) or cirrhosis (extreme scarring). These conditions affect liver function, and patients with chronic Hepatitis C suffer from anemia, diabetes, and rashes.

In 2013, new antiviral drugs, Harvoni and Sovaldi, were introduced to treat Hepatitis C. They have a ninety to ninety-five percent success rate, and the American Association for the Study of Liver Diseases and Center for Disease Control recommend that "everyone with chronic [H]epatitis C be treated with those anti-viral drugs irrespective of disease stage." JA 3318.

The Pennsylvania Department of Corrections and Defendants Wetzel, Oppman, Noel, Kerestes, Steinhart, and Cowan adopted a new Hepatitis C treatment protocol in response to the new antiviral drugs. Under the policy, "only inmates with decompensated cirrhosis with bleeding are authorized to receive the anti-viral drugs." JA 3320. The

---

[1] The facts described herein are drawn from the FAC, the operative complaint on appeal.

Hepatitis C Committee recommends whether an inmate with Hepatitis C will receive the antiviral treatment.

2

Abu-Jamal has been an inmate in Pennsylvania State Correctional Institute Mahoney for years. In 2012, Abu-Jamal tested positive for the Hepatitis C antibody. He developed a skin rash and increasing glucose levels, indicative of hyperglycemia. In March 2015, Abu-Jamal was rushed to the hospital after losing consciousness from extremely high glucose levels causing diabetic shock. Abu-Jamal's discharge papers indicated a "guarded" prognosis and medical issues of "diabetes, new onset, encephalopathy secondary to hyperglycemia, dehydration, acute kidney injury, hyponatremia, hypokalemia, asymptomatic gallstones, skin rash, anemia and a history of [H]epatitis C." JA 3324-25.

In May 2015, Abu-Jamal was again taken to the hospital. He was denied all family and counsel visitation during that time. His blood work in the hospital indicated anemia, but the cause of the anemia and his skin rash was undetermined. Although no Hepatitis C work-up was performed, a scan revealed "irregularities in the architecture of plaintiff's liver, a sign of cirrhosis," and his discharge report noted that he "might be a suitable candidate for [H]epatitis C treatment." JA 3330.

Abu-Jamal initially saw some relief, but his skin condition worsened. He requested blood work to determine the cause of his condition and submitted a report from a physician who had visited him and who determined that "the skin condition was an extrahepatic manifestation of [H]epatitis C." JA 3332. The blood work revealed a viral

load indicating that Abu-Jamal has chronic and active Hepatitis C, with more than a 50% chance Abu-Jamal has cirrhosis and liver damage.

Abu-Jamal repeatedly asked that he be treated with Harvoni or Sovaldi. The Hepatitis C Committee determined that Abu-Jamal should not be treated with the antiviral medications. Abu-Jamal alleges that "[t]he sole basis for refusing to provide the anti-viral drugs to [Abu-Jamal] is monetary cost[,]" and "[t]here is no medical justification for" this refusal. JA 3338.

### B

In May 2015, Abu-Jamal filed suit in the Middle District of Pennsylvania, alleging constitutional claims against several defendants. Amended pleadings followed, adding new causes of action and defendants. Abu-Jamal also filed a motion for a preliminary injunction, which the District Court granted, directing the Department Defendants to treat Abu-Jamal with the antiviral drugs. See Abu-Jamal v. Wetzel, No. 3:16-CV-2000, 2017 WL 34700, at *20 (M.D. Pa. Jan. 3, 2017).

Abu-Jamal filed the FAC in August 2017, alleging, among other claims, deprivation of his Eighth Amendment right to medical care for Hepatitis C (Count I), his skin condition (Count II), and hyperglycemia (Count III), and violations of his First Amendment right of association (Count VII). The Department Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), or in the alternative for summary judgment based on the factual record developed at the preliminary injunction hearing.

The District Court granted in part and denied in part the Department Defendants' motion. See generally Abu-Jamal v. Kerestes, No. 3:15-CV-967, 2018 WL 2166052

(M.D. Pa. May 10, 2018).  First, the Court denied the Department Defendants' request to convert their motion to dismiss to a motion for summary judgment because they failed to include a statement of undisputed material facts as required by Local Rule 56.1.[2]  Id. at *14.  Second, the Court denied their motion to dismiss Abu-Jamal's First Amendment claim based upon an alleged failure to comply with the Prison Litigation Reform Act's ("PLRA") exhaustion requirement, holding that a determination as to whether Abu-Jamal exhausted this claim required examination of facts beyond the pleadings and could not be resolved on a motion to dismiss.  Id. at *15-16.  Third, the Court held that the Department Defendants were not entitled to qualified immunity on Abu-Jamal's Eighth Amendment claims because the pleadings alleged that the Department Defendants "violated a clearly established right by creating and/or enforcing a policy that denied necessary medical treatment to a suffering inmate for non-medical reasons."  Id. at *19.  The Department Defendants appeal.

