# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MUMIA ABU-JAMAL,

Plaintiff,

v.

SUPERINTENDENT JOHN KERESTES, ET AL.

Defendants

Civil Action No. 3:15-CV-0967

Judge Mariani

## DOC DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

Governor's Office of General Counsel,

By:   /s/ Vincent R. Mazeski
      Vincent R. Mazeski
      Assistant Counsel
      Attorney I.D. No. PA73795
      Pennsylvania Department of Corrections
      Office of Chief Counsel
      1920 Technology Parkway
      Mechanicsburg, PA  17050
      (717) 728-7763
      Fax No.:  (717) 728-0312
      Email: vmazeski@pa.gov

Dated: January 30, 2020

## TABLE OF CONTENTS

Table of Authorities....................................................................................... iv

Statement of the Case ................................................................................... 1

Questions Presented....................................................................................... 15

Argument......................................................................................................... 17

    1. Summary judgment should be granted in DOC Defendants' favor
       on Count 1 Deliberate Indifference HCV............................18

       A. Plaintiff failed to properly exhaust available administrative
          remedies by failing to identify DOC Defendants and failing to
          request monetary compensation in his grievance prior to filing
          the relevant pleading................................................18

       B. The claim against DelBalso and Silva was only for injunctive
          relief which has been provided so it is moot.....................20

       C. Kerestes, Wetzel, Oppman and Steinhart lack personal
          involvement.........................................................21

       D. Noel was not deliberately indifferent...........................22

       E. Plaintiff lacks standing to pursue a claim for risk of future
          harm..................................................................26

    2. Summary judgment should be granted in DOC Defendants' favor
       on Count 2 Deliberate Indifference Skin Care.....................26

       A. Plaintiff failed to properly exhaust available administrative
          remedies by failing to identify DOC Defendants and failing to
          request monetary compensation in his grievance prior to filing
          the relevant pleading................................................26

       B. Kerestes and Wetzel lack personal involvement..................27

       C. Noel was not deliberately indifferent............................27

3. Summary judgment should be granted in DOC Defendant's favor on Count 3 Deliberate Indifference Hyperglycemia.......................28

   A. Plaintiff failed to properly exhaust available administrative remedies by failing to identify DOC Defendant and failing to request monetary compensation in his grievance prior to filing the relevant pleading...............................................28

   B. Kerestes lacked personal involvement............................29

4. Summary judgment should be granted in DOC Defendants' favor on Count 5 Medical Malpractice HCV.............................30

   A. Plaintiff is unable to sufficiently prove causation of injury....30

   B. Any personal claim against Noel or Oppman is barred for failing to file a timely certificate of merit against them.........32

   C. Any corporate negligence claim against Noel or Oppman is barred by sovereign immunity.....................................35

5. Summary judgment should be granted in DOC Defendants' favor on Count 6 Medical Malpractice Skin Care..........................36

   A. Plaintiff is unable to sufficiently prove causation of injury....36

   B. Any personal claim against Noel or Oppman is barred for failing to file a timely certificate of merit against them.........37

   C. Any corporate negligence claim against Noel or Oppman is barred by sovereign immunity.....................................37

6. Summary judgment should be granted in DOC Defendants' favor on Count 7 First Amendment Right of Association.................37

   A. Plaintiff failed to properly exhaust available administrative remedies by failing to file a grievance on this issue and pursue to final appeal prior to filing the relevant pleading.....................................................37

B. The request for future visits with counsel and family during any outside hospital stay is too broad under the PLRA..................................................................38

C. Plaintiff is not entitled to the requested injunctive relief where there is no constitutional violation....................39

7. Summary judgment should be granted in DOC Defendants' favor on Count 1 Deliberate Indifference HCV where they are entitled to qualified immunity...................................................39

8. Summary judgment should be granted in DOC Defendants' favor on Plaintiff's request for injunctive relief...........................45

A. The request for treatment of Plaintiff's HCV with DAADs is moot...................................................................45

B. Plaintiff is not entitled to the physician or medical care of his choice...................................................................46

Conclusion......................................................................... 47

# TABLE OF AUTHORITIES

Cases

*Abdul-Akbar v. Watson*, 4 F.3d 195 (3d Cir. 1993) ........................................... 20, 45

*Abu-Jamal v. Wetzel*, 2017 U.S. Dist. LEXIS 368 (M.D. Pa. January 3, 2017) 22, 42

*Albert v. Alter*, 381 A.2d 459 (Pa. Super. 1977) ................................................. 31

*Allah v. Thomas*, 679 Fed. Appx. 216 (3d Cir. 2017) ........................................... 42

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................ 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................... 21

*Atkins v. Parker*, 2019 U.S. Dist. LEXIS 168976
(M.D. Tenn. September 30, 2019) ................................................................... 24, 25

*Baez v. Falor*, 566 Fed. Appx. 155 (3d Cir. 2014) ............................................... 23

*Battle v. Philadelphia Housing Authority*, 594 A.2d 769 (Pa. Super. 1991) .......... 36

*Baze v. Rees*, 553 U.S. 35 (2008) ........................................................................ 26

*Booker v. United States,* 366 Fed. Appx. 425 (3d Cir. 2010) ............................... 33

*Brooks v. Beard*, 167 Fed. Appx. 923 (3d Cir. 2006) ........................................... 29

*Brown v. Blaine*, 833 A.2d 1166 (Pa. Cmwlth. 2003) ........................................... 35

*Brown v. Chambersburg*, 903 F.2d 274 (3d Cir. 1990) ........................................ 23

*Bruton v. Gillis*, 2008 U.S. Dist. LEXIS 76819 (M.D. Pa. September 30, 2008) .. 46

*Buffkin v. Hooks*, 2019 U.S. Dist. LEXIS 45790 (M.D. N.C. March 20, 2019) .... 24

*Chimenti v. Wetzel*, 2018 U.S. Dist. LEXIS 115961 (E.D. Pa. July 12, 2018) ...... 42

*City of Escondido v. Emmons*, 139 S. Ct. 500 (2019) ........................................... 40

*Colon-Montanez v. Pennsylvania Healthcare Serv. Staffs*, 530 Fed. Appx. 115
(3d Cir. 2013) ................................................................................................... 40

*Cunningham v. Sessions*, 2017 U.S. Dist. LEXIS 82910 (D.S.C. May 31, 2017).. 40

*Curtician v. Noel*, 2018 U.S. Dist. LEXIS 194275 (November 13, 2018) ............ 43

*Estelle v. Gamble*, 429 U.S. 97 (1976)................................................................ 21

*Evancho v. Fisher*, 423 F.3d 347 (3d Cir. 2005)................................................. 21

*Farmer v. Brennan*, 511 U.S. 825 (1994)...............................................22, 25

*Freed v. Geisinger Med. Ctr.*, 910 A.2d 68 (Pa. Super. 2006) .............................. 30

*Funk v. Stanish*, 2011 U.S. Dist. LEXIS 35277 (M.D. Pa. March 31, 2011) ......... 46

*Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3d Cir. 1991)............................... 34

*Green v. Fisher*, 2014 U.S. Dist. LEXIS 1764 (M.D. Pa. January 8, 2014)........... 46

*Harris v. Eckard*, 2018 U.S. Dist. LEXIS 17007
(M.D. Pa. February 2, 2018)..............................................................20, 27, 29

*Hartman v. Low Sec. Corr. Inst. Allenwood*, 2005 U.S. Dist. LEXIS 40766
(M.D. Pa. May 27, 2005)........................................................................ 33

*Henderson v. Tanner*, 2019 U.S. Dist. LEXIS 28115
(M.D. La. February 22, 2019) ................................................................. 44

*Hodge v. United States DOJ*, 372 Fed. Appx. 264 (3d Cir. 2010).......................... 41

*Hopper v. Barr*, 2019 U.S. Dist. LEXIS 141217 (D.S.C. July 31, 2019).............. 45

*Iseley v. Dragovich*, 90 Fed.Appx. 577 (3d Cir. 2004)........................................... 41

*Jackson v. Danberg*, 656 F.3d 157 (3d Cir. 2011).................................................. 26

*Jetter v. Beard*, 130 Fed. Appx. 523 (3d Cir. 2005)................................................ 24

*Jones v. Bock*, 549 U.S. 199 (2007) ................................................................18, 19

*Kimball v. Wetzel*, 2019 U.S. Dist. LEXIS 43143 (M.D. Pa. March 18, 2019)...... 43

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993)...................................................... 34

*Kravinsky v. Glover*, 396 A.2d 1349 (Pa. Super. 1979)........................................... 31

*La Frankie v. Miklich*, 618 A.2d 1145 (Pa. Cmwlth. 1992) ................................... 35

*Lasko v. Watts*, 373 Fed. Appx. 196 (3d Cir. 2010)................................................ 41

*Little v. Lycoming County*, 912 F. Supp. 809 (M.D. Pa. 1996).............................. 34

*McCrosson v. Philadelphia Rapid Transit Co.*, 129 A. 568 (Pa. 1925) ................ 31

*McElwee Group, LLC v. Mun. Auth. of Elverson*, 476 F.Supp.2d 472
(E.D. Pa. 2007) ........................................................................................................ 33

*Menarde v. Philadelphia Trans. Co.*, 103 A.2d 681 (Pa. 1954) ............................ 31

*Meyer v. Riegel Products Corp.*, 720 F.2d 303 (3d Cir. 1983)............................... 17

*Montanez v. Thompson*, 603 F.3d 243 (3d Cir. 2010)............................................. 39

*Moore v. Luffey*, 767 Fed. Appx. 335 (3d Cir. 2019)............................................. 43

*Moser v. Heistand*, 681 A.2d 1322 (Pa. 1996).................................................. 36, 37