II[3]

A

The Department Defendants argue that the District Court erred in declining to convert their motion to dismiss to a motion for summary judgment and in not considering facts beyond the pleadings.

---

[2] The Local Rules provide that "[a] motion for summary judgment filed pursuant to [Federal Rule of Civil Procedure 56], shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. Pa. Civ. R. 56.1.

[3] The District Court had jurisdiction under 28 U.S.C. § 1331.

Our jurisdiction is limited to review of final orders, 28 U.S.C. § 1291, and "collateral orders," which "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred." Johnson v. Jones, 515 U.S. 304, 310-11 (1995) (citation omitted). We may also review orders where a disposition is "fundamental to the further conduct of the case." Gillette v. Prosper, 858 F.3d 833, 840 (3d Cir. 2017) (quoting Gillespie v. U.S. Steel Corp., 379 U.S. 148, 153 (1964)).

The District Court's decision to decline to convert the motion to dismiss to a motion for summary judgment based on the Department Defendants' failure to comply with Local Rule 56.1 is a procedural decision that does not constitute a final or collateral order.[4]  The Court's order does not address the merits of summary judgment or preclude the Department Defendants from bringing a future summary judgment motion that satisfies Local Rule 56.1.

---

[4] The Department Defendants assert that the conversion is inextricably intertwined with the questions of qualified immunity and exhaustion because each turns on facts within their purported summary judgment record. Courts, however, may consider qualified immunity and exhaustion questions based upon the pleadings. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 673 (2009) (assessing the sufficiency of the pleadings under Rule 8 to determine whether qualified immunity was appropriate). Here, the District Court properly assessed the sufficiency of the factual allegations in the pleadings at the Rule 12(b)(6) stage to determine whether dismissal was appropriate. If the Department Defendants renew their summary judgment motion, then the Court will review the record to determine whether there are undisputed material facts that entitle the Department Defendants to relief on either of these defenses.

Accordingly, we will dismiss the Department Defendants' appeal in part for lack of jurisdiction.[5]

B

We also lack jurisdiction to consider the Department Defendants' appeal of the District Court's order denying their motion to dismiss Abu-Jamal's First Amendment association claim for failure to exhaust administrative remedies.[6]

The District Court determined that, although Abu-Jamal never exhausted the grievance procedures for this claim, his claim should not be dismissed for failure to exhaust. While administrative exhaustion can be decided based upon the pleadings, see, e.g., Ghana v. Holland, 226 F.3d 175, 180-81 (3d Cir. 2000), a court may conclude that facts are needed to determine whether administrative remedies were available, see 42 U.S.C. § 1997e(a); Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002) (holding that, without discovery, there was insufficient evidence to determine whether plaintiff exhausted available administrative remedies and that available remedies must be "capable

---

[5] Moreover, even assuming we had jurisdiction to review the District Court's decision not to covert the Department Defendants' motion to one for summary judgment, we review "a district court's application and interpretation of its own local rules . . . for abuse of discretion." Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604, 613 (3d Cir. 2018). Here, the District Court's explanation for requiring a Rule 56.1-compliant statement of undisputed facts—i.e., that without the statement the Court was "at a loss" as to what facts the Department Defendants deemed disputed, JA 37—was reasonable and did not constitute an abuse of discretion. See id. at 613-14.

[6] Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Such failure to exhaust is an affirmative defense for which the defendant bears the burden of proof. Small v. Camden County, 728 F.3d 265, 268 (3d Cir. 2013).

of use" or "at hand" (citation omitted)).  Because the Court did not adjudicate the exhaustion issue, its order is not final.  See <u>M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark</u>, 344 F.3d 335, 343 (3d Cir. 2003) ("The denial of a motion to dismiss on the grounds of failure to exhaust administrative remedies is not, by any definition, a final judgment that ends the litigation on the merits.").  Moreover, the order is not a collateral order warranting review, as the Department Defendants "are free to raise the issue again in a properly filed motion for summary judgment," <u>Abu-Jamal</u>, 2018 WL 2166052, at *16, and their inability to obtain immediate review of the current order "[will not] cause significant harm," <u>Johnson</u>, 515 U.S. at 311.