*Moyer v. Ford Motor Co.*, 209 A.2d 43 (Pa. Super.1965)...................................... 31

*Niggel v. Sears, Roebuck & Co.*, 281 A.2d 718 (Pa. Super. 1971)......................... 31

*Para-Professional Law Clinic at SCI-Graterford v. Beard*, 334 F.3d 301
(3d Cir. 2003) .......................................................................................................... 38

*Payne v. Duncan*, 692 Fed. Appx. 680 (3d Cir. 2017)............................... 20, 27, 29

*Pevia v. Wexford Health Source, Inc.*, 2018 U.S. Dist. LEXIS 27366
(D. Md. February 20, 2018)...................................................................................... 44

*Porter v. Nussle*, 534 U.S. 516 (2002) .................................................................. 18

*Richards v. Pigos*, 2013 U.S. Dist. LEXIS 100158 (M.D. Pa. July 18, 2013)......41

*Rieco v. Hebe*, 633 Fed. Appx. 567 (3d Cir. 2015).................................................39

*Riggleman v. Clarke,* 2019 U.S. Dist. LEXIS 70309 (W.D. Va. April 25, 2019)...40

*Rivera v. Josephwicz*, 2017 U.S. Dist. LEXIS 109627
(M.D. Pa. July 13, 2017)..........................................................................20, 27, 29

*Ross v. Blake*, 136 S.Ct. 1850 (2016)...................................................................19

*Roth v. Norfalco*, 651 F.3d 367 (3d Cir. 2011) ....................................................18

*Roy v. Lawson*, 739 Fed. Appx. 266 (5th Cir. 2018)..............................................44

*Shoffner v. Wenerowicz*, 2015 U.S. Dist. LEXIS 90288 (E.D. Pa. July 13, 2015). 26

*Shon v. Karason*, 920 A.2d 1285 (Pa. Super. 2007) ..............................................34

*Smith v. Bolava*, 2015 U.S. Dist. LEXIS 65683 (E.D. Pa. May 20, 2015).............33

*Spiers v. Perry*, 2019 U.S. Dist. LEXIS 94142 (S.D. Miss. June 5, 2019)..........44

*Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004) .....................................18, 22, 27, 30

*Stroud v. Abington Hospital,* 546 F.Supp.2d 238 (E.D. Pa. 2008) ........................33

*Taylor v. Barkes*, 135 S. Ct. 2042 (2015)..............................................................45

*Travillion v. Leon*, 248 Fed. Appx. 353 (3d Cir. 2007) .........................................29

*Turner v. Wetzel*, 2020 U.S. Dist. LEXIS 6321 (M.D. Pa. January 13, 2020) .......44

*Urrutia v. Harrisburg County Police Dept.,* 91 F.3d 451 (3d Cir. 1996)...............34

*Vorbnoff v. Mesta Machine Co.*, 133 A. 256 (Pa. 1926).........................................31

*Williamson v. Corr. Med. Servs.*, 304 Fed. Appx. 36 (3d Cir. 2008) ...............21, 46

*Winslow v. Prison Health Servs., Inc.*, 2010 U.S. Dist. LEXIS 12492
(M.D. Pa. February 12, 2010) ................................................................ 24

*Woodford v. Ngo*, 548 U.S. 81 (2006)........................................................ 18

*Wright v. Sauers*, 729 Fed. Appx. 225 (3d Cir. 2018) ................... 20, 27, 29

Statutes

*1 Pa.C.S. § 2310* ....................................................................................... 35

*18 USCS § 3626* ........................................................................................ 38

*42 Pa.C.S. § 5524* ..................................................................................... 34

*42 Pa.C.S. § 8501* ..................................................................................... 35

*42 Pa.C.S. § 8521* ..................................................................................... 35

*42 Pa.C.S. § 8522* ..................................................................................... 35

*42 Pa.C.S. § 8522(b)* ................................................................................ 35

*42 Pa.C.S. § 8522(b)(2)* ........................................................................... 36

*42 U.S.C. § 1997e(a)* ............................................................................... 18

## STATEMENT OF THE CASE

### A.   Identity of the Parties and Statement of Claim

Plaintiff is Mumia Abu-Jamal, an inmate who is incarcerated within the Pennsylvania Department of Corrections (DOC) at SCI-Mahanoy. *Appendix at 8, Fourth Amended Complaint (15-967) p 2.* The remaining DOC Defendants are Superintendent Kerestes, Secretary Wetzel, Deputy Secretary Oppman, Dr. Noel, Corrections Health Care Administrator Steinhart, Superintendent Delbalso and Director Silva. *Appendix at 8, Fourth Amended Complaint (15-967) pgs 3-6.*

DOC Defendant DOC was dismissed by the Court. *Appendix at 1, Docket No. 15-967 at 273.* DOC Defendants BHCS Assistant Medical Director and Infection Control Coordinator named in the Complaint in No. 16-2000 filed on September 30, 2016 and merged with this action on May 4, 2017 were dismissed when Plaintiff filed his Fourth Amended Complaint on August 23, 2017 which dropped them as DOC Defendants. *Appendix at 6, Complaint (16-2000) pgs 3-4; Appendix at 2, Docket No. 16-2000; Appendix at 1, Docket No. 15-967 at 224; Appendix at 8, Fourth Amended Complaint (15-967) pgs 2-7.*

Plaintiff's complaint stems primarily from medical care concerning hepatitis c, skin rash and hyperglycemia. *Appendix at 8, Fourth Amended Complaint (15-967) pgs 15-32.* Plaintiff also raises a right of association claim. *Appendix at 8,*

*Fourth Amended Complaint (15-967) p 36.* Plaintiff seeks both monetary and injunctive relief. *Appendix at 8, Fourth Amended Complaint (15-967) pgs 36-37.*

The Fourth Amended Complaint is the operative pleading. *Appendix at 1, Docket No. 15-967.* Count 1 alleges Deliberate Indifference relating to treatment for Hepatitis C (HCV) against Kerestes, Wetzel, Oppman, Noel, Steinhart, Delbalso and Silva. *Appendix at 8, Fourth Amended Complaint (15-967) p 33.* Count 2 alleges Deliberate Indifference relating to treatment for Skin Care against Kerestes, Wetzel and Noel. *Appendix at 8, Fourth Amended Complaint (15-967) p 33.* Count 3 alleges Deliberate Indifference relating to treatment for Hyperglycemia against Kerestes. *Appendix at 8, Fourth Amended Complaint (15-967) p 34.*

Count 4 alleges Medical Malpractice relating to treatment for Hyperglycemia. None of the DOC Defendants were sued under this Count. *Appendix at 8, Fourth Amended Complaint (15-967) p 34.* Count 5 alleges Medical Malpractice relating to treatment for HCV against Noel and Oppman. *Appendix at 8, Fourth Amended Complaint (15-967) p 35.* Count 6 alleges Medical Malpractice relating to treatment for Skin Care against Noel and Oppman. *Appendix at 8, Fourth Amended Complaint (15-967) p 35.* Count 7 alleges a violation of the First Amendment Right of Association against Kerestes and Delbalso. *Appendix at 8, Fourth Amended Complaint (15-967) p 36.*

**B.     Relevant Procedural History**

Plaintiff filed grievance 561400 concerning his medical care dated April 11, 2015. *Appendix at 11, Grievance Records p 1.* Plaintiff initiated this action by filing a complaint through counsel while incarcerated on May 18, 2015. *Appendix at 3, Complaint (15-967) p 2.* Plaintiff filed an amended/supplemental complaint on November 24, 2015. *Appendix at 4, Amended Complaint (15-967).*

A certificate of merit was filed on March 8, 2016. *Appendix at 13, Certificate of Merit.* Plaintiff filed grievance 635578 concerning his medical care dated July 16, 2016. *Appendix at 11, Grievance Records p 4.* Plaintiff filed a second amended complaint on August 16, 2016. *Appendix at 5, Second Amended Complaint (15-967).*

Plaintiff filed a complaint in a separate action on September 30, 2016. *Appendix at 6, Complaint (16-2000).* Plaintiff did not sue Noel until this complaint was filed in the second action on September 30, 2016. *Appendix at 3-6, Complaints.* Plaintiff was granted preliminary injunctive relief in this separate action on January 3, 2017. *Appendix at 2, Docket No. 16-2000 at 24.*

Plaintiff filed a third amended complaint on January 17, 2017. *Appendix at 7, Third Amended Complaint (15-967).* Plaintiff's two cases were consolidated on May 4, 2017. *Appendix at 1, Docket No. 15-967 at 224.* Plaintiff filed his Fourth

3

Amended Complaint on August 23, 2017.  *Appendix at 8, Fourth Amended Complaint (15-967)*.  DOC Defendants filed their answer with defenses on June 4, 2018.  DOC Defendants raised affirmative defenses such as failure to exhaust, immunity, sovereign immunity and defenses under the PLRA.  *Appendix at 1, Docket No. 15-967 at 277 pgs 35-37*.

## C.   **Statement of Facts**

The statement of material facts filed concurrently with this brief is incorporated by reference.

The DOC has an Inmate Grievance System, Policy (DC-ADM 804) that provides a three-step process for resolution of inmate grievances:   the initial grievance at the institutional level, an appeal to the Facility Manager (Superintendent) and an appeal for final review to the SOIGA. *Appendix at 9, DC-ADM 804 Grievance Policy*.  DC-ADM 804 provides that the inmate shall identify individuals directly involved in the event.  *Appendix at 9, DC-ADM 804 Grievance Policy p. 1-2 ¶ 12(b)*.  DC-ADM 804 provides that if the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance.  *Appendix at 9, DC-ADM 804 Grievance Policy p. 1-2 ¶ 12(d)*.