Accordingly, we will dismiss the Department Defendants' appeal of the order denying their motion to dismiss Abu-Jamal's First Amendment claim for failure to exhaust for lack of appellate jurisdiction.

C

We next consider whether the Department Defendants were entitled to qualified immunity for Abu-Jamal's Eighth Amendment claims.[7]  Qualified immunity shields government officials from civil liability on such claims "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To assess this defense, we ask: "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation."  Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).  "To be clearly established, the very action in question need not have

---

[7] "[A] district court order denying a motion to dismiss based on qualified immunity is appealable under the collateral order doctrine," and "[w]e exercise de novo review . . . as it involves a pure question of law."  George v. Rehiel, 738 F.3d 562, 571 (3d Cir. 2013) (citation omitted); see also Iqbal, 556 U.S. at 672 ("[A] district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of § 1291.").  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (internal quotation mark and citation omitted).  We disregard "a pleading's legal conclusions" but "assume all remaining factual allegations to be true" and construe them in the light most favorable to the plaintiff.  Connelly v. Lane Constr. Corp., 809 F.3d 780, 790 (3d Cir. 2016).  In addition to the factual allegations in the complaint, we may consider "undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

previously been held unlawful. Rather, the contours of the right must be sufficiently clear such that the unlawfulness of the action is apparent in light of pre-existing law." Dougherty v. Sch. Dist. of Phila., 772 F.3d 979, 993 (3d Cir. 2014) (internal quotation marks and citations omitted).

An inmate's Eighth Amendment rights are violated where a prison official acts (1) deliberately indifferent to (2) an inmate's serious medical needs. Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (describing two-part standard established in Estelle v. Gamble, 429 U.S. 97 (1976)). While "mere disagreement as to the proper medical treatment [does not] support a claim of an [E]ighth [A]mendment violation," a prison official has acted deliberately indifferent if he delays necessary medical treatment for non-medical reasons, id., opts for "an easier and less efficacious treatment of the inmate's condition," id. at 347 (internal quotation marks omitted), or "prevent[s] an inmate from receiving recommended treatment for serious medical needs," id.

At the time of the relevant events, it was clearly established that denying particular treatment to an inmate who indisputably warranted that treatment for nonmedical reasons would violate the Eighth Amendment. See id. at 346-47. Despite the Department Defendants' framing, Abu-Jamal's complaint does not rest on the appropriateness of the policy itself or a general right to be treated with the new antiviral drugs. Rather, Abu-Jamal pleads that he had chronic Hepatitis C and cirrhosis, his medical condition was worsening, he was a candidate for the antiviral drugs, there was consensus among the medical community that "everyone with chronic [H]epatitis C be treated with those anti-

viral drugs irrespective of disease stage," JA 3318, and despite all of this, the Department Defendants denied him antiviral drug treatment for purely cost and non-medical reasons.[8]

Because Abu-Jamal alleged that he has a serious medical condition and was denied appropriate treatment for a nonmedical reason, the District Court properly held that the FAC contained sufficient allegations to conclude that the Department Defendants were deliberately indifferent to Abu-Jamal's serious medical needs in violation of his clearly established Eighth Amendment right to medical care.[9]

For these reasons, we will affirm the District Court's order denying the motion to dismiss based on qualified immunity.

III

For the foregoing reasons, we will dismiss in part and affirm in part.

---

[8] While we are obligated to define the clearly established right with specificity for the purposes of qualified immunity, our analysis here need not be tethered to the propriety of the Hepatitis C policy because Abu-Jamal's claim is predicated on the allegation that he was denied treatment for nonmedical reasons.

[9] The Department Defendants argue that there was not consensus on treatment during part of the relevant period and that their use of a "treatment protocol" to prioritize recipients of the anti-viral drug based on the severity of their condition was not violative of the Eighth Amendment given the "vast population of Hepatitis C patients" and the absence of "the infrastructure . . . to treat all patients immediately." Appellants' Br. at 35, 42. Our ruling here should not be read to rule out the possibility that the Department Defendants may, at a future stage of the litigation, be able to establish either a lack of medical consensus at relevant points as to the appropriate procedures surrounding Hepatitis C treatment or that there were "[]medical reasons" for adherence to the protocol, e.g., that prioritization was necessary given a limited supply of the anti-viral drugs. Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 346. However, as we now address qualified immunity only in the context of a motion to dismiss, we are bound by the allegations in the complaint and leave the factual basis for the denial of treatment to be developed on remand.