While he was at SCI-Mahanoy from 2013 through 2017, Plaintiff filed three grievances concerning Health Care. *Appendix at 10, Grievance History; Appendix*

4

*at 12, Declaration Keri Moore.* Those three grievance were 561400, 635578 and 658976. *Appendix at 10, Grievance History; Appendix at 12, Declaration Keri Moore.* Only grievances 561400 and 635578 were appealed to final review. *Appendix at 10, Grievance History; Appendix at 12, Declaration Keri Moore.*

Grievance 561400 does not request any monetary relief. *Appendix at 11, Grievance Records pgs 1-2.* Grievance 561400 does not name any DOC Defendant by name. *Appendix at 11, Grievance Records pgs 1-2.* Plaintiff did not file a grievance concerning visitation and appeal to final review in 2015. *Appendix at 10, Grievance History.*

Between late 2013 and late 2014, the FDA approved several direct acting anti-viral drugs (DAADs) for persons with HCV. *Appendix at 42, DOC Defendant Noel Declaration.* The DOC issued its Interim Hepatitis C Protocol on November 13, 2015. *Appendix at 14, DOC Interim Hepatitis C Protocol November 2015.* The DOC issued an updated Hepatitis C Protocol on November 7, 2016. *Appendix at 15, DOC Hepatitis C Protocol November 2016.* The Protocols provided that all inmates with HCV will be entered into a Chronic Care Clinic (CCC) and periodically monitored, examined and tested. *Appendix at 14, DOC Interim Hepatitis C Protocol November 2015; Appendix at 15, DOC Hepatitis C Protocol November 2016.* The Protocols prioritized inmates for treatment with DAADs.

*Appendix at 14, DOC Interim Hepatitis C Protocol November 2015; Appendix at 15, DOC Hepatitis C Protocol November 2016.*

Noel developed DOC's Interim Hepatitis C Protocol and the three subsequent updated Hepatitis C Protocols that provided or provide the base guideline for uniform medical treatment of all DOC inmates with HCV. *Appendix at 42, DOC Defendant Noel Declaration.* The DOC's Protocols are all modeled after the policy of the FBOP. They are prioritization protocols that treat the sickest inmates first, based on their medical need. *Appendix at 42, DOC Defendant Noel Declaration.*

The DOC treats all inmates in its custody who have chronic HCV, on an individual basis, and in accordance with the DOC's Hepatitis C Protocol. *Appendix at 42, DOC Defendant Noel Declaration.* None of the protocols preclude any inmate with HCV from receiving treatment. *Appendix at 42, DOC Defendant Noel Declaration.* HCV is a slowly progressing disease that takes 20-40 years to progress to cirrhosis. Not all individuals with HCV will progress to cirrhosis. *Appendix at 42, DOC Defendant Noel Declaration.* It is not medically necessary to treat all inmates with HCV with DAADs right now or in the short term. *Appendix at 42, DOC Defendant Noel Declaration.*

Chronic liver disease from HCV is measured by the degree of fibrosis. *Appendix at 42, DOC Defendant Noel Declaration.* The most common scoring

system to assess fibrosis is the METAVIR score that includes five levels. These levels are as follows: F0 (no fibrosis); F1 (mild fibrosis); F2 (moderate fibrosis); F3 (advanced fibrosis); and F4 (cirrhosis). *Appendix at 42, DOC Defendant Noel Declaration.*

The American Association for the Study of Liver Diseases (AASLD) periodically publishes treatment guidelines for testing, managing and treating HCV. *Appendix at 16, AASLD Guidelines June 2015; Appendix at 17, AASLD Guidelines October 2015; Appendix at 18, AASLD Guidelines April 2016; Appendix at 19, AASLD Guidelines September 2017; Appendix at 20, AASLD Guidelines August 2018.* In June 2015, the AASLD guidelines stated urgent initiation of treatment with DAADs is recommended for some patients, such as those with advanced fibrosis or compensated cirrhosis and that based on available resources, immediate treatment with DAADs should be prioritized for those at high risk of liver related complications. *Appendix at 16, AASLD Guidelines June 2015.* In October 2015, the AASLD guidelines removed prioritization tables but still acknowledged access to DAADs may be an issue so practitioners still need to decide which patients should be treated first. *Appendix at 17, AASLD Guidelines October 2015.* In April 2016, the AASLD guidelines continued to acknowledge access to DAADs may be an issue so practitioners still need to decide which patients should be treated first. *Appendix at 18, AASLD Guidelines April 2016.* In

7

September 2017, the AASLD guidelines acknowledged that previously the infrastructure did not exist to treat all patients immediately with DAADs. *Appendix at 19, AASLD Guidelines September 2017.* In September 2017 and August 2018, the AASLD guidelines continued to acknowledge access to DAADs may be an issue so clinicians still need to decide which patients should be treated first. *Appendix at 19, AASLD Guidelines September 2017.*

In May 2017, the Federal Bureau of Prison (FBOP) had a prioritization policy for treating its inmates with DAADs. *Appendix at 22, FBOP HCV Guidelines May 2017.* In March 2017, the Veterans Affairs (VA) policy stated that patients with F0-F2 have less urgency for treatment in the short term. *Appendix at 23, Veterans Affairs HCV Guidelines March 2017.* In 2016, 22 out of 43 states required a patient to have at least F3 to qualify for treatment with DAADs through Medicaid. *Appendix at 24, Medicaid Access November 2016.* Pennsylvania Medicaid restricted treatment of HCV with DAADs to F3 and above in 2015 and 2016. *Appendix at 27, Dr. Rothstein Expert Report.*

During the relevant time period for this suit, Plaintiff received medical care for his HCV, skin condition and hyperglycemia. *Appendix at 47, Medical Records through December 2015; Appendix at 48, Medical Records through December 2015; Appendix at 49, Medical Records through December 2015; Appendix at 50,*

*Medical Records through December 2015; Appendix at 51, Medical Records Post December 2015 Hearing to June 2016.*

During the relevant time period involving Plaintiff's lawsuit, Noel reviewed referrals and determined whether inmates were to be treated with DAADs. A Hepatitis C specialist then determined which treatment regimen would be provided. *Appendix at 42, DOC Defendant Noel Declaration.* Plaintiff was not a high priority candidate for treatment prior to April 2017 based upon periodic examination, testing and review of his blood test results. *Appendix at 42, DOC Defendant Noel Declaration.*

In December 2015, Noel believed that based on Plaintiff's Halt-C score and other tests that Plaintiff did not have cirrhosis or vast fibrosis. *Appendix at 34, Dr. Noel Testimony p. 121.* In December 2015, Noel agreed with Dr. Cowan that based on Plaintiff's APRI score, Plaintiff was at stage 2 fibrosis. *Appendix at 34, Dr. Noel Testimony p. 123.* Plaintiff's APRI score of .43 did not suggest cirrhosis or even significant fibrosis. *Appendix at 27, Dr. Rothstein Expert Report.*

Dr. Cowan is board certified in Hepatology and has treated inmates with HCV at Rikers Island with DAADs. *Appendix at 35, Dr. Cowan Testimony pgs 197-198.* In December 2015, Dr. Cowan believed that Plaintiff had APRI scores of .423 and .392 based on recent blood work. *Appendix at 35, Dr. Cowan Testimony pgs 209-210.* In December 2015, Dr. Cowan believed Plaintiff was at F2.

*Appendix at 35, Dr. Cowan Testimony p 75.* Plaintiff's APRI score in April 2016 was .410 and Plaintiff presented with no symptoms or objective signs of complications associated with HCV *Appendix at 52, Declaration Dr. Cowan.*

In December 2015, Dr. Harris thought Plaintiff was at approximately stage F2 to F2.5. *Appendix at 36, Dr. Harris Testimony p 22.* Dr. Harris testified that Plaintiff received extensive treatment, the "kitchen sink" for his skin condition. *Appendix at 36, Dr. Harris Testimony p 128.*

In July 2017, DOC received an expert report in another case involving its treatment of inmates with HCV. *Appendix at 31, Dr. Kendig Expert Report (Chimenti Class Action Case).* Dr. Kendig opined that as of July 2017, in the corrections setting, it was the standard of care to prioritize the treatment of inmates starting with those who had a Metavir score of F3 and above. *Appendix at 31, Dr. Kendig Expert Report (Chimenti Class Action Case).* Dr. Kendig opined that DOC did not place inmates with HCV at a substantial and unnecessary risk for severe illness and death. *Appendix at 31, Dr. Kendig Expert Report (Chimenti Class Action Case).*

A CT scan indicated Plaintiff likely has cirrhosis as of April 2015. *Appendix at 27, Dr. Rothstein Expert Report.* Plaintiff was treated with Harvoni from April 6, 2017 to June 28, 2017. *Appendix at 27, Dr. Rothstein Expert Report.* Plaintiff's lab results on September 22, 2017 indicated a sustained viral response (SVR),

indicating he has been cured of HCV. *Appendix at 42, DOC Defendant Noel Declaration; Appendix at 46, Medical Records HCV Post Treatment p 1; Appendix at 27, Dr. Rothstein Expert Report; Appendix at 46, Medical Records HCV Post Treatment.* Plaintiff's labs have remained within normal limits with no evidence of hepatic decompensation. *Appendix at 27, Dr. Rothstein Expert Report.* The CCC note from April 5, 2018 shows significant improvement in the APRI score. *Appendix at 42, DOC Defendant Noel Declaration.* CCC notes show an APRI score of .299 as of April 2018. *Appendix at 46, Medical Records HCV Post Treatment p 8.* CCC notes show an APRI score of .223 as of July 2019. *Appendix at 46, Medical Records HCV Post Treatment p 14.*

The ultrasound from September 7, 2017 showed portal hypertension. *Appendix at 46, Medical Records HCV Post Treatment p 3.* An ultrasound of the liver from March 21, 2019 shows improvement from prior studies from 2017. *Appendix at 42, DOC Defendant Noel Declaration.* The ultrasound from March 21, 2019 showed no frank portal hypertension and improved portal velocity. *Appendix at 46, Medical Records HCV Post Treatment p 4.*

Plaintiff did not suffer any undue medical consequences as a result of DOC's management of his HCV. *Appendix at 27, Dr. Rothstein Expert Report.* Plaintiff has not experienced any serious complications from HCV. *Appendix at 27, Dr. Rothstein Expert Report.* Plaintiff has an excellent prognosis with the

11

levelling of the survival curve to that of the general population. *Appendix at 27, Dr. Rothstein Expert Report; Appendix at 29, Article Journal of Hepatology.*

Plaintiff's skin condition has been treated for several years with multiple modalities. *Appendix at 30, Dr. Peniston Expert Report.* Dr. Schleicher is board certified in Dermatology. *Appendix at 37, Dr. Schleicher Testimony p 59.* Physicians at SCI-Mahanoy asked Dr. Schleicher to examine Plaintiff. *Appendix at 37, Dr. Schleicher Testimony p 62.* Dr. Schleicher examined Plaintiff in February and April of 2015 and made recommendations for treatment. *Appendix at 37, Dr. Schleicher Testimony p 63.* Plaintiff received several different treatments for his skin condition and had continued consultations with Dr. Schleicher. *Appendix at 53, Declaration Dr. Schleicher.* Plaintiff was not completely compliant with his recommended skin care. *Appendix at 54, Declaration DOC Defendant Steinhart.*

Plaintiff suffers from psoriasis. *Appendix at 30, Dr. Peniston Expert Report.* Plaintiff does not suffer from diabetes. *Appendix at 30, Dr. Peniston Expert Report.* There is no connection between Plaintiff's HCV and the anemia episode and his hyperglycemia. *Appendix at 52, Declaration Dr. Cowan.* Plaintiff's skin condition is not an extrahepatic manifestation of his HCV. *Appendix at 52, Declaration Dr. Cowan; Appendix at 53, Declaration Dr. Schleicher.*

12

Dr. Trooskin states that delay caused Plaintiff injury in the form of portal hypertension and is at increased risk of cancer. *Appendix at 32, Dr. Trooskin Expert Report.* Dr. Trooskin did not comment on Plaintiff's 2019 ultrasound which shows no portal hypertension. *Appendix at 32, Dr. Trooskin Expert Report; Appendix at 33, Dr. Trooskin Expert Report Supplement.* Dr. Trooskin did not comment on the Article titled Survival of patients with HCV cirrhosis and sustained virologic response is similar to the general population. *Appendix at 33, Dr. Trooskin Expert Report Supplement.*

Neither Co-Defendants Secretary Wetzel, Deputy Secretary Oppman, Superintendent Kerestes, Superintendent DelBalso, Director Silva or CHCA Steinhart developed the DOC's Interim Hepatitis C Protocol and the subsequent Hepatitis C Protocols with Noel. *Appendix at 42, DOC Defendant Noel Declaration.* Neither Co-Defendants Secretary Wetzel, Deputy Secretary Oppman, Superintendent Kerestes, Superintendent DelBalso, Director Silva or CHCA Steinhart reviewed referrals and determined whether or which inmates were to be treated with DAADs. *Appendix at 42, DOC Defendant Noel Declaration.*

In December 2015, Steinhart testified that he is a licensed R.N. but does not treat inmates. *Appendix at 38, DOC Defendant Steinhart Testimony p 151.* Steinhart does not make any medical decisions. *Appendix at 38, DOC Defendant Steinhart Testimony p 158.*

Plaintiff sued Kerestes due to his role with the grievance process and because he believed inmate Tillery told him of his condition. *Appendix at 44, Plaintiff's Deposition Testimony pgs 43-45.* Inmate Tillery claims he spoke with Kerestes on February 15, 2015 and told him that Plaintiff is sick and needs to go to the hospital. *Appendix at 45, Inmate Tillery's Deposition Testimony pgs 11, 13, 15, 22-23.* Kerestes was not during the relevant time period in 2014-2015 a licensed physician or healthcare professional. *Appendix at 39, DOC Defendant Kerestes Declaration.* Kerestes deferred to medical staff's expertise as to the specifics regarding the provision of medical care to Plaintiff. *Appendix at 39, DOC Defendant Kerestes Declaration.*

DelBalso was not during the relevant time period in 2016-2017 a licensed physician or healthcare professional. *Appendix at 40, DOC Defendant DelBalso Declaration.* DelBalso deferred to medical staff's expertise as to the specifics regarding the provision of medical care to Plaintiff. *Appendix at 40, DOC Defendant DelBalso Declaration.*

Oppman was not during the relevant time period in 2014-2017 a licensed medical professional. *Appendix at 41, DOC Defendant Oppman Declaration.* Oppman deferred to licensed medical professionals expertise as to the specifics regarding the provision of medical care to Plaintiff. *Appendix at 41, DOC Defendant Oppman Declaration.* Oppman had no role in diagnosing, treating,

considering or consulting about treating inmates with HCV or deciding which inmates get treated with DAADs. *Appendix at 41, DOC Defendant Oppman Declaration.*

Plaintiff is serving a life sentence. *Appendix at 43, Captain Sorber Testimony p 182.* Due to his notoriety, Plaintiff requires substantially more security when he is outside the prison. *Appendix at 43, Captain Sorber Testimony pgs 183-185.* One of DOC's concerns is the introduction of contraband. *Appendix at 43, Captain Sorber Testimony p 186.* Plaintiff has access to telephone and visitors at SCI-Mahanoy. *Appendix at 55, Declaration Captain Sorber.*

## QUESTIONS PRESENTED

1. Should summary judgment be granted in DOC Defendants' favor on Count 1 Deliberate Indifference HCV? (where)

A. Plaintiff failed to properly exhaust available administrative remedies by failing to identify DOC Defendants and failing to request monetary compensation in his grievance prior to filing the relevant pleading;

B. The claim against DelBalso and Silva was only for injunctive relief which has been provided so it is moot;

C. Kerestes, Wetzel, Oppman and Steinhart lack personal involvement;

D. Noel was not deliberately indifferent.

E. Plaintiff lacks standing to pursue a claim for risk of future harm.

2. Should summary judgment be granted in DOC Defendants' favor on Count 2 Deliberate Indifference Skin Care? (where)

A. Plaintiff failed to properly exhaust available administrative remedies by failing to identify DOC Defendants and failing to request monetary compensation in his grievance prior to filing the relevant pleading;

B. Kerestes and Wetzel lack personal involvement;

C. Noel was not deliberately indifferent.

3. Should summary judgment be granted in DOC Defendant's favor on Count 3 Deliberate Indifference Hyperglycemia? (where)

A. Plaintiff failed to properly exhaust available administrative remedies by failing to identify DOC Defendant and failing to request monetary compensation in his grievance prior to filing the relevant pleading;

B. Kerestes lacked personal involvement.

4. Should summary judgment be granted in DOC Defendants' favor on Count 5 Medical Malpractice HCV? (where)

A. Plaintiff is unable to sufficiently prove causation of injury;

B. Any personal claim against Noel or Oppman is barred for failing to file a timely certificate of merit against them;

C. Any corporate negligence claim against Noel or Oppman is barred by sovereign immunity.

5. Should summary judgment be granted in DOC Defendants' favor on Count 6 Medical Malpractice Skin Care? (where)

A. Plaintiff is unable to sufficiently prove causation of injury;

B. Any personal claim against Noel or Oppman is barred for failing to file a timely certificate of merit against them;

C. Any corporate negligence claim against Noel or Oppman is barred by sovereign immunity.

6. Should summary judgment be granted in DOC Defendants' favor on

Count 7 First Amendment Right of Association? (where)

A. Plaintiff failed to properly exhaust available administrative remedies by failing to file a grievance on this issue and pursue to final appeal prior to filing the relevant pleading;

B. The request for future visits with counsel and family during any outside hospital stay is too broad under the PLRA.

C. Plaintiff is not entitled to the requested injunctive relief where there is no constitutional violation.

7. Should summary judgment be granted in DOC Defendants' favor on Count 1 Deliberate Indifference HCV where they are entitled to qualified immunity?

8. Should summary judgment be granted in DOC Defendants' favor on Plaintiff's request for injunctive relief? (where)

A. The request for treatment of Plaintiff's HCV with DAADs is moot;

B. Plaintiff is not entitled to the physician or medical care of his choice;

Suggested Answers: Yes.

## ARGUMENT

Summary Judgment is proper where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a)*. When deciding the existence of a genuine dispute of material fact, courts will award all reasonable inferences to the non-moving party. See, *Meyer v. Riegel Products Corp.*, 720 F.2d 303 (3d Cir. 1983). Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a

17

reasonable jury to return a verdict for the nonmoving party.  See, *Roth v. Norfalco*,

651 F.3d 367 (3d Cir. 2011).  The moving party has the burden of showing the

absence of a genuine issue of material fact, but the nonmoving party must present

affirmative evidence from which a jury might return a verdict in the nonmoving

party's favor.  See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

1. **Summary judgment should be granted in DOC Defendants' favor on Count 1 Deliberate Indifference HCV.**

A. **Plaintiff failed to properly exhaust available administrative remedies by failing to identify DOC Defendants and failing to request monetary compensation in his grievance prior to filing the relevant pleading.**

The Prison Litigation Reform Act (PLRA) provides, in pertinent part, as

follows:  "No action shall be brought with respect to prison conditions under

section 1983 of this title, or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted."  *42 U.S.C. § 1997e(a)*.  Application of this section is

mandatory.  See, *Porter v. Nussle*, 534 U.S. 516 (2002).  Exhaustion, for these

purposes, requires "proper" exhaustion.  See, *Woodford v. Ngo*, 548 U.S. 81

(2006).  In order to properly exhaust, prisoners must complete the administrative

review process in accordance with the applicable procedural rules of the prison

grievance process.  See, *Jones v. Bock*, 549 U.S. 199 (2007).  Prison grievance

procedures supply the yardstick for measuring procedural default.  See, *Spruill v.*

*Gillis*, 372 F.3d 218 (3d Cir. 2004).   Unexhausted claims may not be considered by the courts. *Jones*.

To be sure, the United States Supreme Court reiterated the exhaustion requirement recently.   See, *Ross v. Blake*, 136 S.Ct. 1850 (2016).   In *Ross*, the Court rejected a special circumstances exception created by the courts.   *Id*.   In doing so, the Court stated the PLRA foreclosed judicial discretion.   *Id*.   The only issue is whether an administrative remedy was available.   *Id*.   The Court stated available means capable of use to obtain some relief for the action complained.   *Id*. Finally, when an administrative process is susceptible of multiple interpretations, an inmate should err on the side of exhaustion.   *Id*.

DC-ADM 804 requires "The inmate shall identify individuals directly involved in the event(s)".   DC-ADM 804 also requires "If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance."   Grievance records show Plaintiff failed to properly exhaust available administrative remedies prior to initiating litigation.

The Court previously ruled that Grievance 561400 sufficiently raised Plaintiff's medical claims.   However, Grievance 561400 does not request any monetary relief as required by policy.   Also, Grievance 561400 does not name any DOC Defendant by name as required by policy.   *Appendix at 11, Grievance*

19

*Records pgs 1-2.* Therefore, DOC Defendants should be granted summary judgment on this Count for failure to properly exhaust per policy. See, *Wright v. Sauers*, 729 Fed. Appx. 225 (3d Cir. 2018)(he is still foreclosed from seeking monetary relief because he did not request it in his initial grievance); *Harris v. Eckard*, 2018 U.S. Dist. LEXIS 17007 (M.D. Pa. February 2, 2018)(Because Plaintiff failed to assert a claim for monetary damages at any time in the administrative grievance process, the Court finds that he failed to properly exhaust his claim for monetary damages with respect to his Section 1983 claims alleging deliberate indifference to involuntary exposure to secondhand tobacco smoke); *Payne v. Duncan*, 692 Fed. Appx. 680 (3d Cir. 2017)(Payne did not properly exhaust all available administrative remedies as to the Defendants because he did not identify each of them in his prison grievances or subsequent appeals.); *Rivera v. Josephwicz*, 2017 U.S. Dist. LEXIS 109627 (M.D. Pa. July 13, 2017)(The uncontroverted evidence establishes that Rivera failed to name Defendants Walsh, Pall, and Gordon in his grievance. ... Consequently, Defendants Walsh, Pall, and Gordon are entitled to an entry of summary judgment in their favor on this ground.)

## B. The claim against DelBalso and Silva was only for injunctive relief which has been provided so it is moot.

Federal Courts may not decide an issue unless it presents a live case or controversy. See, *Abdul-Akbar v. Watson*, 4 F.3d 195 (3d Cir. 1993). Providing

requested medical care renders claim for injunctive relief moot. See, *Williamson v. Corr. Med. Servs.*, 304 Fed. Appx. 36 (3d Cir. 2008). Plaintiff was treated with DAADs and cured of his HCV. Therefore, these two Defendants should be granted summary judgment on this Count where they were only sued for injunctive relief which has been provided so the issue is moot.

### C. Kerestes, Wetzel, Oppman and Steinhart lack personal involvement.

Individual government defendants in a civil rights action must have personal involvement in the alleged wrongdoing. See, *Evancho v. Fisher*, 423 F.3d 347 (3d Cir. 2005). Liability cannot be predicated solely on the operation of respondeat superior. *Id.* Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. *Id.* A plaintiff must plead defendants through their own actions violated the Constitution. See, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A prison official's deliberate indifference to an inmate's serious medical needs constitutes a violation of the Eighth Amendment and states a cause of action under § 1983. See, *Estelle v. Gamble* 429 U.S. 97 (1976). However, a plaintiff must establish that a defendant acted with subjective deliberate indifference, that is, that he or she was aware of a substantial risk of serious harm to plaintiff but disregarded that risk by failing to take reasonable measures to abate it. See,

*Farmer v. Brennan* 511 U.S. 825 (1994).  Where a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. *Spruill*.

The evidence shows these DOC Defendants had nothing to do with DOC's HCV Protocol.  Likewise, the evidence shows these DOC Defendants had nothing to do with deciding which inmates get treated with DAADS and when.  Wetzel, Kerestes and Oppman are not even licensed medical professionals.  Steinhart may be a R.N. but cannot prescribe medication.

The evidence shows inmates with HCV like Plaintiff were enrolled in CCC and periodically examined, tested and monitored.  Kerestes, Wetzel, Oppman and Steinhart were justified in deferring to Noel and other physicians as to the timing of treating Plaintiff with DAADs.  Therefore, summary judgment should be granted in their favor on this Count for lack of personal involvement. *Id*.

**D. Noel was not deliberately indifferent.**

Noel developed DOC's Hepatitis C Protocols.  They are prioritization protocols modeled after the FBOP policy that treat the sickest inmates first, based on their medical need.  This Court has already stated simply prioritizing treatment so that those in the greatest need are treated first likely would not constitute a constitutional violation.  See, *Abu-Jamal v. Wetzel*, 2017 U.S. Dist. LEXIS 368 (M.D. Pa. January 3, 2017).  Deliberate indifference requires obduracy and

22

wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk. See, *Baez v. Falor*, 566 Fed. Appx. 155 (3d Cir. 2014). It is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights. See, *Brown v. Chambersburg*, 903 F.2d 274 (3d Cir. 1990)().

During the relevant time period, Noel along with Dr. Cowan and Dr. Harris believed Plaintiff had a Metavir score of F2 (moderate fibrosis). Thus, Plaintiff was not a high priority candidate for treatment prior to April 2017 based upon periodic examination, testing and review of his blood test results.

To be sure, during the relevant time period, an inmate with a Metavir score of F2 in the FBOP would not be a top priority candidate for treatment with DAADs. The VA stated that patients with F0-F2 have less urgency for treatment in the short term. Pennsylvania State Medicaid would not have covered treatment of Plaintiff with DAADs at the time. Finally, another expert in the Chimenti case opined DOC did not place inmates with HCV at a substantial and unnecessary risk for severe illness and death.

There is no evidence that Noel knew Plaintiff was cirrhotic in 2015/2016. To the contrary, again, Noel thought Plaintiff was at F2. Professional judgment was exercised in developing policy that inmates with F2 would be treated later after the inmates with F4 and F3 had been treated. This is not evidence of a

conscious disregard of a serious risk.    Rather, it is evidence of exercised

professional judgment.    Thus, there is no subjective deliberate indifference as a

matter of law.

Dr. Trooskins' opinion does not require a different result.    Mere

disagreement as to the proper medical treatment is also insufficient.    *Spruill.*

Disagreement with another doctor is not actionable under the Eighth Amendment.

See, *Jetter v. Beard*, 130 Fed. Appx. 523 (3d Cir. 2005).    *Winslow v. Prison Health*

*Servs., Inc.*, 2010 U.S. Dist. LEXIS 12492 (M.D. Pa. February 12, 2010)(Plaintiff's

expert opinion that surgery was the proper course of treatment for his hernia will

also not support an Eighth Amendment violation).

The AASLD guidelines do not require a different result.    In denying the

class a preliminary injunction, the Court in *Buffkin* stated this court is not

persuaded that plaintiffs have shown a likelihood of success in proving that

adherence to the AASLD/IDSA Guidance is necessary to avoid deliberate

indifference. See, *Buffkin v. Hooks*, 2019 U.S. Dist. LEXIS 45790 (M.D. N.C.

March 20, 2019).    Similarly, in a bench trial about the adequacy of medical

treatment for state inmates with HCV, the Court in *Atkins* rejected the notion that

failing to adhere to the AASLD guidelines was deliberate indifference. See, *Atkins*

*v. Parker*, 2019 U.S. Dist. LEXIS 168976 (M.D. Tenn. September 30, 2019).    The

Court further stated the AASLD/IDSA Guideline consists of treatment

recommendations, not mandatory practice requirements and its recommendations are helpful understanding the "best possible" practice, and provide "evidence of a preferred public health policy," but do "not necessarily determine the standard for judging [constitutional] deliberate indifference." *Id.* The Court noted even the AASLD/IDSA Guideline acknowledges the logic of a prioritization system when resources are limited. *Id.* In such a case, it recognizes that "it is most appropriate to treat those at greatest risk of disease complications before treating those with less advanced disease," because "the most immediate benefits will be realized by populations at highest risk for liver-related complications." *Id.* Finally, the Court noted it is well established that HCV inmates are entitled to adequate care, not the "best care possible" or the "gold standard." *Id.*

In sum, the AASLD guidelines may set the standard of care relevant to a professional negligence claim. However, the standard of care for an Eighth Amendment claim remains deliberate indifference. Deliberate indifference requires the subjective element that defendant was aware of a substantial risk of serious harm to plaintiff but disregarded that risk by failing to take reasonable measures to abate it. *Farmer.*

Therefore, summary judgment should be granted in Noel's favor on this Count where he exercised professional judgment in developing DOC's HCV Protocol and subjectively believed Plaintiff was at stage F2 during the period of

deferred treatment with DAADs.

**E. Plaintiff lacks standing to pursue a claim for risk of future harm.**

To prevail on a claim that a risk of future harm runs afoul of the Constitution, an inmate must demonstrate that "the conditions presenting the risk must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers. See, *Jackson v. Danberg*, 656 F.3d 157 (3d Cir. 2011) citing *Baze v. Rees*, 553 U.S. 35 (2008). There is no such evidence in the record to support Plaintiff is sure of or very likely at risk of serious illness, needless suffering or imminent danger. Dr. Trooskin merely opines that because Plaintiff is cirrhotic, he is at increased risk of liver cancer. However, Dr. Rothstein opines Plaintiff has an excellent prognosis with the levelling of the survival curve to that of the general population. This opinion is backed by recent studies. Therefore, summary judgment should be granted against Plaintiff on this Count as to any claim for future damages for lack of standing. See, *Shoffner v. Wenerowicz*, 2015 U.S. Dist. LEXIS 90288 (E.D. Pa. July 13, 2015)(Plaintiffs lack standing to bring a claim for harm they may or may not suffer in the future).

**2. Summary judgment should be granted in DOC Defendants' favor on Count 2 Deliberate Indifference Skin Care.**

**A. Plaintiff failed to properly exhaust available administrative remedies by failing to identify DOC Defendants and failing to request monetary compensation in his grievance prior to filing the relevant pleading.**

DOC Defendants incorporate by reference the argument set forth in issue 1 A. The Court previously ruled that Grievance 561400 sufficiently raised Plaintiff's medical claims. However, Grievance 561400 does not request any monetary relief as required by policy. Also, Grievance 561400 does not name any DOC Defendant by name as required by policy. Therefore, DOC Defendants should be granted summary judgment on this Count for failure to properly exhaust. See, *Wright*; *Harris*; *Payne*; *Rivera*.

## B. Kerestes and Wetzel lack personal involvement.

DOC Defendants incorporate by reference the argument set forth in issue 1 B. The evidence shows Plaintiff's skin condition was treated for several years with multiple modalities. Plaintiff's own witness, Dr. Harris, testified that Plaintiff received extensive treatment, the "kitchen sink" for his skin condition. Plaintiff continued to receive different treatments for his skin condition and had continued consultations with Dr. Schleicher. Non-medical prison officials like Kerestes and Wetzel were justified in relying on these physicians treatment of Plaintiff. Therefore, summary judgment should be granted in their favor on this Count for lack of personal involvement. *Spruill*.

## C. Noel was not deliberately indifferent.

Noel is the Chief of Clinical Services for the DOC.  He is not an actual treating physician at SCI-Mahanoy.  Given the evidence that shows Plaintiff's skin condition was treated for several years with multiple modalities, Dr. Harris' testimony that Plaintiff received extensive treatment, the "kitchen sink" for his skin condition and Plaintiff's continued to receive different treatments for his skin condition and had continued consultations with Dr. Schleicher, Noel simply was not deliberately indifferent.  That is, there is no evidence that Noel was aware of a substantial risk of serious harm to Plaintiff but disregarded that risk by failing to take reasonable measures to abate it.  This claim is nothing more than dissatisfaction with outcome or disagreement with treatment.  Therefore, summary judgment should be granted in Noel's favor on this Count where there is no subjective awareness of substantial risk of serious harm to Plaintiff that was disregarded.

**3. Summary judgment should be granted in DOC Defendant's favor on Count 3 Deliberate Indifference Hyperglycemia.**

**A. Plaintiff failed to properly exhaust available administrative remedies by failing to identify DOC Defendant and failing to request monetary compensation in his grievance prior to filing the relevant pleading.**

DOC Defendants incorporate by reference the argument set forth in issue 1 A. The Court previously ruled that Grievance 561400 sufficiently raised Plaintiff's medical claims. However, Grievance 561400 does not request any monetary relief

as required by policy.  Also, Grievance 561400 does not name any DOC Defendant by name as required by policy.  *Appendix at 11, Grievance Records pgs 1-2.* Therefore, DOC Defendants should be granted summary judgment on this Count for failure to properly exhaust.  See, *Wright*; *Harris*; *Payne*; *Rivera.*

**B. Kerestes lacked personal involvement.**

DOC Defendant incorporates by reference the argument set forth in issue 1 B.  Plaintiff sued Kerestes due to his role with the grievance process and because he believed inmate Tillery told him of his condition.  Inmates do not have a constitutional right to prison grievance procedures.  See, *Travillion v. Leon*, 248 Fed. Appx. 353 (3d Cir. 2007).  Therefore, Kerestes is entitled to summary judgment on this aspect of the claim.  See, *Brooks v. Beard*, 167 Fed. Appx. 923 (3d Cir. 2006)(Although the complaint alleges that Appellees responded inappropriately to Brooks's later-filed grievances about his medical treatment, these allegations do not establish Appellees' involvement in the treatment itself).

Inmate Tillery claims he spoke with Kerestes on February 15, 2015 and told him that Plaintiff is sick and needs to go to the hospital.  Assuming for the sake of argument this is true, these facts are not specific enough for Kerestes to subjectively appreciate a substantial risk.  Moreover, Kerestes is not a licensed physician or healthcare professional.  Kerestes deferred to medical staff's expertise as to the specifics regarding the provision of medical care to Plaintiff.  And

Plaintiff received medical care in the form of blood tests and monitoring. Therefore, summary judgment should be granted in his favor on this Count for lack of personal involvement. *Spruill*.

### 4. Summary judgment should be granted in DOC Defendants' favor on Count 5 Medical Malpractice HCV.

### A. Plaintiff is unable to sufficiently prove causation of injury.

To prevail in any negligence action, the plaintiff must establish the following elements: the defendant owed him or her a duty, the defendant breached the duty, the plaintiff suffered actual harm, and a causal relationship existed between the breach of duty and the harm. See, *Freed v. Geisinger Med. Ctr.*, 910 A.2d 68 (Pa. Super. 2006). When the alleged negligence is rooted in professional malpractice, the determination of whether there was a breach of duty comprises two steps: first, a determination of the relevant standard of care, and second, a determination of whether the defendant's conduct met that standard. *Id.* Furthermore, to establish the causation element in a professional malpractice action, the plaintiff must show that the defendant's failure to exercise the proper standard of care caused the plaintiff's injury. *Id.* Expert testimony is generally required in a medical malpractice action to establish several of elements: the proper standard of care, the defendant's failure to exercise that standard of care, and the causal relationship between the failure to exercise the standard of care and

the plaintiff's injury. *Id.*

When a party must prove causation through expert testimony the expert must testify with reasonable certainty that in his professional opinion, the result in question did come from the cause alleged. See, *McCrosson v. Philadelphia Rapid Transit Co.*, 129 A. 568, 569 (Pa. 1925). An expert fails this standard of certainty if he testifies that the alleged cause possibly, or could have led to the result, that it could very properly account for the result, or even that it was very highly probable that it caused the result. See, *Niggel v. Sears, Roebuck & Co.*, 281 A.2d 718, 719 (Pa. Super. 1971); *Menarde v. Philadelphia Trans. Co.*, 103 A.2d 681 (Pa. 1954); *Vorbnoff v. Mesta Machine Co.*, 133 A. 256 (Pa. 1926); *Moyer v. Ford Motor Co.*, 209 A.2d 43 (Pa. Super.1965); *Albert v. Alter*, 381 A.2d 459, 470 (Pa. Super. 1977); *Kravinsky v. Glover*, 396 A.2d 1349, 1355-56 (Pa. Super. 1979).

Dr. Trooskin's report and opinion fall short of this standard regarding Oppman. Dr. Trooskin's report fails to mention Oppman by name. The evidence shows Oppman had nothing to do with DOC's HCV Protocol or treatment of inmates with DAADs. Oppman is not even a licensed medical professional. Thus, there is no expert opinion as to Oppman's failure to exercise the standard of care, and the causal relationship between the failure to exercise the standard of care and the plaintiff's injury. Therefore, summary judgment should be granted in his favor on this Count due to lack of sufficient expert testimony.

The report discusses a failure to test and diagnose in a timely fashion. However, as the Chief of Clinical Services, Noel does not test and diagnose individual inmates. To the extent a delay in treatment is attributable to Noel as the author of DOC HCV Protocol and decider of which inmates get treated with DAADs and when, the report still falls short. Dr. Trooskin states if treatment had not been delayed, Plaintiff may not have been cirrhotic at the time of diagnosis. She also states had Plaintiff been treated and cured in 2014/15, the fibrosis would have been less likely to advance. Finally, Dr. Trooskin states that if Plaintiff were treated in 2014/15 per the standard, then the fibrosis was significantly less likely to advance.

A 2019 ultrasound shows no portal hypertension. Testimony using words like "may not have been", "less likely" and "significantly less likely" is insufficient evidence of causation. Therefore, summary judgment should be granted in Noel's favor on this Count due to lack of sufficient expert testimony of injury and causation.

**B. Any personal claim against Noel or Oppman is barred for failing to file a timely certificate of merit against them.**

Plaintiff filed his certificate of merit (COM) on March 8, 2016. The COM states "there is a basis to conclude ...defendants ...in the treatment practice or work ... The defendants at that time did not include Noel. Noel was not sued until September 30, 2016.

Pennsylvania Rule of Civil Procedure 1042.3 requires a COM to be filed in any action based upon an allegation that a licensed professional deviated from an acceptable professional standard.  *Pa.R.Civ.P. 1042.3(a).*  The COM must be signed by the plaintiff's attorney and filed within sixty days after the filing of the complaint.  Rule 1042.3 further provides that upon good cause shown, the court shall extend the time for filing a COM for a period not to exceed sixty days.

The failure to submit a COM regarding a state claim in federal district court is a "possible ground for dismissal by the district court when properly presented to the court in a motion to dismiss."  See, *McElwee Group, LLC v. Mun. Auth. of Elverson,* 476 F.Supp.2d 472 (E.D. Pa. 2007); *Hartman v. Low Sec. Corr. Inst. Allenwood,* 2005 U.S. Dist. LEXIS 40766 (M.D. Pa. May 27, 2005). Paralleling the entry of judgment non-pros in Pennsylvania courts, federal courts will dismiss actions without prejudice where a COM has not been filed.  See, *Booker v. United States,* 366 Fed. Appx. 425 (3d Cir. 2010); *Stroud v. Abington Hospital,* 546 F.Supp.2d 238 (E.D. Pa. 2008)(a "judgment of non-pros, if entered, effectively constitutes a dismissal of the cause without prejudice").

However, dismissal is with prejudice where the claim is time-barred. *Booker*; *Smith v. Bolava,* 2015 U.S. Dist. LEXIS 65683 (E.D. Pa. May 20, 2015)(But where the statute of limitations has run on the malpractice claim, failure to file a certificate of merit is "fatal to the plaintiff's suit" and it should be

dismissed with prejudice); *Shon v. Karason*, 920 A.2d 1285 (Pa. Super. 2007) (affirming the dismissal of the plaintiffs' professional negligence claims for failure to timely file COMs, when plaintiffs filed COMs *only two hours* after the defendants had filed a petition for the entry of a judgment of non-pros).

A federal court must apply the appropriate state statute of limitations (SOL)which governs personal injury actions to an action filed pursuant to § 1983. See, *Urrutia v. Harrisburg County Police Dept.,* 91 F.3d 451 (3d Cir. 1996); *Little v. Lycoming County*, 912 F. Supp. 809 (M.D. Pa. 1996). Pennsylvania's applicable personal injury statute of limitations is two years. *42 Pa.C.S. § 5524*; *Kost v. Kozakiewicz,* 1 F.3d 176 (3d Cir. 1993). Finally, the statute of limitations begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action. See, *Genty v. Resolution Trust Corp.,* 937 F.2d 899 (3d Cir. 1991).

Plaintiff was treated and cured of HCV in 2017. Thus, the SOL has ran. Therefore, Noel is entitled to dismissal with prejudice or summary judgment on this Count due to lack of a timely COM.

Though the COM was timely with respect to Oppman, it did not include him. The evidence shows Oppman is not a licensed medical professional and was not involved with DOC's HCV Policy nor was he involved in deciding which inmates received DAADs and when. Since he was not involved with the treatment

34

practice or work regarding Plaintiff, Oppman is entitled to summary judgment on this Count.

## C. Any corporate negligence claim against Noel or Oppman is barred by sovereign immunity.

Generally, unless specifically waived, a Commonwealth party acting within the scope of their duties cannot be held liable in a civil action. *1 Pa.C.S. § 2310.*[1] The specific waiver of sovereign immunity is expressly limited to certain provisions provided in the judicial code. *42 Pa.C.S. § 8521.* There are nine express instances where sovereign immunity has been waived. *42 Pa.C.S. § 8522.*[2]

These exceptions must be strictly construed and narrowly interpreted. See, *Brown v. Blaine*, 833 A.2d 1166 (Pa. Cmwlth. 2003). An action for intentional misconduct within the scope of the defendants' duties is barred by sovereign immunity. See, *La Frankie v. Miklich*, 618 A.2d 1145 (Pa. Cmwlth. 1992). Thus, Defendants can only be held liable for negligence (or intentional conduct outside scope of duties) and only if the negligence falls within one of the nine categories

---

[1] Commonwealth Party is defined as "A Commonwealth agency and any employee thereof…" *42 Pa.C.S. § 8501.*

[2] (1) VEHICLE LIABILITY; (2) MEDICAL-PROFESSIONAL LIABILITY; (3) CARE, CUSTODY OR CONTROL OF PERSONAL PROPERTY; (4) COMMONWEALTH REAL ESTATE, HIGHWAYS AND SIDEWALKS; (5) POTHOLES AND OTHER DANGEROUS CONDITIONS; (6) CARE, CUSTODY OR CONTROL OF ANIMALS; (7) LIQUOR STORE SALES; (8) NATIONAL GUARD ACTIVITIES; (9) TOXOIDS AND VACCINES. *42 Pa.C.S. § 8522(b).*

where sovereign immunity has been waived.  See, *Battle v. Philadelphia Housing Authority*, 594 A.2d 769 (Pa. Super. 1991).

Plaintiff's suit concerns the quality or lack of medical care.  Potentially, the medical professional liability exception applies.  However, while 42 Pa.C.S. § 8522(b)(2) waives sovereign immunity for the negligent acts of specified individuals when they are working at or for a Commonwealth institution, it does not waive sovereign immunity for individuals who act as the corporate entity.  See, *Moser v. Heistand*, 681 A.2d 1322 (Pa. 1996).  To the extent Defendants are sued for DOC policy they are immune from suit.  *Id*.  Therefore, they are entitled to summary judgment on this Count on any corporate negligence claim.

### 5.  Summary judgment should be granted in DOC Defendants' favor on Count 6 Medical Malpractice Skin Care.

### A. Plaintiff is unable to sufficiently prove causation of injury.

DOC Defendants incorporate by reference the argument set forth in issue 4 A.  Dr. Trooskin's report and opinion fall short again.  Dr. Trooskin's report fails to mention Noel or Oppman by name in her discussion of Plaintiff's skin condition care.  Thus, it is deficient as to the proper standard of care, the Defendant's failure to exercise that standard of care, and the causal relationship between their failure to exercise the standard of care and the Plaintiff's injury.  Therefore, Defendants should be granted summary judgment on this Count due to lack of sufficient expert

testimony.

### B. Any personal claim against Noel or Oppman is barred for failing to file a timely certificate of merit against them.

DOC Defendants incorporate by reference the argument set forth in issue 4 B. Plaintiff filed his certificate of merit (COM) on March 8, 2016. Noel was not sued until September 30, 2016. Though the COM was timely with respect to Oppman, the evidence shows Oppman is not a licensed medical professional. Therefore, Noel is entitled to dismissal with prejudice or summary judgment on this Count due to lack of a timely COM. Likewise, since he was not involved with the treatment practice or work regarding Plaintiff, Oppman is entitled to summary judgment on this Count.

### C. Any corporate negligence claim against Noel or Oppman is barred by sovereign immunity.

To the extent Defendants are sued for DOC policy or their role as administrators, they are immune from suit. That is, a corporate negligence claim is barred by sovereign immunity. *Moser.* Therefore, they are entitled to summary judgment on this Count on any corporate negligence claim.

### 6. Summary judgment should be granted in DOC Defendants' favor on Count 7 First Amendment Right of Association.

### A. Plaintiff failed to properly exhaust available administrative remedies by failing to file a grievance on this issue and pursue to final appeal prior to filing the relevant pleading.

DOC Defendants incorporate by reference the argument set forth in issue 1 A.  Count 7 stems from the denial of visitation while Plaintiff was at an outside hospital in May 2015.  Plaintiff seeks a permanent injunction ordering Defendants to permit attorney-client visits and family visits whenever Plaintiff is taken from a DOC facility to receive inpatient medical treatment.

Plaintiff did not file a grievance concerning visitation and appeal to final review in 2015.  This fact cannot be disputed.  Therefore, summary judgement should be granted in Defendants' favor on this Count for failure to exhaust this claim prior to initiating this action.

## B. The request for future visits with counsel and family during any outside hospital stay is too broad under the PLRA.

The Prison Litigation Reform Act (PLRA) codifies standards governing a district court's grant of prospective relief in prison conditions litigation.  *18 USCS § 3626.*  Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  *Id.*  Section 3626 does not encompass future violations.  *Id.*  Prospective relief is only available for current and ongoing violations of the Federal right.  See, *Para-Professional Law Clinic at SCI-Graterford v. Beard*, 334 F.3d 301 (3d Cir. 2003).

There is nothing in the record suggesting Plaintiff is currently in an outside medical facility and being denied visits with counsel or family and friends. Therefore, summary judgment should be granted in Defendants' favor on this request for relief.

### C. Plaintiff is not entitled to the requested injunctive relief where there is no constitutional violation.

Inmates have no unfettered constitutional right to visitation free of regulation. See, *Rieco v. Hebe*, 633 Fed. Appx. 567 (3d Cir. 2015). Prison officials may limit the nature of inmate visitation. *Id.* Given Plaintiff's sentence, notoriety and DOC's concern for security, it is reasonable to restrict visitation in the hospital setting. Therefore, summary judgment should be granted in Defendants' favor on this request for relief.

### 7. Summary judgment should be granted in DOC Defendants' favor on Count 1 Deliberate Indifference HCV where they are entitled to qualified immunity.

Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See, *Montanez v. Thompson*, 603 F.3d 243 (3d Cir. 2010). A court must decide whether the facts as alleged or shown make out a constitutional violation. *Id.* Also, the court must decide whether the issue was clearly established at the time of the alleged misconduct. *Id.* The courts may decide these questions in either order. *Id.*

39

The United States Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality. See, *City of Escondido v. Emmons*, 139 S. Ct. 500 (2019). Clearly established right must be defined with specificity. *Id.* The District Court of South Carolina found BOP staff were entitled to qualified immunity in a similar case involving an inmate with HCV and a request for treatment with DAADs. See, *Cunningham v. Sessions,* 2017 U.S. Dist. LEXIS 82910 (D.S.C. May 31, 2017)(In light of the rapidly evolving legal and medical developments in this area and the absence of any controlling Fourth Circuit or Supreme Court authority on the legal issue before the Court, there is no clearly established statutory or constitutional right at this time for inmates with chronic Hepatitis C to be treated with DAA drugs. Consequently, Defendants in this action are entitled to qualified immunity from any damage claims arising from the denial of DAA drugs to inmates.). More recently, the Western District Court of Virginia did the same in a case involving the VDOC. See, *Riggleman v. Clarke,* 2019 U.S. Dist. LEXIS 70309 (W.D. Va. April 25, 2019).

Likewise, Plaintiff is without any controlling Third Circuit or Supreme Court authority that would have placed a reasonable person on notice that an inmate with HCV had a clearly established right to be treated immediately with DAADs. Indeed, prior to DAADs, the Courts ruled against inmates who sued over their disagreement with their HCV medical care. See, *Colon-Montanez v.*

40

*Pennsylvania Healthcare Serv. Staffs*, 530 Fed. Appx. 115 (3d Cir. 2013)(Furthermore, the medical defendants reviewed Colon-Montanez's medical history several times, examined him at the Hepatitis C clinic several times, and administered regular blood tests. Overall, they determined that there have been no changes in Colon-Montanez's condition warranting further treatment. While Colon-Montanez may not have received the transplants and treatment he desired, the record lacks any indication of deliberate indifference.); *Lasko v. Watts*, 373 Fed. Appx. 196 (3d Cir. 2010); *Hodge v. United States DOJ*, 372 Fed. Appx. 264 (3d Cir. 2010)(disagreements between Hodge and his physicians, or among physicians, concerning the course of medical treatment for advanced HCV with cirrhosis do not support a claim for a violation of the Eighth Amendment); *Iseley v. Dragovich*, 90 Fed.Appx. 577 (3d Cir. 2004) (regardless of whether the HCV drug was approved by the FDA, the decision whether to treat with the drug is left to the professional judgment of the treating prison physicians); *Richards v. Pigos*, 2013 U.S. Dist. LEXIS 100158 (M.D. Pa. July 18, 2013)(granting summary judgment in HCV case where inmates was tested and monitored).

Post the FDA approval of DAADs, there have been a few adverse non-binding decisions from the District Courts in Pennsylvania and the Third Circuit on cases involving inmates with HCV and treatment with DAADs. Yet, there is no

controlling authority that mandates immediate treatment of inmates with HCV with DAADs.

In the present case, this Court granted a preliminary injunction directing that Plaintiff be treated with DAADs. See, *Abu-Jamal v. Wetzel*, 2017 U.S. Dist. LEXIS 368 (M.D. Pa. January 3, 2017). However, the Court also stated "Simply prioritizing treatment so that those in the greatest need are treated first likely would not constitute a constitutional violation." *Id*. Additionally, this Court only ruled Defendants are ENJOINED from enforcing the Hepatitis C Protocol as it pertains to *Plaintiff*. *Id*.

In *Chimenti*, the Court denied Defendants motion for summary judgment. See, *Chimenti v. Wetzel*, 2018 U.S. Dist. LEXIS 115961 (E.D. Pa. July 12, 2018). In doing so, the Court stated we conclude that there is a genuine issue of material fact regarding whether DOC Defendants are deliberately indifferent to the serious medical needs of inmates with chronic HCV. *Id*. However, that class action case involving DOC's Policy and a request for only injunctive relief settled prior to trial.

In *Allah*, the Court vacated the portion of the lower Court's decision that dismissed Allah's Eighth Amendment claim against the medical defendants regarding Hepatitis C treatment and remand for further proceedings. See, *Allah v. Thomas*, 679 Fed. Appx. 216 (3d Cir. 2017). However, the plaintiff pled he did not

receive any treatment, that treatment was denied solely due to cost considerations and that he was suffering complications. *Id.* The Court noted these issues could be addressed at the summary judgment stage. *Id.* Summary Judgment is pending.

Notably, these 3 decisions were not final decisions on the merits.

Contrary to these decisions, post the FDA approval of DAADs, there have been several favorable final decisions from the District Courts in Pennsylvania and the Third Circuit on cases involving inmates with HCV and treatment with DAADs. In *Moore*, the Court affirmed summary judgment for the defendants. See, *Moore v. Luffey*, 767 Fed. Appx. 335 (3d Cir. 2019). The Court found that the record showed plaintiff was monitored, examined and tested. *Id.* Though the policy was outdated, there was no complete denial of care. *Id.*

In *Kimball*, the Court granted a motion to dismiss. See, *Kimball v. Wetzel*, 2019 U.S. Dist. LEXIS 43143 (M.D. Pa. March 18, 2019). The Court viewed the case as a mere disagreement of treatment where plaintiff was being treated through chronic care clinic. *Id.* This was despite plaintiff alleging he was denied DAADs for non-medical reasons. *Id.*

In *Curtician*, the Magistrate Judge screened the case and recommended the damage claim be dismissed. See, *Curtician v. Noel*, 2018 U.S. Dist. LEXIS 194275 (November 13, 2018).

In *Turner*, the Magistrate Judge recommended that the civil rights claim be dismissed where Turner does not allege that he was denied treatment altogether for Hepatitis C—his pleadings and the attached exhibits acknowledge that he received a physical exam and blood testing every six months to monitor the progression of the disease—but merely that he did not receive the treatment that he desired. He has failed to allege anything more than a difference of opinion between himself and his prison doctors with respect to the preferred course of treatment for his viral infection. See, *Turner v. Wetzel*, 2020 U.S. Dist. LEXIS 6321 (M.D. Pa. January 13, 2020).

Finally, other Federal Courts continue to find for defendants in similar cases. See, *Roy v. Lawson*, 739 Fed. Appx. 266 (5th Cir. 2018)(Court rejected an HCV inmate's claim that the defendants were deliberately indifferent when they failed to refer him for immediate treatment based on a low fibrosis score and instead performed only blood work, labs, and monitoring); *Spiers v. Perry*, 2019 U.S. Dist. LEXIS 94142 (S.D. Miss. June 5, 2019)(An HCV inmate complained of being denied DAAs. The Court found that "constant, routine monitoring" was sufficient to defeat a claim of constitutionally inadequate medical care.); *Henderson v. Tanner*, 2019 U.S. Dist. LEXIS 28115 (M.D. La. February 22, 2019)(failing to provide an HCV inmate with Harvoni (or another DAA drug) upon his immediate request does not constitute deliberate medical indifference); *Pevia v. Wexford*

*Health Source, Inc.*, 2018 U.S. Dist. LEXIS 27366 (D. Md. February 20, 2018)(the court rejected the objective component argument that an HCV inmate was entitled to receive a DAA "as soon as [it] became available," because the inmate was stable and being "monitored, as required by existing protocols).

Thus, Defendants are entitled to qualified immunity for any damage claim. Noel would not have known that a prioritization policy that deferred treating inmates with a fibrosis score of F2 with DAADs until all inmates with fibrosis scores of F4 and f3 were treated with DAADs was unconstitutional, especially where all inmates with HCV are enrolled in CCC and periodically examined, tested and monitored. See, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015)(no precedent on the books in November 2004 would have made clear to petitioners that they were overseeing a system that violated the Constitution); *Hopper v. Barr*, 2019 U.S. Dist. LEXIS 141217 (D.S.C. July 31, 2019)(HCV case finding qualified immunity where the Defendants did not violate constitutional rights clearly established by either the Fourth Circuit or the Supreme Court.).

**8. Summary judgment should be granted in DOC Defendants' favor on Plaintiff's request for injunctive relief.**

**A. The request for treatment of Plaintiff's HCV with DAADs is moot.**

Federal Courts may not decide an issue unless it presents a live case or controversy. *Abdul-Akbar*. Providing requested medical care renders claim for

injunctive relief moot. *Williamson*. Plaintiff was treated with DAADs and cured of his HCV. Therefore, summary judgment should be granted in Defendants' favor on this request for relief.

## B. Plaintiff is not entitled to the physician or medical care of his choice.

Plaintiff seeks injunctive relief granting Plaintiff the right to an in-person consultation and examination by the medical doctor of his choice or order the same to take place outside of DOC custody. Plaintiff is not entitled to the physician of his choice. See, *Green v. Fisher*, 2014 U.S. Dist. LEXIS 1764 (M.D. Pa. January 8, 2014); *Funk v. Stanish*, 2011 U.S. Dist. LEXIS 35277 (M.D. Pa. March 31, 2011). Additionally, the Eighth Amendment still does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. See, *Bruton v. Gillis*, 2008 U.S. Dist. LEXIS 76819 (M.D. Pa. September 30, 2008). Therefore, summary judgment should be granted in Defendants' favor on this request for relief.

## <u>CONCLUSION</u>

**WHEREFORE**, in light of the foregoing, DOC Defendants respectfully

request this Court to grant the motion for summary judgment.

Respectfully submitted,

By:   /s/ Vincent R. Mazeski
Vincent R. Mazeski
Assistant Counsel
Attorney I.D. No. PA73795
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA  17050
(717) 728-7763
Fax No.: (717) 728-0312
Email: vmazeski@pa.gov

Dated:  January 30, 2020

47

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MUMIA ABU-JAMAL,                          :
                                          :
    Plaintiff,                        : Civil Action No. 3:15-CV-0967
                                          :
    v.                                : (MARIANI, J.)
                                          :
SUPERINTENDENT JOHN KERESTES,:
*et al.*,                                 : (MEHALCHICK, M.J.)
                                          :
    Defendants                        :

## CERTIFICATE OF SERVICE

I hereby certify that the within Brief has been filed electronically and is available for viewing and downloading from the ECF system by Counsel for Plaintiff and Counsel for Medical Defendants and therefore satisfies the service requirements under *Fed.R.Civ.P. 5(b)(2)(E); L.R. 5.7.*

                    By:   /s/ Vincent R. Mazeski
                            Vincent R. Mazeski
                            Assistant Counsel
                            Attorney I.D. No. PA73795
                            Pennsylvania Department of Corrections
                            Office of Chief Counsel
                            1920 Technology Parkway
                            Mechanicsburg, PA  17050
                            (717) 728-7763

Dated:  January 30, 2020